## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER; INTERMOUNTAIN FAIR HOUSING COUNCIL; SAN ANTONIO FAIR HOUSING COUNCIL, INC., d/b/a FAIR HOUSING COUNCIL OF SOUTH TEXAS; and HOUSING RESEARCH AND ADVOCACY CENTER, d/b/a FAIR HOUSING CENTER FOR RIGHTS & RESEARCH, INC., *on behalf of themselves and all those similarly situated,*<br><br>    Plaintiffs,<br><br>    v.<br><br>THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of Housing and Urban Development*, U.S. DOGE SERVICE; U.S. DOGE SERVICE TEMPORARY ORGANIZATION; and AMY GLEASON, *in her official capacity as Acting Administrator of U.S. DOGE Service and U.S. DOGE Service Temporary Organization*,<br><br>    Defendants. | Civil Action No. 3:25-cv-30041<br><br>**REQUEST FOR ORAL ARGUMENT ON AN EMERGENCY BASIS** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PROVISIONAL CLASS CERTIFICATION

## <u>TABLE OF CONTENTS</u>

I.    LEGAL STANDARD ............................................................................................. 5

II.    PROPOSED CLASS ............................................................................................. 5

III.   ARGUMENT ........................................................................................................ 5

     A.   Rule 23(a) is satisfied........................................................................................ 6

         1.   Numerosity ............................................................................................. 6

         2.   Commonality ......................................................................................... 7

         3.   Typicality................................................................................................ 9

         4.   Adequacy ............................................................................................. 10

            i.  There Are No Conflicts Between Named Plaintiffs and Class Members ..... 10

           ii. Class Counsel is Prepared and Able to Litigate the Proposed
                Class Litigation ....................................................................... 11

     B.   Rule 23(b)(2) is satisfied........................................................................... 13

IV.  CONCLUSION ................................................................................................. 14

On February 27, 2025, the United States Department of Housing and Urban Development ("HUD") sent letters to sixty-six recipients of grant awards under the Fair Housing Initiatives Program ("FHIP") terminating their awards without notice or warning, effective immediately. *See* Ex. 1, Decl. of L. Rice, at ¶¶ 11, 15; Ex. 2, Decl. of M. St. Cyr, at ¶¶ 25, 29 and Ex. 2-B, (Massachusetts Fair Housing Center Feb. 27 Termination Letter); Ex. 3, Decl. of Z. Olson, at ¶¶ 15, 22, 31, 34 and Ex. 3-E, 3-F (Intermountain Fair Housing Council Feb. 27 Termination Letters); Ex. 4, Decl. of S. Tamez, at ¶¶ 23, 27 and Ex. 4-B, (Fair Housing Council of South Texas Feb. 27 Termination Letter); Ex. 5, Decl. of C. Pleasants, at ¶¶ 9, 15, 17 and Ex. 5-C, 5-D (Fair Housing Center for Rights and Research Feb. 27 Termination Letters). The substance of the letters was identical: All stated that HUD was terminating the award "at the direction of the President of the United States pursuant to the Executive Order 14158, 'Establishing and Implementing the President's "Department of Government Efficiency"', and at the direction of said Department of Government Efficiency (DOGE)." *See* Ex. 1, at ¶ 13; Ex. 2, at ¶ 31 and Ex. 2-B; Ex. 3, at ¶ 33 and Ex. 3-D, 3-E, 3-F; Ex. 4, at ¶ 29 and Ex. 4-B; Ex. 5, at ¶ 16 and Ex. 5-C, 5-D. The letters also stated that each award was being terminated "because it no longer effectuates the program goals or agency priorities." *See* Ex. 1, at ¶ 12; Ex. 2, at ¶ 30 and Ex. 2-B; Ex. 3, at ¶ 32 and Ex. 3-D, 3-E, 3-F; Ex. 4, at ¶ 28 and Ex. 4-B; Ex. 5, at ¶ 15 and Ex. 5-C, 5-D. The material terms of each of the cancelled grants were the same: All were awarded to advance the purposes articulated in the FHIP statute and regulations, all included the same termination provisions, all required grantees to return funds not used for approved purposes, and all incorporated the same regulations relevant to termination. *See* Ex. 1, at ¶¶ 18–20; Ex. 2, at Ex. 2-A (MFHC's HUD 1044, Attachment A, and Attachment B); Ex. 3, at Ex. 3-A, 3-B, 3-C (IFHC's HUD 1044s, Attachments A, and Attachments B); Ex. 4, at Ex. 4-A (FHCST's HUD 1044,

Attachment A, and Attachment B); Ex. 5, at Ex. 5-A, 5-B (FHCRR's HUD 1044s, Attachments A, and Attachments B); Memorandum of Law in Support of Emergency Motion for Temporary Restraining Order at 3–5.

By this Motion and pursuant to Rule 23(a), (b)(2), and (g), the Named Plaintiffs respectfully request this Court provisionally certify a class of all FHIP grantees who had grants terminated based on a decision, as communicated through a February 27 form letter, to terminate the grants pursuant to Executive Order 14158, at the direction of the Department of Government Efficiency, on the basis that the grant award "no longer effectuates the program goals or agency priorities," and appoint the Named Plaintiffs and their undersigned counsel to represent the interests of the class.

The requirements of class certification pursuant to Rule 23(a) and (b)(2) are easily met in this case: Defendants made a single decision to simultaneously terminate seventy-eight FHIP grants and provided an identical (and inadequate) explanation for that decision. The questions about the legality of that decision are common across all class members and their injuries can be remedied by the same injunctive and declaratory relief. These common questions include: Are the HUD Defendants lawfully permitted to take direction from DOGE?[1] Was the February 27 termination decision contrary to the FHIP statute and Congressional appropriations? Does DOGE have the authority to direct termination of FHIP grants? Is it implausible that Plaintiffs' FHIP awards did not effectuate program goals and agency priorities? Certification is warranted because this litigation rises and falls on these common questions.

---

[1] When used in this brief, "HUD Defendants" and "DOGE" have the same meaning as in the Complaint and Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order.

## I.    LEGAL STANDARD

Plaintiffs must prove by a preponderance of the evidence that the requirements of Rule 23 have been met. *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015). Once Plaintiffs make their initial showing, the burden shifts to Defendants to rebut that evidence. *Id.*

The First Circuit has made clear that this Court may inquire into the merits at the class certification stage only "to the extent that the merits overlap the Rule 23 criteria," *In re New Motor Vehicles Can. Export Antitrust Litig.*, 522 F.3d 6, 24 (1st Cir. 2008)," and defendants should not be permitted to turn a class certification decision into a trial on the merits, *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 21 (D. Mass. 2008). *See also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013).

## II.    PROPOSED CLASS

Plaintiffs seek certification of the following class: All FHIP grantees who had grants terminated based on a decision, as communicated through a February 27 form letter, to terminate the grants pursuant to Executive Order 14158, at the direction of the Department of Government Efficiency, on the basis that the grant award "no longer effectuates the program goals or agency priorities."[2]

## III.    ARGUMENT

Class certification is proper where the class satisfies the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the three requirements of Rule 23(b). *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003).

Here, the HUD and DOGE Defendants have acted in the same manner toward the entire

---

[2] Although classes are most frequently composed of individuals, courts can and do certify classes that include organizations as class members and named plaintiffs. *See, e.g.*, *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 39–42 (D.D.C. 2017).

class and the class seeks only prospective injunctive and declaratory relief. These circumstances plainly satisfy the requirements of Rule 23(a) and (b)(2).[3]

### A.    Rule 23(a) is satisfied.

#### 1.    Numerosity

Named Plaintiffs' proposed class of sixty-six FHIP recipients, Ex. 1, at ¶ 15, easily exceeds the numerosity requirement's "low threshold." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009); *see also Barrett v. Garage Cars, LLC*, No. 23-CV-11018-NMG, 2024 WL 4069066, at *2 (D. Mass. Sept. 5, 2024). A class is sufficiently numerous for class certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No particular number of plaintiffs is required to meet Rule 23's numerosity requirement but, as a general matter, the requirement has been met if the potential number of plaintiffs exceeds forty. *See Garcia-Rubiera*, 570 F.3d at 460 (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). Courts in this circuit routinely determine that classes smaller than the proposed class here fulfill the numerosity requirement. *See, e.g.*, *Savage v. City of Springfield*, No. 3:18-CV-30164-KAR, 2022 WL 2758475, at *9 (D. Mass. July 14, 2022) (proposed class of fifty would have been sufficiently numerous); *Doe v. Comm'r, N.H. Dep't of Health & Hum. Servs.*, No. 18-CV-1039-JD, 2020 WL 2129717, at *5 (D.N.H. May 4, 2020) (proposed class of fifty was sufficiently numerous).

---

[3] The First Circuit has held that there is typically not an additional requirement of ascertainability in cases certified pursuant to Rule 23(b)(2). *See Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972), *abrogated on other grounds by Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 479, (1978) (ascertainability is a "standard[ ] applicable to a subdivision (b)(3) class rather than to a subdivision (b)(2) class"). In any event, the class here is ascertainable because it is defined by "objective criteria," *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012) (internal alteration omitted)—specifically, whether the class members' FHIP grant was terminated pursuant to Defendants' decision as communicated through the February 27 Termination Letter.

4

Here, joinder of all sixty-six class members would plainly be impracticable. The sheer number makes active participation of each class member nearly impossible; any major decision would require the participation and consent of all sixty-six plaintiffs. Moreover, the class members are spread throughout the country and include organizations based in dozens of states that stretch from Florida to Massachusetts to Washington. Ex. 1, at ¶ 16. *See McAdams v. Mass. Mut. Life Ins. Co.*, No. CIV.A.99-30284-FHF, 2002 WL 1067449, at *3 (D. Mass. May 15, 2002), *aff'd*, 391 F.3d 287 (1st Cir. 2004) (geographic dispersal of plaintiffs supports finding of numerosity); *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 259 (D. Mass. 2005) (same). It would plainly be impracticable for all sixty-six plaintiffs to travel to this District for hearings or a future trial, and even depositions would likely require substantial travel. The organizations are not well-funded, and the expense challenges are only exacerbated by the financial precarity caused by HUD's termination of class members' FHIP grants. *See* Ex. 1, at ¶¶ 26–27; Ex. 2, at ¶¶ 17–19; Ex. 3, at ¶¶ 17–19, 30, 36, 48; Ex. 4, ¶¶ 15–17, 26; Ex. 5, at ¶¶ 7, 8, 10, 12–14.

Judicial economy further weighs in favor of certification, particularly because the class seeks only uniform, prospective equitable relief and therefore does not require individual participation of plaintiffs. *Ruiz v. NEI Gen. Contracting, Inc.*, 719 F. Supp. 3d 139, 149 (D. Mass. 2024) (judicial economy relevant to a finding of numerosity). When, as here, plaintiffs seek only prospective declaratory and injunctive relief that is uniform across class members, the benefit of joining large numbers of plaintiffs "as []formal part[ies] is slim to non-existent and is plainly outweighed by the substantial logistical burdens that would entail." *A. B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022).

   2. Commonality

The Proposed Class meets Rule 23(a)(2)'s commonality requirement because Plaintiffs challenge a single unlawful decision to terminate class members' FHIP grants. To establish

commonality, the Named Plaintiffs must show "that the class members 'have suffered the same injury,'" one that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The commonality requirement is a "low bar" that courts have generally given a "permissive application.'" *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008) (quoting 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1763, at 221 (3d ed. 2005)).

Class members' claims all turn on whether Defendants' February 27 Termination of class members' FHIP grants was permissible. Although a single question of law or fact would suffice to establish commonality, *Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005), Plaintiffs present multiple common questions that will "generate common *answers* apt to drive the resolution of the litigation," *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 392 (D. Mass. 2024) (quoting *Dukes*, 564 U.S. at 350). These questions include:

1. Whether the HUD Defendants relied on improper considerations in terminating Plaintiffs' grants.

2. Whether the HUD Defendants provided an adequate explanation for the termination decision.

3. Whether it is implausible that Plaintiffs' FHIP awards did not effectuate program goals and agency priorities.

4. Whether the HUD Defendants departed from standard practice in terminating Plaintiffs' awards.

5. Whether the HUD Defendants failed to consider important evidence in terminating Plaintiffs' awards.

6. Whether the HUD Defendants are lawfully permitted to take direction from DOGE.

7. Whether the termination of Plaintiffs' grants is contrary to the FHIP statute and Congressional appropriations.

8. Whether DOGE has authority to direct termination of FHIP grants.

9. Whether Plaintiffs will be deprived of an opportunity to vindicate their rights in the absence of judicial review of DOGE's directive to HUD.

10. Whether Congress has precluded judicial review of DOGE's directive to HUD.

11. Whether equitable considerations favor judicial review of DOGE's directive to HUD.

All these questions are relevant to the legality of HUD's decision to summarily cancel dozens of FHIP grants at DOGE's direction and thus are common to all class members. Cases like this one that turn on a single act or decision by a defendant are especially appropriate for class treatment. *See, e.g.*, *Vara v. DeVos*, No. CV 19-12175-LTS, 2020 WL 3489679, at *8–9, 14–18 (D. Mass. June 25, 2020) (recognizing commonality of class of student borrowers based on Department of Education's single decision denying the discharge of their student loans); *Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-CV-30024-KAR, 2020 WL 1495903, at *2 (D. Mass. Mar. 27, 2020). When a court needs to consider the legality of a single action, key questions such as whether HUD is lawfully permitted to take direction from DOGE and whether DOGE has the authority to direct the termination of FHIP grants can be answered "in one stroke" for all class members, *Dukes*, 564 U.S. at 350.

### 3. Typicality

To meet the typicality prong, the Named Plaintiffs must "possess the same interest" as the class and have their injuries arise from the same course of conduct that gives rise to the other class members' claims. *Falcon*, 457 U.S. at 156. Claims are typical if the representatives' and members' claims "arise from the same event … that gives rise to the claims of other class members, and are based on the same legal theory." *Garcia-Rubiera*, 570 F.3d at 443 (cleaned up); *see also Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D. Mass. 2003) (noting that typicality exists when there is "congruence between particular claims of the

named class representatives and the generalized claims that are common to the class").

The claims of the Named Plaintiffs and the putative class member organizations challenging the simultaneous termination of their grants arise from the same decision. HUD's termination of the grants was executed by the same form letter. *See* Ex. 1, at ¶¶ 15, 17; Ex. 2, at Ex. 2-B; Ex. 3, at Ex. 3-D, 3-E, 3-F; Ex. 4, at Ex. 4-B; Ex. 5, at Ex. 5-C, 4-D. HUD attempted to explain all of the terminations with the same inadequate explanation. The underlying factual bases for the Named Plaintiffs' claims and absent class members' claims are not just typical, but identical. Further, the Named Plaintiffs' and class members' claims are challenged under identical legal theories: that the singular blanket termination of FHIP grants was *ultra vires,* arbitrary and capricious, and an abuse of discretion. Even though "class representatives' claims can be considered typical even where there is some factual variation among the claims of different class members," *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 390 (D. Mass. 2011), no such variation exists here. The claims of the class representatives and the class members are identical and congruent, rising or falling together, and appropriately considered typical.

4. <u>Adequacy</u>

The adequacy inquiry under Rule 23(a)(2) involves two elements: (1) "that the interests of the representative party will not conflict with the interests of any of the class members," and (2) "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). The Named Plaintiffs and their counsel readily meet both elements.

*i.   There Are No Conflicts Between Named Plaintiffs and Class Members.*

As detailed in the typicality section above, the interests of the class and the interests of

the Named Plaintiffs completely align in relation to the claims and issues being litigated. The

identical nature of the claims precludes any possible antagonism between the Named Plaintiffs'

claims and those of the class they seek to represent. The Named Plaintiffs' and the putative class

members' terminated grants were each fully funded under the applicable appropriations bills,

meaning that reinstating one contract would not prevent reinstatement of any other contract or

affect the resources available to other grantees. *See* Compl. at ¶ 35. All class members would

benefit from recission of their grant terminations if the relief sought by the class representatives

is granted. In plain terms, the success of the Named Plaintiffs' claims would mean success for all

class members and would not detract from any class members' claims. Accordingly, no conflicts

exist, and certainly no conflicts that "that are fundamental to the suit and that go to the heart of

the litigation." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) (quoting

1 Newberg and Rubenstein on Class Actions § 3:58 (5th ed.)).

    ii. *Class Counsel is Prepared and Able to Litigate the Proposed Class Litigation.*

        Class Counsel is qualified and experienced in this type of litigation, having litigated

countless cases in the class action, APA, and fair housing contexts. Proposed Class Counsel have

served as class counsel in numerous large class actions throughout the country. *See* Ex. 6, Decl.

of R. Colfax, at ¶ 2; *see e.g.*, *Carroll v. Walden*, Case No. 1:22-cv-00051, Dkt. 104 (D. Md.)

(class of students challenging online for-profit university's enrollment practices); *In re Flint*

*Water Cases*, 571 F. Supp. 3d 746 (E.D. Mich. 2021) (counsel for subclass in class challenge to

City of Flint's use of water supply that led to lead poisoning of thousands of residents); *Fair*

*Hous. Ctr. of Cent. Ind., Inc. v. Rainbow Realty Grp., Inc.*, No. 1:17-cv-1782 RLM-TAB, 2020

WL 1493021 (S.D. Ind. Mar. 27, 2020) (class of over 2,000 challenging an Indianapolis

company's predatory and discriminatory rent-to-own housing program); *Moore v. Napolitano*,

926 F. Supp. 2d 8 (D.D.C. 2013) (represented class of African-American Special Agents of the U.S. Secret Service who had been subjected to a racially discriminatory promotion system); *In re Black Farmers Discrimination*, 820 F. Supp. 2d 78 (D.D.C. 2011) (represented subclass of Black Farmers who suffered racial discrimination at hand of USDA).

Relman Colfax is also experienced in challenging government agency actions, including HUD's actions, under the APA. *See* Ex. 6, at ¶ 3; *see, e.g.*, *Open Communities All. v. Carson*, 286 F. Supp. 3d 148, 152 (D.D.C. 2017) (APA challenge to HUD's suspension of small area market rule for housing choice vouchers); *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 22–23 (D.D.C. 2018) (APA challenge to HUD withdrawal of affirmatively furthering fair housing assessment tool); *Nat'l Fair Hous. All. v. Carson*, Case No. 3:20-cv-07388 (N.D. Cal.) (challenging revised disparate impact rule under APA). Finally, Relman Colfax is a leading fair housing law firm, having obtained some of the largest and broadest relief under the Fair Housing Act of any firm in the country. *See* Ex. 6, at ¶ 4; *see, e.g.*, *Kennedy v. City of Zanesville*, Case No. 2:03-cv-1047, Dkt. 464 (S.D. Ohio) ($10.8 million jury verdict under fair housing laws for residents of predominantly Black community denied water services); *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 604 F. Supp. 3d 1 (D. Conn. 2022) ($5.1 million verdict in Fair Housing Act disability discrimination case); *Nat'l Fair Hous. All. v. Fed. Nat'l Mort. Ass'n*, Case No. 4:16-cv-06969-JSW (N.D. Cal.) ($53 million settlement to fair housing organizations challenging Fannie Mae's discriminatory maintenance and marketing of foreclosed homes in predominantly Black neighborhoods); *Indep. Living Ctr. of S. Cal. v. City of Los Angeles*, Case No. 12-551 (C.D. Cal.) (largest settlement of affordable housing accessibility case in the nation's history).

Plaintiffs' counsel are prepared to devote the necessary resources to prosecute this action fully and in a manner consistent with how the firm has litigated past matters on behalf of

numerous FHIP-funded fair housing organizations, communities affected by housing discrimination, and families and individuals who have lost housing or not been able to use and enjoy housing on equal terms because of a protected characteristic. Ex. 6, at ¶ 5. In the two weeks since HUD cancelled class members' grants, Plaintiffs' counsel has already devoted substantial time and resources to investigating and pursuing legal remedies on behalf of the class. All of the markers of adequacy are present and the Named Plaintiffs and class counsel should be permitted to represent the interests of the class pursuant to Rule 23(a)(4) and (g).

> **B.**    **Rule 23(b)(2) is satisfied.**

Rule 23(b)(2) allows the certification of a class when, as here, the Proposed Class meets the requirements of Rule 23(a) and "the party opposing the class has acted … on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Proposed Class easily meets this standard.

First, Defendants expressly acted "on grounds that apply generally to the class." As laid out in Plaintiffs' contemporaneously filed Complaint and Memorandum in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order, the available evidence demonstrates Defendants made a single decision to simultaneously terminate of dozens of FHIP grants, citing the same inadequate bases for termination. This is a "quintessential Rule 23(b)(2) case," *Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*, No. 3:15-CV-30024-KAR, 2020 WL 1495903, at *2 (D. Mass. Mar. 27, 2020), in which a single decision by Defendants affects all class members, *see, e.g.*, *Vara*, 2020 WL 3489679, at *8–9, and Defendants have "engaged in unlawful behavior toward a defined group," *Reid v. Donelan*, 297 F.R.D. 185, 193 (D. Mass. 2014).

Second, as explained in greater detail in Plaintiffs' Complaint and Emergency Motion for a Temporary Restraining Order, the same injunctive relief is appropriate to the entire class. In

this case, Named Plaintiffs ask this Court to enter a temporary restraining order that: (1) Orders HUD to reverse its February 27 determination and immediately reinstate Plaintiffs' FHIP awards; (2) Enjoins HUD from pausing, freezing, blocking, cancelling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to Plaintiffs under awarded FHIP grants based on either a directive from DOGE or E.O. 14158; and (3) Enjoins DOGE from intruding on, participating in, or otherwise taking any action related to the administration of FHIP grants. This injunctive relief "would benefit all proposed class members by ameliorating a common harm inflicted by the [HUD Defendants'] action." *Vara*, 2020 WL 3489679, at *21; *McDonald v. Heckler*, 612 F. Supp. 293, 300 (D. Mass. 1985) ("[T]his class action is properly brought pursuant to Rule 23(b)(2), as plaintiffs seek declaratory and injunctive relief with respect to the entire class concerning the policies of the Secretary which have been applied to each class member; and do not seek damages.").

## IV.    CONCLUSION

For the foregoing reasons, this Court should certify the proposed class pursuant to Rules 23(a) and (b)(2), designate the Named Plaintiffs as class representatives, and designate the undersigned counsel as Class Counsel.


Date: March 13, 2025                            Respectfully submitted,

                                                */s/ Daniel Ordorica*
                                                Daniel Ordorica (BBO # 705729)
                                                HEISLER, FELDMAN,
                                                & ORDORICA, P.C.
                                                293 Bridge Street, Suite 322
                                                Springfield, MA 01103
                                                Tel:  (413) 788-7988
                                                Fax: (413) 788-7996
                                                dordorica@hfmgpc.com

Lila Miller*
Reed Colfax*
Zoila Hinson*
Rebecca Livengood*
Yiyang Wu*
Robert Hunter*
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
lmiller@relmanlaw.com
rcolfax@relmanlaw.com
zhinson@relmanlaw.com
rlivengood@relmanlaw.com
ywu@relmanlaw.com
rhunter@relmanlaw.com

*Pro hac vice* application pending