# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER; INTERMOUNTAIN FAIR HOUSING COUNCIL; SAN ANTONIO FAIR HOUSING COUNCIL, INC., d/b/a FAIR HOUSING COUNCIL OF SOUTH TEXAS; and HOUSING RESEARCH AND ADVOCACY CENTER d/b/a FAIR HOUSING CENTER FOR RIGHTS & RESEARCH, INC., *on behalf of themselves and all those similarly situated,* | |
| Plaintiffs, | Civil Action No. _____ |
| v. | |
| THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, SCOTT TURNER, *in his official capacity as Secretary of Housing and Urban Development*, U.S. DOGE SERVICE, U.S. DOGE SERVICE TEMPORARY ORGANIZATION, and AMY GLEASON, *in her official capacity as Acting Administrator of U.S. DOGE Service and U.S. DOGE Service Temporary Organization*, | |
| Defendants. | |

**DECLARATION OF CARRIE PLEASANTS**

I, Carrie Pleasants, declare the following under penalties of perjury:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information and belief.

1

2. I am the Executive Director of the Housing Research & Advocacy Center d/b/a Fair Housing Center for Rights and Research ("HRAC") which was established as a not-for-profit organization in the Cleveland, Ohio area in 1994. HRAC's mission is to ensure, through research, educational programs, public policy and enforcement activities, that all residents are guaranteed equal access to housing. The organization was founded in 1983 as the Metropolitan Strategy Group, a group of local fair housing/civil rights advocates who shared a goal of expanding housing opportunities for Greater Clevelanders regardless of their race, religion, gender, ethnicities, national origins, familial status, or disability. In the mid-1990s the organization received its first grant under the Fair Housing Initiatives Program (FHIP) and today it is a full-service fair housing organization focused on enforcement, education, and the creation of mobility activities to offer greater choice in housing opportunities. There are about 1.5 million people in HRAC's service area.

3. HRAC also provides a mobility program that is not funded by the FHIP program to assist home seekers to find housing opportunities throughout the area and it has 9 contracts funded by local communities to conduct fair housing-related activities limited to those communities.

4. HRAC's annual budget is $1.5 million and all of its FHIP grants combined constitute about 43% of its budget.

5. HRAC is the only organization in its service area that provides fair housing education services, directly and through partnerships with other organizations. It also provides policy and research that becomes the basis for systemic change throughout the region in governmental and landlord policies and practices.

6. HRAC routinely receives "Excellent" ratings from the Department of Housing and Urban Development for its performance on FHIP grants and it has been widely praised for its innovative and effective fair housing education programs.

*FHIP Grants and HRACs' Funding*

7. HRAC funds its work through grants from the FHIP program, as well as through a contract under the Choice Community Demonstration funded by HUD to a housing authority, and contracts with 9 local communities. It employs 16 people including two staff members dedicated to education and outreach. It has approximately $500,000 in reserve funding that comes from settlements of fair housing cases.

8. HRAC received an Education and Outreach grant ("the first EOI grant") from the Fair Housing Initiatives program from HUD in 2024. The grant provided HRAC with $125,000 payable in 4 installments to increase community awareness of fair housing rights and resources among underserved populations and members of protected classes through increased and targeted education and outreach activities. The grant included conducting fair housing trainings, creating and circulating fair housing advertisement and brochures, creating brochures for new residents, and maintaining an online platform for promoting free fair housing consumer trainings.

9. HRAC has never received any communication from HUD that its performance or compliance with the terms and conditions of the grant was anything less than satisfactory. The grant is scheduled to end on June 14, 2025.

10. HRAC also received an Education and Outreach grant ("the second EOI grant") from the Fair Housing Initiatives program from HUD in 2024. The second grant provided HRAC with $100,000 payable in 4 installments. The project was designed to increase

community awareness of fair housing rights and resources among underserved populations and members of protected classes with an emphasis on combating source of income discrimination and limited voucher mobility, both of which significantly impact the housing search in the organization's service area; addressing racial harassment, intimidation, and retaliation; elevating the impacts of lead exposure, residential asthma triggers, and segregation on infant and maternal health; and providing information on activities that can increase housing opportunity. The purposes detailed above were to be achieved by: making complaint referrals, conducting an advertising campaign that included public service announcements on television and radio, billboard messaging, and print and digital advertisements. HRAC also was to partner with local groups to hold 2 or more large events.

11. It has never received any communication from HUD that its performance or compliance with the terms and conditions of the grant was anything less than satisfactory. The grant is scheduled to end on July 31, 2025.

12. To date, HRAC has received 2 of 4 payments pursuant to the first EOI grant, totaling $62,500.00. To date, HRAC has received 2 of 4 payments pursuant to the second EOI grant, totaling $50,000.

13. The total amount of the two grants, $225,000, is 15% of the organization's annual budget. Altogether, FHIP funding is 43% of the organization's annual budget.

14. In reliance on the two grants, HRAC had offered a position to a paid intern to support the second EOI grant, contracted with others to develop and design education materials, held and scheduled numerous training and education events and expended more than half of the funds for each grant. It was on track to conduct all of the activities under each grant

by the end of the performance period of the grant. As a result of the grant termination, it

has expended funds and spent time that it will not otherwise be compensated for.

*The February 27 Termination Notice*

15. On February 27, 2025, HRAC received a Termination Notice from HUD informing it of

HUD's intent to terminate both of the EOI grants on the basis that each grant "no longer

effectuates the program goals or agency priorities." Attached as Exhibit A to this

Declaration is the Signed Contract (HUD 1044 Form) as well as Attachment A (Schedule

of Articles) and Attachment B (Addendum to the Schedule of Articles) for the first EOI

grant. Exhibit B is the Declaration is the Signed Contract (HUD 1044 Form), Attachment

A (Schedule of Articles) and Attachment B (Addendum to the Schedule of Articles) for

the second EOI grant. Attached as Exhibit C is the termination notice for the first grant

and Exhibit D is the termination notice for the second grant.

16. The Termination Notice was issued "at the direction of the President of the United States,

United States pursuant to the Executive Order 14158, 'Establishing and Implementing the

President's "Department of Government Efficiency"', and at the direction of the

Department of Government Efficiency (DOGE)."

17. The Termination Notice terminates the remaining balance of each award and instructs

that "all obligations and activities under [grant] will cease" effective that day, February

27, 2025. The remaining balance of the awards is $50,000 for the first EOI grant and

$62,500 for the second EOI grant.

*Harm to HRAC's Work*

18. In response to the Termination Notice, HRAC has stopped its work on both of the grants.

For these grants, the organization has had to stop the distribution of two public service

announcements, one for television and one for radio. The television PSA has already been produced through funding from the first EOI grant and was to be distributed in conjunction with two other fair housing organizations with which HRAC partnered. The lack of funds for distribution of the television PSA will affect all three organizations because it would have reached out throughout the same television viewing area for all three groups. The television ads were planned to run for 8 weeks and have an estimated 1,000,000 views. The radio PSA funded under the grant was scheduled to run for 8 weeks with an estimated 75,000 listeners.

19. In particular, the money for design and production of the television and radio PSAs has been spent but because there will be no funding or staff resources to distribute them, this money will be wasted.

20. The cancellation of the two EOI grants has caused substantial chaos and confusion at HRAC. Already, HRAC has had to immediately identify whether any training or activities that have been committed could be funded from other sources, which will reduce the resources available under other grants for planned activities and the organization has declined other invitations for educational opportunities. Thus far, 13 events that would have been funded by the grants have required reallocation of funds and staff resources.

21. The termination of the first EOI grant means that 19 potential victims of housing discrimination will not be referred to HUD/FHAP; 12 Fair Housing Trainings and outreach events won't be taking place so close to 800 people won't be educated on their fair housing rights; 12 fair housing ads with a circulation/viewership of 135,000 people won't be placed, limiting fair housing awareness in the community; and a fair housing

guide for Older Adults will not be completed, translated into two languages, or distributed, limiting access for older adults about fair housing. The organization devoted 20+ hours of staff time to development of this guide, planned to translate it into two languages, make it Section 508 compliant and disseminate 500 copies. Older adults represent a significant proportion of the persons who contact the organization with fair housing questions and this guide was intended to provide more information to this population. In addition, an online training platform providing specific training on particular fair housing issues won't continue, and that will impact an estimated 150 viewers.

22. Under the second EOI grant, the organization won't be able to refer at least four potential victims of housing discrimination to HUD/FHAP; two large Fair Housing events in partnership with grassroots organizations serving underserved communities won't be taking place meaning that the organization won't be engaging with the public or educating an additional 100+ people on fair housing rights; 12 fair housing ads with a circulation/viewership of 137,000 people won't be placed limiting fair housing awareness in the community. A job offer to an intern who would have worked on this project has been rescinded as a result of the grant termination. The organization had to decline participation in a Juvenile Justice Resource Fair that was scheduled for March 6, 2025, at which it would have provided information and resources to older teens who will soon be looking for housing, and facing a variety of challenges with little or no experience and a high likelihood to face high levels of discrimination.

23. In addition, HRAC was already under contract with a local billboard company for design and placement of billboards to reach 350,000 views, which was to be paid for by a

cancelled grant. The organization had paid for set-up costs and advertising for approximately 190,000 views; termination of the grant will stop this activity, which would have resulted in an additional 160,000 views. There is still a balance of $2,250 on this contract that is due and will have to paid out of other funds, further limiting the organization's ability to conduct other outreach activities.

24. Stopping this work in the middle of the grant year –and the cancellation of scheduled and planned events –has had a hugely negative effect on the organization and its work. In particular, the grants' termination has adversely affected important work in local communities and impaired the organization's ability to reach out to and provide assistance to individuals of color who encounter housing discrimination in its mobility program. It has adversely affected the organization's ability to work with other organizations to reach underserved groups with serious fair housing issues, such as older persons, young people of color, voucher holders, and new immigrants.

25. Termination of these two grants seriously affects the organization's ability to strengthen and expand its outreach and education work and many people won't learn about their fair housing rights as a result. The abrupt stoppage of work and the adverse effects on organizational activities funded by other contracts has perceptibly impaired HRAC's core activities; indeed, its expanded fair housing education and outreach programs will almost cease altogether. Because these core programs and activities further HRAC's long-standing mission that is heavily focused on fair housing education and expanding residential housing opportunity, the termination of FHIP grant funds undermines HRAC's mission, which includes fair housing education that advancing the purposes of the Fair Housing Act.

26. The injuries suffered by HRAC are ongoing and will persist without relief from this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 03/12/2025

*Carrie L. Pleasants*

Carrie Pleasants

# EXHIBIT 5-A

**Assistance Award/Amendment**

U.S. Department of Housing and
Urban Development
Office of Administration

| 1. Assistance Instrument | | 2. Type of Action | |
|---|---|---|---|
| ☐ Cooperative Agreement  ☒ Grant | | ☐ Award  ☒ Amendment | |

| 3. Instrument Number | 4. Amendment Number | 5. Effective Date of this Action | 6. Control Number |
|---|---|---|---|
| **FEOI230041** | **1** | 05/29/2024 | 34-1771480 |

| 7. Name and Address of Recipient | 8. HUD Administering Office |
|---|---|
| **Housing Research and Advocacy Center**<br>**2728 Euclid Avenue, Suite 200**<br>**Cleveland, Ohio 44115-2429**<br>**UEI: GQLF CDXM WH58** | **U.S. Department of Housing and Urban Development**<br>**Midwest Regional Office, Region V - - Office of Fair Housing and Equal Opportunity**<br>**77 West Jackson Boulevard, Room 2202**<br>**Chicago, Illinois 60604-3507** |

| | 8a. Name of Administrator | 8b. Telephone Number |
|---|---|---|
| | **Lon Meltesen, Grant Officer** | **312-913-8400** |

| 10. Recipient Project Manager | 9. HUD Government Technical Representative |
|---|---|
| Kris Keniray (216-361-9240) | **John Meade (312-913-8444)** |

| 11. Assistance Arrangement | 12. Payment Method | 13. HUD Payment Office |
|---|---|---|
| ☐ Cost Reimbursement<br>☐ Cost Sharing<br>☒ Fixed Price | ☐ Treasury Check Reimbursement<br>☐ Advance Check<br>☒ Automated Clearinghouse | eLOCCS |

| 14. Assistance Amount | | 15. HUD Accounting and Appropriation Data | |
|---|---|---|---|
| | | 15a. Appropriation Number | 15b. Reservation number |
| Previous HUD Amount | $125,000.00 | 86 23/24 0144  EOI/GC | |
| HUD Amount this action | $0 | | |
| Total HUD Amount | $125,000.00 | Amount Previously Obligated | $125,000.00 |
| Recipient Amount | $0 | Obligation by this action | $0 |
| Total Instrument Amount | **$125,000.00** | Total Obligation | **$125,000.00** |

16. Description

The purpose of amendment is to acknowledge total award amount and revised documentation in Region V. Funding is under the FHIP Education and Outreach Initiative/General Component. **There are no costs associated with amendment.** This grant agreement consists of the basic agreements and the following attachments which are appended here and made a part hereof:

1.    Attachment A - - -Schedule of Articles
2.    Attachment B - - Addendum to Schedule of Articles
3.    Attachment C - - -Special Conditions
4.    Attachment D - - Grantee Declarations Form
5.    Attachment E- - - -Additional Assurances
6.    Attachment F - - - - - Revised Final Statement of Work
7.    Attachment G- - - - - Revised Payment Schedule
8.    Attachment H - - Applicant Assurance
9.    Revised Final Budget

The period of performance is **12 MONTHS**: June 15, 2024 to June 14, 2025.
**The recipient has until October 12, 2025 to submit final work products and request final payment.**
**Government Technical Monitor is Debra L. Bizzell-Wood, (312-913-8226)**

| 17. ☒  Recipient is required to sign and return three (3) copies of this document to the HUD Administering Office | 18. ☐  Recipient is not required to sign this document. |
|---|---|

| 19. Recipient (By Name) | 20. HUD (By Name) |
|---|---|
| **Housing Research and Advocacy Center** | **Midwest Regional Office, Region V – Fair Housing and Equal Opportunity** |

| Signature & Title | Date (mm/dd/yyyy) | Signature & Title | Date (mm/dd/yyyy) |
|---|---|---|---|
| *Carrie A. Pleasants*<br>**Carrie A. Pleasants, Executive Director** | 05/30/2024 | *Lon J Meltesen*<br>**Lon Meltesen, Grant Officer, Region V** | 05/29/2024 |

form HUD-1044 (8/90)
ref. Handbook 2210.17

**Awardee: Housing Research & Advocacy Center**          **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

## SCHEDULE OF ARTICLES

### TABLE OF CONTENTS

1. Definitions
2. Scope of work (fixed price)
3. Period of performance
4. Amendments
5. Inspection and acceptance
6. Conduct of work
7. Instrument amount and electronic payments
8. Limitation on consultant payments
9. Key personnel
10. Code of conduct
11. Publications and news releases
12. Reproduction of reports
13. Government property
14. Collection of data
15. Patent rights-small business firms and nonprofit organizations
16. Disputes
17. Drug-free workplace (recipients other than individuals)
18. Limitation on payments to influence certain federal transactions (over $100,000)
19. Limitation on payments to influence certain federal transactions (under $100,000)
20. Excess funds
21. Program income
22. Fringe benefits
23. Certification prohibiting excess force against non-violent civil rights demonstrations
24. Seat belt usage
25. Resource Conservation and Recovery Act (RCRA)
26. Order of Precedence
27. Executive Order 13520: *Reducing Improper payments: Enhancing Payment Accuracy through a* "Do Not Pay List"
28. Executive Order 14005: *Ensuring the Future is Made in All America by all of America's Workforce*
29. Executive Orders 13985 And 14091, *Advancing Racial Equity and Support For Underserved Communities Through The Federal Government*
30. Executive Order 14075, *Advancing Equality for Lesbian, Gay, Bisexual, Transgender, Queer, And Intersex Individuals* 31. Executive Order 13988: *Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*
32. Other Administrative Provisions

**Awardee: Housing Research & Advocacy Center**                    ATTACHMENT A
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

33. Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 CFR Part 200)
34. Education and Outreach (EOI) Funds
35. Private Enforcement Initiative (PEI) and Fair Housing Organization Initiative (FHOI) Funds

1. DEFINITIONS

a.  The term "Schedule of Articles" means an official document which sets forth the terms and conditions of the grant agreement, which binding authority over grants management policy and administration within one or more HUD organizational elements.

b.  The term "Cooperative Agreement" means a legal instrument of financial assistance between a Federal awarding agency and a recipient or a pass-through entity and a subrecipient that, consistent with 31 U.S.C. 6302–6305:

    (1) Is used to enter into a relationship the principal purpose of which is to transfer anything of value to carry out a public purpose authorized by a law of the United States (see 31 U.S.C. 6101(3)); and not to acquire property or services for the Federal Government or pass-through entity's direct benefit or use;

    (2) *Is distinguished from a grant* in that it provides for substantial involvement of the Federal awarding agency in carrying out the activity contemplated by the Federal award.

    (3) The term does not include:

        (i)    A cooperative research and development agreement as defined in 15 U.S.C. 3710a; or
        (ii)   An agreement that provides only:
               (A) Direct United States Government cash assistance to an individual;
               (B) A subsidy;
               (C) A loan;
               (D) A loan guarantee; or
               (E) Insurance.

c.  The term "Grant Agreement" means a legal instrument of financial assistance between a Federal awarding agency or pass-through entity and a non-Federal entity that, consistent with 31 U.S.C. 6302, 6304:

    (1) Is used to enter into a relationship the principal purpose of which is to transfer

**Awardee: Housing Research & Advocacy Center**                       **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

anything of value from the Federal awarding agency or pass-through entity to the non-Federal entity to carry out a public purpose authorized by a law of the United States (see 31 U.S.C. 6101(3)); and not to acquire property or services for the Federal awarding agency or pass-through entity's direct benefit or use;

(2) Is *distinguished from a cooperative agreement* in that it does not provide for substantial involvement between the Federal awarding agency or pass-through entity and the non-Federal entity in carrying out the activity contemplated by the Federal award.

(3) The term does not include an agreement that provides only:
    (i)     A cooperative research and development agreement as defined in 15 U.S.C. 3710a; or
    (ii)    An agreement that provides only:
        (A) Direct United States Government cash assistance to an individual;
        (B) A subsidy;
        (C) A loan;
        (D) A loan guarantee; or
        (E) Insurance.

d.   The term "Government Technical Representative (GTR)" means the HUD individual who is responsible for the technical administration of the grant, the evaluation of performance under the grant, the acceptance of technical reports or projects, and other such specific responsibilities as may be stipulated in the grant, and approval of payment.

e.   The term "Government Technical Monitor (GTM)" means the HUD individual who has been designated to provide technical monitoring, advice, and assistance, to aid the GTR in the technical and financial oversight and evaluation of the grantee's performance.

f.   The term "Grant Officer" means the official authorized by HUD to execute and/or administer this grant or cooperative agreement. This term also refers to a Cooperative Agreement Officer when the instrument is a cooperative agreement.

g.   The term "Head of the Awarding Activity (HAA)" means a HUD official, at the Assistant Secretary level or equivalent, with authority for policy, award, and administration of discretionary grants within one or more HUD organizational elements.

h.   The term "Excess Funds" means any unliquidated and unobligated balance of Federal funds, as reflected on the final Financial Status Report Form, SF-425, at the time of project closeout, that remains available with the grantee after all work products have been

**Awardee: Housing Research & Advocacy Center**                      **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

satisfactorily completed and accepted by the GTR.

## 2. SCOPE OF WORK (FIXED PRICE)

The grantee shall furnish the necessary personnel, materials, services, equipment, facilities, (except as otherwise specified herein) and otherwise do all things necessary for or incidental to the performance of the work set forth in the Statement of Work (also known as the Work Management Plan) for the firm fixed price set forth herein.

## 3. PERIOD OF PERFORMANCE

The grantee shall provide all services hereunder for a period of time, which is stated in the Form HUD-1044, Assistance Award/Amendment - (Form HUD-1044). This time period is referred to as the period of performance (PoP) and is included in Box 16 of the 1044.  The PoP is defined in 2 CFR §200.1 (2 CFR 200.1 Definitions) as the time during which the non-Federal entity may incur new obligations to carry out the work authorized under the Federal award.

The definitions in 2 CFR 200 also define period of performance as the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions, or budget periods. Identification of the period of performance in the Federal award per § 200.211(b)(5) does not commit the awarding agency to fund the award beyond the currently approved budget period.

Note that the FHIP program requires that grantees obtain prior HUD approval for any proposed extensions of the Period of Performance as a condition of the grant award as permitted by 2 CFR 200.308(e)(2)(i). For reference only, federal agency approved modifications to the Period of Performance are covered in 2 CFR § 200.309.  Grantee-initiated modifications to the Period of Performance (if no conditions requiring prior HUD approval are present) are covered in §2 CFR 200.308(e)(2).

## 4. POST-AWARD AMENDMENTS

Post-award, this grant may be amended or modified by a written amendment to extend the period of performance or modify the scope of work and/or budget.  Amendments which reflect the rights and obligations of either party shall be executed by both HUD (the Grant Officer) and the grantee. Requests for amendments which affect the length of time or scope of the project being undertaken must be accompanied by a written justification.

As indicated, extensions and budget or scope of work modifications must be approved in advance by the Department. Per 2 CFR 200.309, (2 CFR 200. 309) if HUD approves an extension, the

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

Period of Performance will be amended to end at the completion date stated in the extension. If a termination occurs, the Period of Performance will be amended to end on the effective date of termination.

Per 2 CFR 200.308(c) grantees must request prior approval from the FHIP Grant Officer for the following program or budget-related reasons:

(1) Change in the scope or the objective of the project or program (even if there is no associated budget revision requiring prior written approval).

(2) Change in a key person specified in the application or the Federal award.

(3) The disengagement from the project for more than three months, or a 25 percent reduction in time devoted to the project, by the approved project director.

(4) The inclusion, unless waived by the Federal awarding agency, of costs that require prior approval in accordance with subpart E of 2 CFR 200 (Cost Principles) as applicable. These pre-approved costs include (only if applicable). but are not limited to constraints on faculty member salaries, limits on severance pay, costs of membership in any civic or community organization, organizational costs related to establishment or reorganization, participant support costs (direct costs for items such as stipends or subsistence allowances, travel allowances, and registration fees paid to or on behalf of participants or trainees (but not employees) in connection with conferences, or training projects), facility alterations, selling and marketing any products or services of the non-Federal entity, use of foreign government tax refunds, and travel costs for dependents for extended travel periods.

(5) Unless described in the application and funded in the approved Federal awards, the sub-awarding, transferring or contracting out of any work under a Federal award, including fixed amount subawards as described in § 200.333. This provision does not apply to the acquisition of supplies, material, equipment, or general support services.

(6)  Changes in the Budget - Under §2 CFR 200.308 Revision of Budget and Program Plans, optional requirements are outlined regarding budgetary revisions. Accordingly, grantees are required to do the following:

    a.  Request prior approval from the Grant Officer for appropriate transfer between direct and indirect categories of the grant budget in all instances; and

    b.  Request prior approval from the Grant Officer regarding transfers of funds among direct cost categories when the total FHIP grant award amount (e. g., the Federal

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

share) exceeds $250,000 and the cumulative transfers of funds are expected to exceed 10 percent of the total budget. If the grant award amount is less than $250,000 and the transfer is less than 10% of the total budget, prior approval is not required.  However, the grantee <u>must</u> notify the GTR of all changes prior to execution of the changes.

c.  When applicable under 6(a) and 6(b), submit advanced written requests and justifications for such transfers, including amounts and categories, and confirmation that funds will not be used for purposes inconsistent with appropriations requirements. Any such transfers must be accompanied by an explanation of whether and how the Statement of Work (SOW) is impacted. Changes to SOWs also require prior approval by the Grant Officer in accordance with 200.308(c)(1) above.

d.  All changes to Budget that exceed 10 percent of the award and/or changes to the SOW must be incorporated by an amendment to the grant agreement.

Administrative amendments, such as changes in appropriation data, may be issued unilaterally by the Grant Officer.  Also, HUD reserves the right to review and revise the budgets for grants, where appropriate.

## 5. INSPECTION AND ACCEPTANCE

Inspection and acceptance of all but the final products may be accomplished by the Government Technical Monitors (GTMs), if so delegated.  Final acceptance shall be accomplished by the Government Technical Representative (GTR).

## 6. CONDUCT OF WORK

a.  During the effective period of this grant, the Government Technical Representative and/or the Government Technical Monitor identified in Block 9 of the <u>Form HUD-1044</u> cover page shall be responsible for monitoring the technical effort of the grantee unless the grantee is notified in writing by the Grant Officer of a replacement.

b.  Only the Grant Officer has the authority to authorize deviations from this grant, including deviations from the Statement of Work.  In the event the grantee does deviate without written approval of the Grant Officer, such deviation shall be at the risk of, and any costs related thereto, shall be borne by the grantee.

c.  The grantee shall submit two copies of all quarterly performance reports, final reports and all deliverables to the GTR and GTM listed in Block 9 of the HUD-1044 in accordance with the SOW.

d.  Between the required performance reporting dates, events may occur that have significant

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

impact upon the project or program.  In such instances, the grantee shall inform the GTR and the Grant Officer as soon as the following types of conditions become known:

(1) Problems, delays, or adverse conditions that will materially affect the ability **of the grantee** to attain program objectives, prevent the meeting of the time schedules and goals, or preclude the attainment of project work units by established time periods.  This disclosure shall be accompanied by a statement of the action taken, or contemplated, and any HUD assistance needed to resolve the situation.

(2) Favorable developments or events that enable time schedules to be met sooner than anticipated or more work units to be produced than originally projected.
See 2 CFR 200.301 (2 CFR 200.301) for more on Performance Measurement.

## 7. INSTRUMENT AMOUNT AND ELECTRONIC PAYMENTS

a.  HUD shall pay the grantee for performance of this grant the firm award amount identified in Block 14 of the HUD-1044 based on acceptance and approval of negotiated deliverables.

b.  The grantee agrees to provide a detailed breakdown of federal costs, as well as in-kind costs, identified in the negotiated budget on a quarterly basis.  The grantee shall account for both the federal costs and the in-kind contribution costs on Standard Form (SF) 425 (SF-425).

In addition, the grantee shall provide an attachment to Item 12, SF-425, to show a detailed breakdown of cost(s) claimed for the payment period as well as a narrative explanation (see 2 CFR, Part §200.302 (Financial Management); and §200.328 (Financial Reporting)).  Failure by the grantee to ensure the full in-kind contribution identified as utilized for this project, may result in the grantee receiving less than favorable assessment in the evaluation of its performance, at close out, or on future FHIP competitions.

c.  Payment will be made after acceptance of the completed projects or tasks by the Government Technical Representative (GTR) in consultation with the Government Technical Monitor (GTM).  Provided that the grantee is in compliance with all other terms of the grant, the grantee shall be paid in accordance with the final, negotiated grant agreement (see 2 CFR§200.305, 2 CFR 200.305).

d.  Payments are made through HUD's Line of Credit Control System (eLOCCS).  ELOCCS uses a computer software program which ensures that requested payments do not exceed the amount authorized to the grantee.  All payments are certified by HUD and forwarded to Treasury for processing.  Each day eLOCCS generates a payment tape for the Department of the Treasury which disburses the payments via the Automated Clearing House (ACH) Payment System via a

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

Treasury Voucher Schedule.

e.  The grantee shall submit the request for payment directly into the automated payment system
    (eLOCCS).  The payment request shall be supported by a detailed breakdown of the cost(s)
    claimed as previously submitted on a quarterly basis on the SF-425.  The payment process is
    activated via computer.  To have access to eLOCCS the grantee must obtain a Security ID and
    Password from HUD's LOCCS Security Officer and complete form HUD-27054E (12/23
    version as of this update to Schedule of Articles).  In order to assure proper payment, it is
    important that the payment amount requested online is in accordance with the payment amount
    authorized for approval by the GTR. Find more information at:

    1.  loccs_guidelines | HUD.gov / U.S. Department of Housing and Urban Development (HUD).
    2.  https://www.hud.gov/sites/dfiles/CFO/documents/eLOCCS_Approving_Official_Recertific
        ation_Guide-Sept_2022.pdf

f.  Before receiving funds from eLOCCS, the grantee must designate a financial institution for
    HUD to make direct deposit payments through the ACH system.  The grantee's authorized
    officials must complete SF-1199A, Direct Deposit Sign-up.  Note there are two options for
    the grantee to transmit the SF-1199A to the Fort Worth Accounting Center (FWAC).
    Option 2 is preferred.

    1.  The grantee may send physical copies of the SF-1199A form and supporting documents
        (e.g. voided check) to:

        U.S. Department of Housing and Urban Development
        CFO Accounting Operations Center
        307 W. 7th St.
        Suite 1000
        Fort Worth, TX 76102

    2.  For electronic submissions, the Form SF-1199A and any supporting documents must be
        submitted to the HUD programmatic representative (GTR) for review and processing. Only
        HUD staff are permitted to send direct deposit documents to the FWAC electronically.

In the event the grantee, during the performance of this grant, elects to designate a different bank
account or financial institution for the receipt of payments a new SF-1199A must be completed and
submitted as previously indicated.  The grantee is responsible for ensuring that the GTR is apprised
of any change(s).

Find more information at:

Awardee: Housing Research & Advocacy Center                          **ATTACHMENT A**
Grant #: FEOI230041
Initiative/Component: EOI General

- Financial Institution Establishment and Direct Deposit Sign-Up | HUD.gov / U.S. Department of Housing and Urban Development (HUD).

g.  Detailed instructions for using the eLOCCS system accompany the transmittal of the forms, or if needed, may be requested from the GTR or found online at links provided above.

### 8. LIMITATION ON CONSULTANT PAYMENTS

As required by HUD's Appropriations Act, salary payments to consultants under this instrument **shall not exceed the equivalent of the maximum daily rate paid to GS 15 Step 10 daily rate (locality pay will not be included – see** General Schedule (GS) Base Pay Scale for 2023 (federalpay.org)).  This limitation refers to consultants hired through the grantee's personnel system, but not to consultants who perform as independent contractors (see Attachment B, **Addendum** to the Schedule of Articles).  For rates exceeding the above-referenced daily maximum, or to waive the use of a consultant prior approval be requested and secured from the Grant Officer.

### 9. KEY PERSONNEL

The personnel specified in Form HUD-1044, the Statement of Work, and Attachments are considered to be essential to the work being performed hereunder.

Prior to replacing or diverting any of the specified individuals to other work, the grantee shall notify the GTR reasonably in advance and shall submit written justification (including proposed hires or substitutions) in sufficient detail to permit evaluation of the impact on the work effort.  No replacement or diversion shall be made by the grantee without the written consent of the Grant Officer.

The grantee is required to allow HUD access to personnel and pertinent personnel records or information for any staff that receive salary or other payments under the FHIP grant.  The grantee is required to inform HUD if any of its key personnel are or have been convicted of a felony or other crime involving fraud or perjury.  The grantee is required to maintain personnel records for a period of no less than three years. (2 CFR §200.201(b)(5) - 2 CFR 200.201(b)(5)).  See also 2 CFR §200.334 – 2 CFR 200.334.

### 10. CODE OF CONDUCT

Entities subject to 2 CFR Part 200 (most nonprofit organizations and State, local and tribal governments or government agencies or instrumentalities who receive Federal awards of financial assistance) are required to develop and maintain a written code of conduct (see §2 CFR 200.112 on Conflict of Interest, §2 CFR 200.318 on General Procurement Standards, - and §2 CFR 200.113 on

**Awardee: Housing Research & Advocacy Center**                    ATTACHMENT A
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

Mandatory Disclosures.  Consistent with regulations governing specific programs, your code of conduct must: prohibit real and apparent conflicts of interest that may arise among officers, employees, or agents; prohibit the solicitation and acceptance of gifts or gratuities by your officers, employees, and agents for their personal benefit in excess of minimal value; and outline administrative and disciplinary actions available to remedy violations of such standards.  **All grantees must submit a copy of their code of conduct to HUD.** See more information on HUD's Grants Management and Oversight Division (GMO) page at Code of Conduct for HUD Grant Programs | HUD.gov / U.S. Department of Housing and Urban Development (HUD).

## 11. PUBLICATIONS AND NEWS RELEASES

a.  Definition.  For the purpose of this clause, "publication" includes:
   (1)  Any document, audio, or video materials containing information for public consumption; or

   (2)  The act of, or any act which may result in, disclosing information to the public.

b.  The results of this program are planned to be made available to the public through dedication, assignment by HUD, or such other means as the Secretary shall determine.

c.  Government Ownership of Official Products of Work.  All interim and final reports and information, data analyses, special methodology, findings, and their related documents and work products, including reports, work sheets, survey instruments, computer tapes, audio or video materials, and any other physical materials and products produced directly under the Statement of Work of this grant are considered Official Products of Work, owned by the Government and held for the benefit of the public.

d.  Publication of Official Products of Work.  Official Products of Work, quotations there from, para-phrasing, or disclosures of interim findings may not be published without the approval of the GTR for a period of sixty (60) days after acceptance of the product by the GTR. Thereafter, the grantee shall be free to publish without HUD approval.

e.  Acknowledgment and Disclaimer.  All Official Products of Work, or any part thereof, and any Independent Products and Special Products arising out of this instrument, when published by the grantee or other participants in the work, shall contain the following acknowledgment and disclaimer:

   "The work that provided the basis for this publication was supported by funding under a grant with the U.S. Department of Housing and Urban Development.  The substance and findings of the work are dedicated to the public. The author and publisher are solely responsible for the accuracy of the statements and interpretations contained in this

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

publication.  Such interpretations do not necessarily reflect the views of the Federal Government."

 f.  <u>Notice of News Release and Public Announcements</u>.  Two copies of all press releases, formal announcements, and other planned, written issuances containing news or information concerning this grant that may be made by the grantee or its staff, or any subcontractor or other person or organization participating in the work of this grant shall be provided to the GTR at the earliest possible time in advance of any public announcement.  News releases and other public announcements may not disclose any interim finding or quote or paraphrase any part of any Official Product of Work without complying with paragraph e. above.

g.  <u>Copyrights</u>.  Provisions found at 2 CFR 200.1 (Definitions), §200.315 (Intangible Property), and §200.448 (Intellectual Property), shall apply to all FHIP recipients.  Specifically, the Federal awarding agency reserves a royalty-free, nonexclusive and irrevocable license to reproduce, publish or otherwise use, and to authorize others to use, for Federal Government purposes: (i) the copyright in any work developed under a grant, subgrant, or contract under a grant or sub-grant; and (ii) any rights of copyright to which a grantee, subgrantee or a contractor purchases ownership with grant support. Notwithstanding this paragraph, HUD reserves the right to reproduce, publish or otherwise use such work for Federal purposes.

h. Publication and Printing Costs

See §2 CFR 200.461 for the following provisions concerning publication and printing costs:

(a) Publication costs for electronic and print media, including distribution, promotion, and general handling are allowable. If these costs are not identifiable with a particular cost objective, they should be allocated as indirect costs to all benefiting activities of the non-Federal entity.

(b) Page charges for professional journal publications are allowable where:

(1) The publications report work supported by the Federal Government; and

(2) The charges are levied impartially on all items published by the journal, whether or not under a Federal award.

(3) The non-Federal entity may charge the Federal award during closeout for the costs of publication or sharing of research results if the costs are not incurred during the period of performance of the Federal award. If charged to the award, these costs must be charged to the final budget period of the award, unless otherwise specified by the Federal awarding agency.

**Awardee: Housing Research & Advocacy Center**                            **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

## 12. REPRODUCTION OF REPORTS

In accordance with Government Printing and Binding Regulations, reproduction of reports, data or other written materials intended for submission to HUD for Government use, if required herein, is authorized provided that the materials produced do not exceed 5,000 production units of any page and the items consisting of multiple pages do not exceed 25,000 production units in the aggregate.

The above limitations do not apply to the reproduction of materials intended for distribution by the grantee to non-Federal Government sources in accordance with the terms of this grant.

## 13. EQUIPMENT AND PROPERTY

§2 CFR 200.1 Definitions contains the following:

**Equipment** means tangible personal property (including information technology systems) having a useful life of more than one year and a per-unit acquisition cost which equals or exceeds the lesser of the capitalization level established by the non-Federal entity for financial statement purposes, or $5,000.

    See also the definitions of *capital assets, computing devices, general purpose equipment, information technology systems, special purpose equipment,* and *supplies* in this section.

**Personal property** means property other than real property. It may be tangible, having physical existence, or intangible.

**Real Property** means land, including land improvements, structures and appurtenances thereto, but excludes moveable machinery and equipment.

**Equipment**.  Any equipment acquired for the performance of this grant is identified in the final negotiated budget for this grant.  See §2 CFR 200.313 (*Equipment*) within (2 CFR 200 Subpart D) for property standards that govern equipment, including physical inventories and safeguards, allowable uses, disposition and whether title vests with the non-federal entity or the Government. See also (§2 CFR 200.439) on *Equipment and Capital Expenditures.*

Property in excess of $5,000 must be accounted for by the grantee. However, all property must be accounted for by the grantee at closeout of the grant. Equipment with a current per unit fair market value of $5,000 or less may be retained, sold or otherwise disposed of with no further responsibility to the Federal awarding agency.

Grantees must also make equipment available for use on other projects or programs currently or

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

previously supported by the Federal Government, provided that such use will not interfere with the work on the projects or program for which it was originally acquired. First preference for other use must be given to other programs or projects supported by HUD, which financed the equipment and second preference must be given to programs or projects under Federal awards from other Federal awarding agencies. Use for non-federally-funded programs or projects is also permissible. User fees should be considered if appropriate.

When no longer needed for the original program or project, equipment may be used in other activities supported by the Federal awarding agency, in the following order of priority:

When the period of performance for the grant has ended, , the Grant Officer will provide the grantee with instructions concerning the disposition of the inventory of equipment, for all equipment, for which the title is vested in the government, if appropriate.

Equipment and other capital expenditures are not allowable as indirect costs.

## 14. COLLECTION OF DATA

Collection of data from ten or more respondents and sponsored by HUD shall be subject to the Paperwork Reduction Act (44 U.S.C. 3501 – 3520 and 2 CFR 200.207).  If a survey instrument is proposed, it will be subject to review and approval by the Office of Management and Budget (OMB).   Such review and approval must be obtained prior to the use of the survey instrument. Also, a time element is involved here, which may considerably lengthen the time required for completion of the project proposed.  Information collections submitted to OMB under the Paperwork Reduction Act include 60-day and 30-day public comment periods in addition to internal HUD and external OMB reviews.  It can take six months or longer to obtain approval for information collection instruments. The collection of data is deemed to be sponsored by HUD only under the conditions indicated below.  Collection of data under circumstances other than the four conditions given below is not a sponsored collection and is not subject to the Paperwork Reduction Act:

a.  The grantee represents to respondents that the information is being collected for or in association with HUD (however, this condition is not intended to preclude mention of Federal support in response to an inquiry, or an acknowledgment of Federal assistance in any publication or report on the data); or

b.  The grantee uses the data collection activities to collect information that HUD has requested for the planning, operation, or evaluation of its program; or

c.  The terms and conditions of this grant provide for approval by HUD of the survey design

**Awardee: Housing Research & Advocacy Center**      **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

questionnaire content, or data collection procedure; or

e.   The terms and conditions of this grant provide for either submission to HUD of the data for individual respondents or the preparation and submission of tabulations requested by HUD.

## 15. PATENT RIGHTS (SMALL BUSINESS FIRMS AND NONPROFIT ORGANIZATIONS)

**BACKGROUND**

37 Part 401 RIGHTS TO INVENTIONS MADE BY NONPROFIT ORGANIZATIONS AND SMALL BUSINESS FIRMS UNDER GOVERNMENT GRANTS, CONTRACTS, AND COOPERATIVE AGREEMENTS states:

"This regulation supersedes OMB Circular A-124 and shall take precedence over any regulations dealing with ownership of inventions made by small businesses and nonprofit organizations which are inconsistent with it. This regulation will be followed by all agencies pending amendment of agency regulations to conform to this part and amended Chapter 18 of Title 35."

See link at 37 CFR 401 for full text of this regulation.

a.  Definitions.

(1)  "Invention" means any invention or discovery, which is or may be patentable or otherwise protectable under Title 35 of the United States code.

(2)  "Subject invention" means any invention of the grantee conceived or first actually reduced to practice during the period of grant performance.

(3)  "Practical Application" means to manufacture in the case of a composition or product, to practice in the case of a process or method, or to operate in the case of a process or method, or to operate in the case of a machine or system; and, in each case, under such conditions as to establish that the invention is being utilized and that its benefits are, to the extent permitted by law or government regulations, available to the public on reasonable terms.

(4)  "Made" when used in relation to any invention means the conception or first actual reduction to practice of such invention.

(5)  "Small Business Firm" means a small business concern as defined at Section 2 of Pub. L. 85-536 (15 U.S.C. 632) and implementing regulations of the Administrator of the Small Business Administration.  For the purpose of this clause, the size standards for small business concerns

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

involved in government procurement and subcontracting at 13 CFR 121.3-8 and 13 CFR 121.3-12, respectively, will be used.

(6)  "Nonprofit Organization" means a university or other institution of higher education or an organization of the type described in Section 501 (c) (3) of the Internal Revenue Code (25 U.S.C. 501(a)) and exempt from taxation under section 501(a) of the Internal Revenue Code of 1954 (25 U.S.C. 501(a)) or any nonprofit scientific or educational organization qualified under a state nonprofit organization statute.

b.  <u>Allocation of Principal Rights</u>.  The grantee may retain the entire right, title, and interest throughout the world to each subject invention subject to the provisions of this clause and 35 U.S.C. 203.  With respect to any subject invention in which the grantee retains title, the Federal government shall have a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States the subject invention throughout the world.

c.  <u>Invention Disclosure, Election of Title and Filing of Patent Application by Grantee</u>.

(1)  The grantee will disclose each subject invention to the Federal Agency within two months after the inventor discloses it in writing to grantee personnel responsible for patent matters. The disclosure to the agency shall be in the form of a written report and shall identify the grant under which the invention was made and the inventor(s).  It shall be sufficiently complete in technical detail to convey a clear understanding to the extent known at the time of the disclosure, of the nature, purpose, operation, and the physical, chemical, biological or electrical characteristics of the invention.  The disclosure shall also identify any publication, on sale or public use of the invention and whether a manuscript describing the invention has been submitted for publication and, if so, whether it has been accepted for publications at the time of disclosure. In addition, after disclosure to the agency, the grantee will promptly notify the agency of the acceptance of any manuscript describing the invention for publication or of any on sale or public use planned by the grantee.

(2)  The grantee will elect in writing whether or not to retain title to any such invention by notifying the Federal agency within two years of disclosure to the Federal agency. However, in any case where publication, on sale or public use has initiated the one- year statutory period wherein valid patent protection can still be obtained in the United States, the period for election of title may be shortened by the agency to a date that is no more than 60 days prior to the end of the statutory period.

(3)  The grantee will file its initial patent application on a subject invention to which it elects to retain title within one year after election of title or, if earlier, prior to the end of any statutory period wherein valid patent protection can be obtained in the United States after a publication, on

**Awardee: Housing Research & Advocacy Center**                      **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

sale, or public use.  The grantee will file patent applications in additional countries or international patent offices within either ten months of the corresponding initial patent application or six months from the date permission is granted by the Commissioner of Patents and Trademarks to file foreign patent applications where such filing has been prohibited by a Secrecy Order.

(4)  Requests for extension of the time for disclosure, election, and filing under subparagraphs (1), (2), and (3) may, at the discretion of the agency, be granted.

d.  <u>Conditions When the Government May Obtain Title</u>.  The grantee will convey to the Federal agency, upon written request, title to any subject invention--

(1)  If the grantee fails to disclose or elect title to the subject invention within the times specified in (c), above, or elects not to retain title; provided that the agency may only request title within 60 days after learning of the failure of the grantee to disclose or elect within the specified times.

(2)  In those countries in which the grantee fails to file patent applications within the times specified in (c) above; provided, however, that if the grantee has filed a patent application in a country after the times specified in (c), above, but prior to its receipt of the written request of the Federal agency, the grantee shall continue to retain title in that country.

(3)  In any country in which the grantee decides not to continue the prosecution of any application for, to pay the maintenance fees on, or defend in reexamination or opposition proceeding on, a patent on a subject invention.

e.  <u>Minimum Rights to Grantee and Protection of the Grantee's Right to File</u>.

(1)  The grantee will retain a nonexclusive royalty-free license throughout the world in each subject invention to which the Government obtains title, except if the grantee fails to disclose the invention within the times specified in (c), above. The grantee's license extends to its domestic subsidiary and affiliates, if any, within the corporate structure of which the grantee is a party and includes the right to grant sublicenses of the same scope to the extent the grantee was legally obligated to do so at the time the grant was awarded.  The license is transferable only with the approval of the Federal agency except when transferred to the successor of that party of the grantee's business to which the invention pertains.

(2)  The grantee's domestic license may be revoked or modified by the funding Federal agency to the extent necessary to achieve expeditious practical application of the subject invention pursuant to an application for an exclusive license submitted in accordance with applicable provisions at 37 CFR Part 404 and agency licensing regulations (if any).  This license will not be revoked in that field of use or the geographical areas in which the grantee has achieved practical application and continues to make the benefits of the invention reasonably accessible to the public.

**Awardee: Housing Research & Advocacy Center**                    ATTACHMENT A
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

The license in any foreign country may be revoked or modified at the discretion of the funding Federal agency to the extent the grantee, its licensees, or the domestic subsidiaries or affiliates have failed to achieve practical application in that foreign country.

(3)  Before revocation or modification of the license, the funding Federal agency will furnish the grantee a written notice of its intention to revoke or modify the license, and the grantee will be allowed thirty days (or such other time as may be authorized by the funding Federal agency for good cause shown by the grantee) after the notice to show cause why the license should not be revoked or modified.  The grantee has the right to appeal, in accordance with applicable regulations in 37 CFR Part 404 and agency regulations (if any) concerning the licensing of Government-owned inventions, any decision concerning the revocation or modification of the license.

f.  Grantee Action to Protect the Government's Interest.

(1)  The grantee agrees to execute or to have executed and promptly deliver to the Federal agency all instruments necessary to (i) establish or confirm the rights the Government has throughout the world in those subject inventions to which the grantee elects to retain title, and (ii) convey title to the Federal agency when requested under paragraph (d) above and to enable the government to obtain patent protection throughout the world in that subject invention.

(2)  The grantee agrees to require, by written agreement, its employees, other than clerical and non-technical employees, to disclose promptly in writing to personnel identified as responsible for the administration of patent matters and in a format suggested by the grantee each subject invention made under agreement in order that the grantee can comply with the disclosure provisions of paragraph (c), above, and to execute all papers necessary to file patent applications on subject inventions and to establish the government's rights in the subject inventions.  This disclosure format should require, as a minimum, the information required by (c)(1), above.  The grantee shall instruct such employees through employee agreements or other suitable educational programs on the importance of reporting inventions in sufficient time to permit the filing of patent applications prior to U.S. or foreign statutory bars.

(3)  The grantee will notify the Federal agency of any decisions not to continue the prosecution of a patent application, pay maintenance fees, or defend in a reexamination or opposition proceeding on a patent, in any country, not less than thirty days before the expiration of the response period required by the relevant patent office.

(4)  The grantee agrees to include, within the specification of any United States patent applications and any patent issuing thereon covering a subject invention, the following statement, "This invention was made with government support under the Grant No. identified in Block 3 of the HUD 1044 awarded by the Department of Housing and Urban Development.  The government has

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

certain rights in the invention."

g.  Subcontracts.

    (1)  The grantee will include this clause, suitably modified to identify the parties, in all subcontracts, regardless of tier, for experimental, developmental or research work to be performed by a small business firm or domestic nonprofit organization.  The subcontractor will retain all rights provided for the grantee in this clause, and the grantee will not, as part of the consideration for awarding the subcontract, obtain rights in the subgrantee's subject inventions.

    (2)  The grantee will include in all other subcontracts, regardless of tier, for experimental developmental or research work the patent rights clause required by FAR 52.227-11.

h.  Reporting on Utilization of Subject Inventions.  The grantee agrees to submit on request periodic reports no more frequently than annually on the utilization of a subject invention or on efforts at obtaining such utilization that are being made by the grantee or its licensees or assignees. Such reports shall include information regarding the status of development, date of first commercial sale or use, gross royalties received by the recipient, and such other data and information as the agency may reasonably specify.  The grantee also agrees to provide additional reports as may be requested by the agency in connection with any march-in proceeding undertaken by the agency in accordance with paragraph j. of this clause. As required by 35 U.S.C. 202(c)(5), the agency agrees it will not disclose such information to persons outside the government without permission of the grantee.

i.  Preference for United States Industry.  Notwithstanding any other provision of this clause, the grantee agrees that neither it nor any assignee will grant to any person the exclusive right to use or sell any subject inventions in the United States unless such person agrees that any products embodying the subject invention or produced through the use of the subject invention will be manufactured substantially in the United States.  However, in individual cases, the requirement for such an agreement may be waived by the Federal agency upon a showing by the grantee or its assignee that reasonable but unsuccessful efforts have been made to grant licenses on similar terms to potential licensees that would be likely to manufacture substantially in the United States or that under the circumstances domestic manufacture is not commercially feasible.

j.  March-in Rights.  The grantee agrees that with respect to any subject invention in which it has acquired title, the Federal agency has the right in accordance with the procedures in 37 CFR 401.6 and any supplemental regulations of the agency to require the grantee, an assignee or exclusive licensee of a subject invention to grant a nonexclusive, partially exclusive, or exclusive license in any field of use to a responsible applicant or applicants, upon terms that are reasonable under the circumstances, and if the grantee, assignee, or exclusive licensee refuses such a request the Federal agency has the right to grant such a license itself if the Federal agency determines that:

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

(1)  Such action is necessary because the grantee or assignee has not taken or is not expected to take within a reasonable time, effective steps to achieve practical application of the subject invention in such field of use.

(2)  Such action is necessary to alleviate health or safety needs which are not reasonably satisfied by the grantee, assignee or their licensees;

(3)  Such action is necessary to meet requirements for public use specified by Federal regulations and such requirements are not reasonably satisfied by the grantee, assignee or licensees; or

(4)  Such action is necessary because the agreement required by paragraph (i) of this clause has not been obtained or waived or because a licensee of the exclusive right to use or sell any subject invention in the United States is in breach of such agreement.

k.  <u>Special Provisions for Grants with Nonprofit Organizations</u>. If the grantee is a nonprofit organization, it agrees that:

(1)  Rights to a subject invention in the United States may not be assigned without the approval of the Federal agency, except where such assignment is made to an organization which has as one of its primary functions the management of inventions, provided that such assignee will be subject to the same provisions as the grantee;

(2)  The grantee will share royalties collected on a subject invention with the inventor, including Federal employee co-inventors (when the agency deems it appropriate) when the subject invention is assigned in accordance with 35 U.S.C. 202(e) and 37 CFR 401.10;

(3)  The balance of any royalties or income earned by the grantee with respect to subject inventions, after payment of expenses (including payments to inventors) incidental to the administration of subject inventions, will be utilized for the support of scientific research or education; and

(4)  It will make efforts that are reasonable under the circumstances to attract licensees of subject invention that are small business firms and that it will give a preference to a small business firm when licensing a subject invention if the grantee determines that the small business firm has a plan or application for marketing the invention which, if executed, is equally as likely to bring the invention to practical application as any plans or application from applicants that are not small business firms; provided, that the grantee is also satisfied that the small business firm has the capability and resources to carry out its plan or application.  The decision whether to give a preference in any specific case will be at the discretion of the grantee.  However, the grantee agrees that the Secretary may review the grantee's licensing program and decisions regarding small

**Awardee: Housing Research & Advocacy Center**                                **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

business applicants, and the grantee will negotiate changes to its licensing policies, procedures, or practices with the Secretary when the Secretary's review discloses that the grantee could take reasonable steps to implement more effectively the requirements of this paragraph (k)(4).

Inquiries regarding this Patent Rights clause must be in writing and directed to:

      Grant Officer:
      FHEO Regional Office:
      Address:
      City/State:
      Telephone:

## 16. DISPUTES

      During performance of the grant, disagreements may arise between the grantee and the Government Technical Representative (GTR) or Government Technical Monitor (GTM) on various issues.  If a dispute concerning a question of fact arises, the GTR shall take the matter to the Grant Officer**,** who shall prepare a final decision, taking into account all facts and documentation presented.  The decision shall be mailed to the grantee.  The decision of the Grant Officer is final**.**

## 17. DRUG-FREE WORKPLACE (RECIPIENTS OTHER THAN INDIVIDUALS)

a.  By signing this grant agreement, the grantee is providing the certification set out below under 17g.

b.  The certification set out below is a material representation of fact upon which reliance was placed when HUD determined to award the grant.  If it is later determined that the grantee knowingly rendered a false certification, or otherwise violates the requirements of the Drug-Free Workplace Act, HUD, in addition to any other remedies available to the Federal Government, may take action authorized under the Drug-Free Workplace Act.

 c.  Workplaces need not be identified on the certification.  If known, they may be identified in the grant application.  If the grantee did not identify the workplaces at the time of application, or upon award, the grantee must keep the identity of the workplace(s) on file in its office and make the information available for Federal inspection.  Failure to identify all known workplaces constitutes a violation of the grantee's drug-free workplace requirements.

d.  Workplace identifications must include the actual address of buildings (or parts of buildings) or other sites where work under the grant takes place.  Categorical descriptions may be used (e.g., all vehicles of a mass transit authority or State highway department while in operation, State employees

Awardee: Housing Research & Advocacy Center                    ATTACHMENT A
Grant #: FEOI230041
Initiative/Component: EOI General

in each local unemployment office, performers in concert halls or radio studios).

e.  If the workplace identified to HUD changes during the performance of the grant, the grantee shall inform the agency of the change(s).

f.  Definitions of terms in the No Procurement Suspension and Debarment common rule (2 CFR Part 2424) and Drug-Free Workplace common rule apply to this certification.

g.  Certification Regarding Drug-Free Workplace Requirements. Recipients and subrecipients receiving funds from HUD are subject to Drug-Free Workplace requirements as set forth in 2 CFR part 2429, which is HUD's implementation of 41 U.S.C. 701, et seq. Specifically, grantees must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of part 2429, which adopts the governmentwide implementation (2 CFR part 182) of sections 5152-5158 of the Drug-Free Workplace Act of 1988 (Pub. L. 100-690, Title V, Subtitle D; 41 U.S.C. 701-707). The grantee certifies that it will maintain or will continue to provide a drug-free workplace in compliance with this requirement via the form HUD-50070 Certification for a Drug-Free Workplace.

The grantee's place of performance of this work is the same as that shown in Block 7 of the HUD 1044.  Grantee will identify other workplace(s) than that shown in Block 7 on the form HUD-50070.

18. LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (OVER $100,000)

a.  Definitions.  As used in this clause:

(1)  "Agency", as defined in 5 U.S.C. 552(f), includes Federal executive departments and agencies as well as independent regulatory commissions and Government corporations, as defined in 31 U.S.C. 9101(1).

(2)  "Covered Federal Action" means any of the following Federal actions:

(a)  The awarding of any Federal contract;
(b)  The making of any Federal grant;
(c)  The making of any Federal loan;
(d)  The entering into of any cooperative agreement; and,
(e) The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

Covered Federal action does not include receiving from an agency a commitment providing for the United States to insure or guarantee a loan.

(3)  "Indian tribe" and "tribal organization" have the meaning provided in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450B).  Alaskan Natives are included under the definitions of Indian tribes in that Act.

(4)  "Influencing or attempting to influence" means making, with the intent to influence, any communication to or appearance before an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any covered Federal action.

(5)  "Local government" means a unit of government in a State and, if chartered, established, or otherwise recognized by a State for the performance of a governmental duty, including a local public authority, a special district, an intrastate district, a council of governments, a sponsor group representative organization, and any other instrumentality of a local government.

(6)  "Officer or employee of an agency" includes the following individuals who are employed by an agency:

(a)  An individual who is appointed to a position in the Government under title 5, U.S.C., including a position under a temporary appointment;

(b)  A member of the uniformed services as defined in section 202, title 18, U.S.C.;

(c)  A special Government employee as defined in section 202, title 18, U.S.C.; and,

(d)  An individual who is a member of a Federal advisory committee, as defined by the Federal Advisory Committee Act, title 5, appendix 2.

(7)  "Person" means an individual, corporation, company, association, authority, firm, partnership, society, State, and local government, regardless of whether such entity is operated for profit or not for profit.  This term excludes an Indian tribe, tribal organization, or other Indian organization with respect to expenditures specifically permitted by other Federal law.

(8)  "Reasonable compensation" means, with respect to professional and other technical services, a payment in an amount that is consistent with the amount normally paid for such services in the private sector.

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

(9)  "Recipient," as used in this clause, includes the grantee or cooperating party and all sub-grantees at any tier.  The term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

(10) "Regularly employed" means, with respect to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, an officer or employee who is employed by such person for at least 130 working days within one year immediately preceding the date of the submission that initiates agency consideration of such person for receipt of such contract, grant, loan, or cooperative agreement.  An officer or employee who is employed by such person for less than 130 working days within one year immediately preceding the date of submission that initiates agency consideration of such person shall be considered to be regularly employed as soon as he or she is employed by such person for 130 working days.

(11) "State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a territory of possession of the United States, an agency or instrumentality of a State, and a multi-State, regional, or interstate entity having governmental duties and powers.

b.  Prohibition.

(1)  Section 1352 of title 31, U.S.C. provides in part that no appropriated funds may be expended by the recipient of a Federal contract, grant, loan, or cooperative agreement to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions:  the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2)  The prohibition does not apply as follows:

(a)  Agency and legislative liaison by own employees

(i)  The prohibition on the use of appropriated funds, in paragraph (1) of this section, does not apply in the case of a payment of reasonable compensation made to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, if the payment is for agency and legislative activities not directly related to a covered Federal action.

**Awardee: Housing Research & Advocacy Center**                                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

 (ii)  For purposes of paragraph b. (2)(a)(i) of this section, providing any information specifically requested by an agency or Congress is allowable at any time.

 (iii)  For purposes of paragraph b.(2)(a)(i) of this section, the following agency and legislative liaison activities are allowable at any time only where they are not related to a specific solicitation for any covered Federal action:

 (aa) Discussing with an agency (including individual demonstrations) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and,

 (bb) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

 (b)  For purposes of paragraph (a) of this section, the following agency and legislative liaison activities are allowable only where they are prior to formal solicitation of any covered Federal action:

 (i)  Providing any information not specifically requested but necessary for an agency to make an informed decision about initiation of a covered Federal action;

 (ii)  Technical discussions regarding the preparation of an unsolicited application prior to its official submission; and

 (iii)  Capability presentations by persons seeking awards from an agency pursuant to the provisions of the Small Business Act, as amended by Public Law 95-507 and other subsequent amendments.

 (c)  Only those activities expressly authorized by paragraph 2(b)(i) of this section are allowable under paragraph 2(b)(i).

 (ii)  Professional and technical services by Own Employees.

 (aa)  The prohibition on the use of appropriated funds, in paragraph (1) of this section, does not apply in the case of payment of reasonable compensation made to an officer or employee of a person requesting or receiving a Federal contract, grant, cooperative agreement, or loan or an extension, continuation, renewal, amendment, or modification of a Federal contract, grant, cooperative agreement, or loan, if

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, application, or application for that Federal contract, grant, cooperative agreement, or loan or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal contract, grant, cooperative agreement, or loan.

(bb) For purposes of paragraph (A) of this section, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline.

(cc) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award includes those required by law or regulation, or reasonably expected to be required by law or regulation, and any other requirements in the actual award documents.

(dd) Only those services expressly authorized by paragraph (ii) of this section are allowable under paragraph (ii).

(iii)  Reporting for Own Employees.

No reporting is required with respect to payments of reasonable compensation made to regularly employed officers or employees of a person.

(iv)  Professional and technical services by Other than Own Employees.

(aa)  The prohibition on the use of appropriated funds, in paragraph (1) of this section, does not apply in the case of any reasonable payment to a person, other than an officer or employee of a person requesting or receiving a covered Federal action, if the payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, application, or application for that Federal contract, grant, cooperative agreement, or loan or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal contract, grant, cooperative agreement, or loan.

(bb) For purposes of paragraph (A) of this section, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline.

(cc) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award include those required by law or regulation, or reasonably

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

expected to be required by law or regulation, and any other requirements in the actual award documents.

(dd) Persons other than officers or employees of a person requesting or receiving a covered Federal action include consultants and trade associations.

(ee) Only those services expressly authorized by paragraph (iii) of this section are allowable under paragraph (iii).

(3)  <u>Disclosure</u>.

(a)  Each person who requests or receives from an agency a Federal contract, grant, cooperative agreement, or loan shall file with that agency a certification, set forth in this solicitation that the person has not made, and will not make, any payment prohibited by paragraph (b) of this section.

(b)  Each person who requests or receives from an agency a Federal contract, grant, cooperative agreement, or loan shall file with that agency a disclosure form, Standard Form-LLL, "Disclosure of Lobbying Activities," if such person has made or has agreed to make any payment using non-appropriated funds (to include profits from any covered Federal action), which would be prohibited under paragraph (b) of this clause if paid for with appropriated funds.

(c)  Each person shall file a disclosure form at the end of each calendar quarter in which there occurs any event that requires disclosure or that materially affects the accuracy of the information contained in any disclosure form previously filed by such person under paragraph (2) of this section.  An event that materially affects the accuracy of the information reported includes:

  (i)      A cumulative increase of $25,000 or more in the amount paid or
          expected to be paid for influencing or attempting to influence a
          covered Federal action; or

  (ii)     (ii)  A change in the person(s) or individual(s) influencing or
          attempting to influence a covered Federal action; or

(iii)  A change in the officer(s), employee(s), or member(s) contacted to influence or attempt to influence a covered Federal action.

(d)  Any person who requests or receives from a person referred to in paragraph (a) of this section a subcontract exceeding $100,000 at any tier under a Federal contract,

**Awardee: Housing Research & Advocacy Center**                     **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

grant, cooperative agreement, or loan shall file a certification, and a disclosure form, if required, to the next tier above.

(e)  All disclosure forms, but not certifications, shall be forwarded from tier to tier until received by the person referred to in paragraph (a) of this section.  That person shall forward all disclosure forms to the agency.

 (4)  <u>Agreement</u>.  In accepting any contract, grant, cooperative agreement, or loan resulting from this solicitation, the person submitting the offer agrees not to make any payment prohibited by this clause.

 (5)  <u>Penalties</u>.

(a)  Any person who makes an expenditure prohibited under paragraph (2) of this clause shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such expenditure.

(b)  Any person who fails to file or amend the disclosure form to be filed or amended if required by this clause, shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

(c)  Contractors and recipients may rely without liability on the representations made by their subcontractors in the certification and disclosure form.

(6)  <u>Cost Allowability</u>.  Nothing in this clause is to be interpreted to make allowable or reasonable any costs which would be unallowable or unreasonable in accordance with Part 31 of the Federal Acquisition Regulation (FAR), or 2 CFR 200, Subpart E, Cost Principles dealing with cost allowability for recipients of assistance agreements.  Conversely, costs made specifically unallowable by the requirements in this clause will not be made allowable under any of the provisions of FAR Part 31 or 2 CFR 200, Subpart E, Cost Principles.

## 19. LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (UNDER $100,000)

 a.  <u>Definitions</u>.  As used in this clause:

(1)  "Agency", as defined in 5 U.S.C. 552(f), includes Federal executive departments and agencies as well as independent regulatory commissions and Government corporations, as defined in 31 U.S.C. 9101(1).

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

(2)  "Covered Federal Action" means any of the following Federal actions:

(a)  The awarding of any Federal contract;
(b)  The making of any Federal grant;
(c)  The making of any Federal loan;
(d)  The entering into of any cooperative agreement; and,
(e)  The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

Covered Federal action does not include receiving from an agency a commitment providing for the United States to insure or guarantee a loan.

(3)  "Indian tribe" and "tribal organization" have the meaning provided in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450B).  Alaskan Natives are included under the definitions of Indian tribes in that Act.

(4)  "Influencing or attempting to influence" means making, with the intent to influence, any communication to or appearance before an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any covered Federal action.

(5)  "Local government" means a unit of government in a State and, if chartered, established, or otherwise recognized by a State for the performance of a governmental duty, including a local public authority, a special district, an intrastate district, a council of governments, a sponsor group representative organization, and any other instrumentality of a local government.

(6)  "Officer or employee of an agency" includes the following individuals who are employed by an agency:

(a)  An individual who is appointed to a position in the Government under title 5, U.S.C., including a position under a temporary appointment;

(b)  A member of the uniformed services as defined in section 202, title 18, U.S.C.;

(c)  A special Government employee as defined in section 202, title 18, U.S.C.; and,

(d)  An individual who is a member of a Federal advisory committee, as defined by the Federal Advisory Committee Act, title 5, appendix 2.

(7)  "Person" means an individual, corporation, company, association, authority, firm,

Awardee: Housing Research & Advocacy Center                                    **ATTACHMENT A**
Grant #: FEOI230041
Initiative/Component: EOI General

partnership, society, State, and local government, regardless of whether such entity is operated for profit or not for profit.  This term excludes an Indian tribe, tribal organization, or other Indian organization with respect to expenditures specifically permitted by other Federal law.

(8)  "Reasonable compensation" means, with respect to professional and other technical services, a payment in an amount that is consistent with the amount normally paid for such services in the private sector.

(9)  "Recipient" includes all contractors, subcontractors at any tier, and subgrantees at any tier of the recipient of funds received in connection with a Federal contract, grant, loan, or cooperative agreement.  The term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

(10)  "Regularly employed" means, with respect to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, an officer or employee who is employed by such person for at least 130 working days within one year immediately preceding the date of the submission that initiates agency consideration of such person for receipt of such contract, grant, loan, or cooperative agreement.  An officer or employee who is employed by such person for less than 130 working days within one year immediately preceding the date of submission that initiates agency consideration of such person shall be considered to be regularly employed as soon as he or she is employed by such person for 130 working days.

(11)  "State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a territory of possession of the United States, an agency or instrumentality of a State, and a multi-State, regional, or interstate entity having governmental duties and powers.

b.  <u>Prohibition</u>.

(1)  Section 1352 of title 31, U.S.C. provides in part that no appropriated funds may be expended by the recipient of a Federal contract, grant, loan, or cooperative agreement to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions:  the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

(2)  The prohibition does not apply as follows:

(a)  Agency and legislative liaison by Own Employees.

(i)  The prohibition on the use of appropriated funds, in paragraph (1) of this section, does not apply in the case of a payment of reasonable compensation made to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, if the payment is for agency and legislative activities not directly related to a covered Federal action.

(ii)  For purposes of paragraph (2)(a)(i) of this clause, providing any information specifically requested by an agency or Congress is permitted at any time.

(iii)  The following agency and legislative liaison activities are permitted at any time only where they are not related to a specific solicitation for any covered Federal action:

(aa) Discussing with an agency (including individual demonstrations) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and,

(bb) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(iv) The following agency and legislative liaison activities are permitted where they are prior to formal solicitation of any covered Federal action:

(aa) Providing any information not specifically requested but necessary for an agency to make an informed decision about initiation of a covered Federal action;

(bb) Technical discussions regarding the preparation of an unsolicited application prior to its official submission; and

(cc) Capability presentations by persons seeking awards from an agency pursuant to the provisions of the Small Business Act, as amended by Public Law 95-507 and other subsequent amendments.

(v) Only those activities expressly authorized by subdivision (2)(a)(i-iv) of this clause are permitted under this clause.

**Awardee: Housing Research & Advocacy Center**                          **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

(vi) Professional and technical services.

(aa) The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply in the case of:

(i) A payment of reasonable compensation made to an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action, if payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, application, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action.

(ii) Any reasonable payment to a person, other than an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action if the payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, application, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action. Persons other than officers or employees of a person requesting or receiving a covered Federal action include consultants and trade associations.

(bb) For purposes of subdivision (b)(2)(ii)(A) of clause, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline.

(cc) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award includes those required by law or regulation, or reasonably expected to be required by law or regulation, and any other requirements in the actual award documents.

(dd) Only those services expressly authorized by subdivisions (b)(2)(ii)(A)(1) and (2) of this section are permitted under this clause.

(vii) Selling activities by independent sales representatives. The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply to the following selling activities before an agency by independent sales representatives, provided such activities are prior to formal solicitation by an agency and are specifically limited to the merits of the matter:

Awardee: Housing Research & Advocacy Center                    **ATTACHMENT A**
Grant #: FEOI230041
Initiative/Component: EOI General

  (aa) Discussing with an agency (including individual demonstration) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and

  (bb) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

 (4) <u>Agreement</u>.  In accepting any contract, grant, cooperative agreement, or loan resulting from this solicitation, the person submitting the offer agrees not to make any payment prohibited by this clause.

 (5) <u>Penalties</u>.  Any person who makes an expenditure prohibited under paragraph (b) of this clause shall be subject to civil penalties as provided for by 31 U.S.C. 1352.  An imposition of a civil penalty does not prevent the Government from seeking any other remedy that may be applicable.

 (6) <u>Cost Allowability</u>.  Nothing in this clause is to be interpreted to make allowable or reasonable any costs which would be unallowable or unreasonable in accordance with Part 31 of the Federal Acquisition Regulation (FAR), or 2 CFR 200, Subpart E, Cost Principles dealing with cost allowability for recipients of assistance agreements.  Conversely, costs made specifically unallowable by the requirements in this clause will not be made allowable under any of the provisions of FAR Part 31 or 2 CFR 200, Subpart E, Cost Principles.

<u>20. EXCESS FUNDS</u>

In accordance with §2 CFR 200.344, Closeout, the non-Federal entity must promptly refund any balances of unobligated cash that the Federal awarding agency or pass-through entity paid in advance or paid and that is not authorized to be retained by the non-Federal entity for use in other projects.  **ALL funds that have not been utilized in support of grant activities will be returned to HUD.  HUD will no longer authorize the retention and/or use of Excess Funds.**  Thirty (30) days prior to the end of the period of performance for each grant, the HUD GTR and GTM will review the grant's financial account of received and approved invoices, and approved budget to determine if all grant funding has been expended in accordance with the negotiated agreement. The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used.  If funds have not been utilized completely, the grantee must provide the following:   a detailed explanation, which explains by budget line item what gave rise to the unused fund balance.  This information must be provided to the GTR and GO within thirty days (30) before the end date of the grant performance period.  **[See Addendum to the Schedule of Articles for return instructions.]**

Awardee: Housing Research & Advocacy Center                                    **ATTACHMENT A**
Grant #: FEOI230041
Initiative/Component: EOI General

21.  PROGRAM INCOME

In accordance with 2 CFR § 200.307, a non-Federal entity grantee who receives program income from fees for services, settlements, conciliations, and agreements directly generated by a grant supported activity or earned only as a result of the grant agreement during the grant period of performance, must use these funds in support of the grant's current costs and/or on fair housing activities in support of the current grant.  The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used.  In order to use these funds the grantee must provide the following:  (1) a detailed explanation, which explains what gave rise to the program income, provided to the Government Technical Representative and the Grant Officer within 15 days of receipt of the income; and (2) the grantee must submit a request to the Grant Officer outlining the planned use of the program income and receive the Grant Officer's approval of this request prior to use of the funds.  Additionally, if the grantee wishes to use these funds to offset increased indirect costs, the grantee must request such approval from the Grant Officer within thirty days (30) before the end date of the grant period of performance. If the grantee cannot and does not use the program income to support the grant's current costs and/or on fair housing activities in support of the grant, then in accordance with 2 CFR 200.307 the funds must be returned to HUD to reduce the federal award and/or defray program costs. Income received after the end of the grant period of performance is not program income. However, this income should be used by the grantee to affirmatively further fair housing.  **[See Addendum to the Schedule of Articles for return instructions.]**

22.  FRINGE BENEFITS

Per 2 CFR Part 200.431(g)(6)(iii) – Pension Costs and 2 CFR Part 200.431(h)(3) – Post-Retirement Health, Fringe Benefits, states - Amounts funded by the non-Federal Entity in excess of the actuarially determined amount for a fiscal year may be used as the non-Federal entity's contribution in future periods.   As stated, "may" is an optional decision on the part of the Federal Government. It is the decision of the HUD Program Office not to allow usage of excess fringe benefits to be used as "matching funds".

23. CERTIFICATION PROHIBITING EXCESSIVE FORCE AGAINST NON-VIOLENT CIVIL RIGHTS DEMONSTRATORS

        This certification applies to any grant or cooperative agreement using funds appropriated under section 103 of the Housing and Community Development Act of 1974 (42 U.S.C. 5304).

        The applicant certifies that it has adopted and is enforcing:

  (a)  A policy prohibiting the use of excessive force by law enforcement agencies within its

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

jurisdiction against any individuals engaged in non-violent civil rights demonstrations; and

  (b)  A policy of enforcing applicable State and local laws against physically barring entrance to or exit from a facility or location which is the subject of such non-violent civil rights demonstrations within its jurisdiction.

## 24. SEAT BELT USAGE

In accordance with Executive Order 13043 - Increasing Seat Belt Use in the United States, all grantees are encouraged to adopt and enforce on-the-job seat belt policies and programs for their employees when operating company-owned, rented or personally owned vehicles.

## 25. RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

All grantees must comply with the RCRA (Pub. L. 94-580, 42 USC 6962) which provides that any State agency or agency of a political subdivision of a State which is using appropriated Federal funds must comply with Section 6002.  Section 6002 requires that preference be given in procurement programs to the purchase of specific products containing recycled materials identified in guidelines developed by the Environmental Protection Agency (EPA) (40 CFR Parts 247 through 254).  Accordingly, State and local institutions of higher education, hospitals, commercial organizations and international organizations operating domestically, and non-profit organizations that receive direct Federal awards or other Federal funds shall give preference in their procurement programs funded with Federal funds to the purchase of recycled products pursuant to the EPA guidelines.

## 26. ORDER OF PRECEDENCE

        FHIP funding is made available in accordance with the requirements of the authorizing statute (42 U.S.C. 3616 note), the program regulation at 24 CFR 125, and Notices of Funding Opportunity (NOFOs). Funding is awarded through a grant funding instrument.

Accordingly, in the event of any inconsistency among any provisions of this grant, the following order of precedence shall apply:

a.  Appropriations Statute
b.  Authorizing Statute. 42 U.S.C. 3616a note.
c.  Program Regulations at 24 CFR Part 125.
d.  Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards – 2 CFR 200 and OMB Circulars.
e.  Grant Award Documents (including Schedule of Articles (Grant Terms and Conditions),

**Awardee: Housing Research & Advocacy Center**                    ATTACHMENT A
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

     Statement of Work and other related award documents).
f.   Notice of Funding Opportunity (NOFO).
g.   HUD Policies and Procedures
h.   Grantee's Application (if incorporated).


## 27.  EXECUTIVE ORDER 13520:  REDUCING IMPROPER PAYMENTS:  ENHANCING PAYMENT ACCURACY THROUGH A "DO NOT PAY LIST"

a.   Improper payments are the same as that contained in in the Improper Payments Information Act (IPIA) of 2002 (Pub. L. No. 107-300) and Part I, Section A of Appendix C to the Office of Management and Budget (OMB) Circular A-123, Requirements for Effective Measurement and Remediation of Improper payments.  An improper payment is any payment that should not have been made or that was made in an incorrect amount under statutory, contractual, administrative, or other legally applicable requirements.  Incorrect amounts are overpayments and underpayments (including inappropriate denials of payment or service).  An improper payment includes any payment that was made to an **ineligible recipient** or for an **ineligible service**, duplicate payments, payments for services not received, and payments that are for the incorrect amount.  In addition, when an agency's review is unable to discern whether a payment was proper as a result of insufficient or lack of documentation, this payment must also be considered an error.

     A series of basic database checks will be conducted on all pre-award grants and before any reimbursable pre-payment for current existing grants.   Such as the following:

- The fugitive felons list;
- The master death file of deceased individuals;
- The Excluded Parties List System that contains information on entities that are debarred, suspended, or proposed for debarment, excluded, or disqualified or ineligible from receiving Federal contracts, certain subcontracts, and certain Federal assistance and benefits; and
- Any other lists or systems developed by the agency.
  Refer to the following for more information related to improper payments

- The Improper Payments Information Act of 2002 (IPIA), as amended by:
- The Improper Payments Elimination and Recovery Act of 2010 (IPERA) and
- The Improper Payments Elimination and Recovery Improvement Act of 2012 (IPERIA

## 28. EXECUTIVE ORDER 14005, ENSURING THE FUTURE IS MADE IN ALL AMERICA BY ALL OF AMERICA'S WORKFORCE

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

This grant must adhere to Executive Order 14005 made by President Biden on January 25, 2021, to *Ensuring the Future is made in All America by All of America's Workforce.* This Executive Order states:

It is the policy of my Administration that the United States Government should, consistent with applicable law, use terms and conditions of Federal financial assistance awards and Federal procurements to maximize the use of goods, products, and materials produced in, and services offered in, the United States. The United States Government should, whenever possible, procure goods, products, materials, and services from sources that will help American businesses compete in strategic industries and help America's workers thrive. Additionally, to promote an accountable and transparent procurement policy, each agency should vest waiver issuance authority in senior agency leadership, where appropriate and consistent with applicable law.

29. EXECUTIVE ORDERS 13985 and 14091, ADVANCING RACIAL EQUITY AND SUPPORT FOR UNDERSERVED COMMUNITIES THROUGH THE FEDERAL GOVERNMENT

On January 20, 2021, President Biden issued Executive Order 13985 on Advancing Racial Equity and Support for Underserved Communities through the Federal Government. The Executive Order requires the Federal Government to advance equity for all, including communities that have long been underserved, and addressing systemic racism in our Nation's policies and programs.

Consistent with the Executive Order and 2024 amendments to Uniform Grant Requirements for Federal Financial Assistance at 2 CFR 200, the FHIP program aims to use its grantmaking authority to Deliver Equitable Outcomes Through Government Policies, Programs, and Activities for the purpose of yielding equitable outcomes for all Americans, including underserved communities. The 2024 uniform grant requirements encourage Federal agencies and grantees to conduct community engagement activities and use federal grant funds related to federal awards on eligible public participation and community engagement activities. Important federal priorities include advancing equity and support for underserved communities and improving customer experience. Community engagement helps inform the public, including underserved communities, of federal services and support available to them.

These efforts also support accessible, culturally, and linguistically appropriate outreach. The FHIP program endeavors to create more flexibility, incentives, and guidelines for grantees, allowing them to effectively engage with underserved communities as projects are designed and implemented. The FHIP program also works to identify funding opportunities for community organizations working in and with underserved communities to improve access to benefits and

Awardee: Housing Research & Advocacy Center                    ATTACHMENT A
Grant #: FEOI230041
Initiative/Component: EOI General

services for members of underserved communities; and identify and address barriers for individuals with disabilities, as well as older adults, to participate in the engagement process, including barriers to the accessibility of physical spaces, virtual platforms, presentations, systems, training, and documents.

## 30. EXECUTIVE ORDER 14075, ADVANCING EQUALITY FOR LESBIAN, GAY, BISEXUAL, TRANSGENDER, QUEER, AND INTERSEX INDIVIDUALS

On June 15, 2022, President Biden issued Executive Order 13988 on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation. The Executive Order requires HUD and other federal agencies to combat unlawful discrimination and eliminate disparities that harm LGBTQI+ individuals and their families, defend their rights and safety, and pursue a comprehensive approach to delivering the full promise of equality for LGBTQI+ individuals, consistent with Executive Order 13988 of January 20, 2021 (Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation).

Specifically, HUD and other agencies are directed to provide guidance and technical assistance to HUD grantees and programs on effectively and respectfully serving LGBTQI+ individuals, including youth, and families; develop and provide guidance, sample policies, technical assistance, and training to improve services and outcomes for LGBTQI+ individuals, including youth, and families who are experiencing or are at risk of homelessness, and to ensure compliance with the Fair Housing Act, 42 U.S.C. 3601 et seq., and HUD's 2012 and 2016 Equal Access Rules; and seek funding opportunities, including through the Youth Homelessness Demonstration Program, for culturally appropriate services that address barriers to housing for LGBTQI+ individuals, including youth, and families, and the high rates of LGBTQI+ youth homelessness. The FHIP program and grantees serve LGBTQI+ individuals, youth, and families through FHIP grants – including specifically the Education and Outreach Initiative – Sexual Orientation and Gender Identity (NOFO) grants.

## 31. EXECUTIVE ORDER 13988, PREVENTING AND COMBATING DISCRIMINATION ON THE BASIS OF GENDER IDENTITY OR SEXUAL ORIENTATION

On January 20, 2021, President Biden issued Executive Order 13988 on *Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*. The Executive Order follows the Supreme Court's decision in *Bostock v. Clayton County* holding that federal prohibitions against sex discrimination in the workplace extend to and include discrimination on the basis of sexual orientation and gender identity. Relying on this decision, President Biden has directed the federal government to assess and enforce other federal laws that prohibit sex discrimination in the same manner to include sexual orientation and gender identity.

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

The Department's Fair Housing Initiative Program (FHIP) grantees must carry out their funded activities to also prevent and combat discrimination because of sexual orientation and gender identity, consistent with the Executive Order.  FHIP provides funds to public and private not-for-profit entities to conduct activities to prevent or eliminate discriminatory housing practices. These activities provide important support to the full enforcement of the Fair Housing Act by informing the public about fair housing rights and obligations, detecting discriminatory conduct through investigation and testing, and assisting persons to file complaints and obtain relief through legal and administrative forums.  HUD will provide technical assistance to FHIP organizations in the implementation of the Executive Order.

## 32. OTHER ADMINISTRATIVE PROVISIONS

The grantee shall comply with all standard assurances which were executed as part of the application process.

## 33.  EDUCATION AND OUTREACH INITIATIVE (EOI) FUNDS

EOI funding is for education and outreach purposes only.  EOI funds may not be used to support FHOI and PEI activities.

## 34.  PRIVATE ENFORCEMENT INITIATVE (PEI) and FAIR HOUSING ORGANIZATIONS INITIATIVE (FHOI) FUNDS

To assure compliance with appropriations for enforcement-related activities, organizations may perform education and outreach activities limited to only those that support PEI and FHOI grants.  Accordingly, there is a 15% cap (e. g., a limit of 15% of the total dollar amount awarded) allowed for education and outreach related activities.

**Awardee: Housing Research & Advocacy Center**                **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

**UNIFORM ADMINISTRATIVE REQUIREMENTS, COST PRINCIPLES, AND AUDIT REQUIREMENTS FOR FEDERAL AWARDS (2 CFR PART 200)**

OMB Guidance at 2 CFR Chapter I, Chapter II Part 200 et al, "OMB Governmentwide Guidance for Grants and Agreements" and "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," are incorporated by reference into these Schedule of Articles.  The following links introduce Title 2 and text for the 2 CFR Part 200 requirements:

  1) https://www.ecfr.gov/current/title-2/subtitle-A.
  2) eCFR :: 2 CFR Part 200 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards).

Below is a list of and topics for Subparts A-F and Appendices

**SUBPART A - ACRONYMNS AND DEFINITIONS**
200.0 Acronyms
200.1 Definitions
Acquisition cost
Advance payment
Allocation
Audit finding
Auditee
Auditor
Budget
Central service cost allocation plan
Catalog of Federal Domestic Assistance number
CFDA program title
Capital assets
Capital expenditures
Claim
Class of Federal awards
Closeout
Cluster of programs
Cognizant agency for audit
Cognizant agency for indirect costs
Computing devices
Compliance supplement
Contract
Contractor
Cooperative agreement

**Awardee: Housing Research & Advocacy Center**          **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

Cooperative audit resolution
Corrective action
Cost allocation plan
Cost objective
Cost sharing or matching
Cross-cutting audit finding
Disallowed costs
Data Universal Numbering System (DUNS) number
Equipment
Expenditures
Federal agency
Federal Audit Clearinghouse (FAC)
Federal awarding agency
Federal award
Federal award date
Federal financial assistance
Federal interest
Federal program
Federal share
Final cost objective
Fixed amount awards
Foreign public entity
Foreign organization
General purpose equipment
Generally Accepted Accounting Principles (GAAP)
Generally Accepted Government Auditing Standards (GAGAS)
Grant agreement
Hospital
Improper payment
Indian tribe (or "federally recognized Indian tribe'')
Institutions of Higher Education (IHEs)
Indirect (facilities & administrative) costs
Indirect cost rate proposal
Information technology systems
Intangible property
Intermediate cost objective
Internal controls
Internal control over compliance requirements for Federal awards
Loan
Local government

**Awardee: Housing Research & Advocacy Center**                                 **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

Major program
Management decision
Micro-purchase
Modified Total Direct Cost (MTDC)
Non-Federal entity
Nonprofit organization
Obligations
Office of Management and Budget (OMB)
Oversight agency for audit
Pass-through entity
Participant support costs
Performance goal
Period of performance
Personal property
Personally Identifiable Information (PII)
Program income
Property
Protected Personally Identifiable Information (Protected PII)
Project cost
Questioned cost
Real property
Recipient
Research and Development (R&D)
Simplified acquisition threshold
Special purpose equipment
State
Student Financial Aid (SFA)
Subaward
Subrecipient
Supplies
Termination
Third-party in-kind contributions
Unliquidated obligations
Unobligated balance
Voluntary committed cost sharing

**SUBPART B – GENERAL PROVISIONS**
200.100 Purpose
200.101 Applicability
200.102 Exceptions
200.103 Authorities

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

200.104 Supersession
200.105 Effect on other issuances
200.106 Agency implementation
200.107 OMB responsibilities
200.108 Inquiries
200.109 Review date
200.110 Effective date/applicability date
200.111 English language
200.112 Conflict of interest
200.113 Mandatory disclosures

**SUBPART C - PRE-FEDERAL AWARD REQUIREMENTS AND CONTENTS OF FEDERAL AWARDS**
200.200 Purpose
200.201 Use of grant agreements (including fixed amount awards), cooperative agreements, and contracts
200.202 Program planning and design
200.203 Requirement to provide public notice of Federal financial assistance programs
200.204 Notices of funding opportunities
200.205 Federal awarding agency review of merit of proposals
200.206 Federal awarding agency review of risk posed by applicants
200.207 Standard application requirements
200.208 Specific conditions
200.209 Certifications and representations
200.210 Pre-award costs
200.211 Information contained in a Federal award
200.212 Public access to Federal award information
200.213 Reporting a determination that a non-Federal entity is not qualified for a Federal award
200.214 Suspension and debarment
200.215 Never contract with the enemy
200.216 Prohibition on certain telecommunications and video surveillance services or equipment

**SUBPART D - POST-FEDERAL AWARD REQUIREMENTS**
200.300 Statutory and national policy requirements
200.301 Performance measurement
200.302 Financial management
200.303 Internal controls
200.304 Bonds
200.305 Federal Payment
200.306 Cost sharing or matching

**Awardee: Housing Research & Advocacy Center**          **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

200.307 Program income
200.308 Revision of budget and program plans
200.309 Modifications to Period of performance
200.310 Insurance coverage
200.311 Real property
200.312 Federally-owned and exempt property
200.313 Equipment
200.314 Supplies
200.315 Intangible property
200.316 Property trust relationship
200.317 Procurements by states
200.318 General procurement standards
200.319 Competition
200.320 Methods of procurement to be followed
200.321 Contracting with small and minority businesses, women's business enterprises, and labor surplus area firms
200.322 Domestic preferences for procurements
200.323 Procurement of recovered materials
200.324 Contract cost and price
200.325 Federal awarding agency or pass-through entity review
200.326 Bonding requirements
200.327 Contract provisions
200.328 Financial reporting
200.329 Monitoring and reporting program performance
200.330 Reporting on real property
200.331 Subrecipient and contractor determinations
200.332 Requirements for pass-through entities
200.333 Fixed amount subawards
200.334 Retention Requirements for Records
200.335 Requests for transfer of records
200.336 Methods for collection, transmission and storage of information
200.337 Access to records
200.338 Restrictions on public access to records
200.339 Remedies for noncompliance
200.340 Termination
200.341 Notification of termination requirement
200.342 Opportunities to object, hearing and appeals
200.343 Effects of suspension and termination
200.344 Closeout
200.345 Post-closeout adjustments and continuing responsibilities

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

200.346 Collection of amounts due

**SUBPART E - COST PRINCIPLES**
200.400 Policy guide
200.401 Application
200.402 Composition of costs
200.403 Factors affecting allowability of costs
200.404 Reasonable costs
200.405 Allocable costs
200.406 Applicable credits
200.407 Prior written approval (prior approval)
200.408 Limitation on allowance of costs
200.409 Special considerations
200.410 Collection of unallowable costs
200.411 Adjustment of previously negotiated indirect (F&A) costs rates containing unallowable costs
200.412 Classification of costs
200.413 Direct costs
200.414 Indirect (F&A) costs
200.415 Required certifications
200.416 Cost allocation plans and indirect cost proposals
200.417 Interagency service
200.418 Costs Incurred by states and local governments
200.419 Cost accounting standards and disclosure statement
200.420 Considerations for selected items of cost
200.421 Advertising and public relations
200.422 Advisory councils
200.423 Alcoholic beverages
200.424 Alumni/ae activities
200.425 Audit services
200.426 Bad debts
200.427 Bonding costs
200.428 Collections of improper payments
200.429 Commencement and convocation costs
200.430 Compensation – personal services
200.431 Compensation – fringe benefits
200.432 Conferences
200.433 Contingency provisions
200.434 Contributions and donations

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

200.435 Defense and prosecution of criminal and civil proceedings, claims, appeals and patent infringements
200.436 Depreciation
200.437 Employee health and welfare costs
200.438 Entertainment costs
200.439 Equipment and other capital expenditures
200.440 Exchange rates
200.441 Fines, penalties, damages and other settlements
200.442 Fund raising and investment management costs
200.443 Gains and losses on disposition of depreciable assets
200.444 General costs of government
200.445 Goods or services for personal use
200.446 Idle facilities and idle capacity
200.447 Insurance and indemnification
200.448 Intellectual property
200.449 Interest
200.450 Lobbying
200.451 Losses on other awards or contracts
200.452 Maintenance and repair costs
200.453 Materials and supplies costs including costs of computing devices
200.454 Memberships, subscriptions, and professional activity costs
200.455 Organization costs
200.456 Participant support costs
200.457 Plant and security costs
200.458 Pre-award costs
200.459 Professional service costs
200.460 Proposal costs
200.461 Publication and printing costs
200.462 Rearrangement and reconversion Costs
200.463 Recruiting costs
200.464 Relocation costs of employees
200.465 Rental costs of real property and equipment
200.466 Scholarships and student aid costs
200.467 Selling and marketing costs
200.468 Specialized service facilities
200.469 Student activity costs
200.470 Taxes (including Value Added Tax)
200.471 Telecommunication costs and video surveillance costs
200.472 Termination costs
200.473 Training and education costs

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

200.474 Transportation costs
200.475 Travel costs
200.476 Trustees

**SUBPART F - AUDIT REQUIREMENTS**
200.500 Purpose
200.501 Audit requirements
200.502 Basis for determining Federal awards expended
200.503 Relation to other audit requirements
200.504 Frequency of audits
200.505 Sanctions
200.506 Audit costs
200.507 Program-specific audits
200.508 Auditee responsibilities
200.509 Auditor selection
200.510 Financial statements
200.511 Audit findings follow-up
200.512 Report submission
200.513 Responsibilities
200.514 Scope of Audit
200.515 Audit reporting
200.516 Audit findings
200.517 Audit documentation
200.518 Major program determination
200.519 Criteria for Federal program risk
200.520 Criteria for a low-risk auditee
200.521 Management decision
Appendix I to Part 200—Full Text of Notice of Funding Opportunity
Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards
Appendix III to Part 200—Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHESs)
Appendix IV to Part 200—Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Nonprofit Organizations
Appendix V to Part 200—State/Local Government and Indian Tribe-Wide Central Service Cost Allocation Plans
Appendix VI to Part 200—Public Assistance Cost Allocation Plans
Appendix VII to Part 220—States and Local Government and Indian Tribe Indirect Cost Proposals

**Awardee: Housing Research & Advocacy Center**                          **ATTACHMENT A**
**Grant #: FEOI230041**
**Initiative/Component: EOI General**

Appendix VIII to Part 200—Nonprofit Organizations Exempted From Subpart E—Cost
Principles of Part 200
Appendix IX to Part 200—Hospital Cost Principles
Appendix X to Part 200—Data Collection Form (Form SF–SAC)
Appendix XI to Part 200—Compliance Supplement
Appendix XII to Part 200—Award Term and Condition for Recipient Integrity and Performance
Matters

Awardee: Housing Research & Advocacy Center                    **ATTACHMENT B**
Grant #: FEOI230041
Initiative/Component: EOI-General

<div align="center">

**ADDENDUM**
**(TO THE SCHEDULE OF ARTICLES)**
**(For FY 2023 PEI / FHOI / EOI /General/National Programs Component Awards)**

</div>

## GRANT AGREEMENT/REVISIONS/PRIOR APPROVALS/AMENDMENTS

Grantee will perform project activities in accordance with its application, attached hereto by reference, its negotiated Statement of Work (SOW), and the associated, final budget. In general, grantees are required to request prior approvals from the HUD Director (Grant Officer) for budget and program plan revisions, in accordance with 2 CFR 200.308. If the grantee changes its name, merges with another organization, or plans any major organizational changes during the course of this grant, the Grantee must give advance notice to the HUD Director (Grant Officer) of any such proposed mergers, name changes, or other major organizational changes that affect the implementation of this grant. Any changes in key personnel must be provided to the HUD Director (Grant Officer) immediately. Where necessary, the HUD Director (Grant Officer) will immediately inform eLOCCS Security of the change.

**A.** *Requirements for Prior HUD Approvals*

More specifically, pursuant to 2 CFR 200.308 (b, c1-8, f), grantees must request prior approvals from the HUD Director (Grant Officer) for the following program or budget-related reasons, which require changes that must be incorporated by amendment to the Grant Agreement:

(1) **Statement of Work (SOW).** Any future revisions to the SOW which result in a change to the scope or objectives of the project or program (*even if there is no associated budget revision requiring prior written approval*) approved by HUD during the grant application award process.
(2) **Changes to Key Personnel.** As noted above, any change in a key person specified in the application or the Federal award.
(3) **Reduced Time of Project Director**. The absence from grant activities for more than three months, or a 25 percent reduction in time devoted to the project, by approved project director.
(4) **Inclusion of Other Costs Requiring Prior Approval**. The inclusion, (*unless waived by HUD*), of costs that require prior approval in accordance with subparts D and E of 2 CFR 200, including but not limited to program income, equipment, membership, fundraising, and travel.
(5) **Changes in the Budget** - Under §2 CFR 200.308 Revision of Budget and Program Plans, optional requirements are outlined regarding budgetary revisions. See FHIP specific requirements identified under number 6 of Section 4 – Post-Award Amendments. Note: All changes to Budget that exceed 10 percent of the award and/or changes to the SOW must be incorporated by an amendment to the grant agreement.

April 2024

**REQUEST FOR EXTENSIONS - PERIOD OF PERFORMANCE**

Due to unforeseen circumstances, FHIP Grantees may need to request that additional time be added to the period of performance for their grant(s) in order to complete the required activities of the project set forth in the SOW.  See 2 CFR 200.309 for information related to *Modifications to Period of Performance*.

Processing Procedures:

- Requests for project extensions must not be submitted when the tasks in the Statement of work (SOW) can be completed in a timely manner through more vigilant oversight and management of the FHIP project.

- Grantees must submit requests for extensions as soon as it becomes apparent that an extension will be needed, but no later than 45 days prior to the end of the grant performance period.

  - ❖ Requests must be made in writing to the Grant Officer, with "cc:" copies to the GTR and GTM.

  - ❖ Requests must provide a justification for the extension.

  - ❖ Requests must state the specific length of the extension requested.

  - ❖ Requests must not be made in an effort to spend down grant funds.

- If the extension receives preliminary approval by the Grant Officer, the grantee will be asked to provide the following before a grant amendment will be executed (these items can be submitted with the original extension request, if so desired by the grantee):

  - ❖ Revised SOW which includes revised timeframes for task completion or new/additional tasks.

    - ➢ **If the extension request is for 90 days or more, the revised SOW must reflect that the draft final report will be submitted 15 days before the end of the extension period and the final report will be submitted by the last day of the extension period.**

  - ❖ Revised payment schedule that reflects the extension period and the tasks to be completed for each payment.

  - ❖ Revised budget if extension results in modifications to the project budget line items.

- Extensions will not be granted if:

  - ❖ Requests were made **less than 45 days** before the end of the grant performance period.

April 2024

- ❖ Requests are made solely to expend the balance of fixed-price grant award funds (e.g., all SOW tasks have been completed, but funds remain). In accordance with 2 CFR Part 200.344, Closeout, the non-Federal entity must promptly refund any balances of unobligated cash that the Federal awarding agency or pass-through entity paid in advance or paid and that is not authorized to be retained by the non-Federal entity for use in other projects. **ALL** funds that have not been utilized in support of grant activities will be returned to HUD. HUD will no longer authorize the retention and/or use of Excess Funds in accordance with Item 20 – *Excess Funds*, in Attachment A to the Schedule of Articles. See also 2 CFR 200.201 for general information on *Use of Grant Agreements (including Fixed-Price Awards), Cooperative Agreement, and Contracts.*

- ❖ Requests fail to provide adequate justification for the reasons an extension is necessary.

- • Failure to submit a grant extension within the above-described procedures may result in:

- ❖ A less than favorable overall assessment of grantee performance through progress reviews/close-out assessments.

Remaining funds, if applicable, being de-obligated.

Attachment G, **Grant Payment Schedule**, will also be revised to reflect any future modifications to the drawdown payment schedule, should changes be necessary due to amendments to the basic grant.

**Grant Extensions**. Although HUD is authorized to waive, at its option, other cost-related and administrative prior written approvals, such as for one-time extensions of the period of performance for up to 12 months – HUD has not elected to do so, and such extensions continue to require advance approval. See more on grant extensions below.

Refer to the full text of 2 CFR 200.308 for all requirements related to prior approval requirements for Budget and Program revisions.

All other changes to non-construction budgets, except for the changes described in paragraph (c) of 2 CFR 200.308, do not require prior approval.

### *Termination of Grants*

Failure of the Grantee to make reasonable efforts to complete the activities to finalize the project within the timeframes set forth in the SOW may result in the termination of the grant agreement. In this event, no further drawdowns will be made under the terms of the award. Also, complaints by third parties against the Grantee alleging violations of the FHIP statute, regulation, or any of the terms of the grant agreement, will be forwarded to the HUD Director (Grant Officer) for resolution, who will review the allegations and take appropriate action in accordance with 2 CFR 200.339 and §200.340, or another applicable program policy.

April 2024

All projects must be broad-based (not limited to a single fair housing issue).  Although the Grantee's project can have a special focus, **all** FHIP-funded projects **must** address housing discrimination on all bases, i.e., race, color, religion, sex, disability, familial status, and national origin.

**IDENTIFICATION OF GRANTEE(S) WORKPLACE(S) – Drug-Free Requirements**

All grantees must identify to FHIP staff all known workplaces under the award.  The workplace identification must include the actual address of buildings or other sites where work under the award will take place.  The applicant must also inform the agency of any workplace changes during the performance of the award.  The identification of the workplaces must occur either:

> (1) At the time of application or upon award; or
>
> (2) In documents the applicant keeps on file in its offices during performance of the award, in which case the applicant must make the information available for inspection upon request by the agency. See:
> - eCFR : 2 CFR Part 182 -- Governmentwide Requirements for Drug-Free Workplace (Financial Assistance); and
> - eCFR : 2 CFR Part 2429 -- Requirements for Drug-Free Workplace (Financial Assistance).

**[FOR PEI-FHOI ONLY:**

FHIP-funded projects must include the following enforcement related activities in the project application: testing, interviewing potential victims of discrimination, analyzing housing-related issues, conducting mediation, litigation, or referral to administrative enforcement agencies, and disseminating information about fair housing laws.**]**

**FAIR HOUSING AND FREE SPEECH**

No grant funds may be used to investigate or prosecute under the Fair Housing Act any otherwise lawful activity engaged in by one or more persons, including the filing or maintaining of a non-frivolous legal action, that is engaged in solely for the purpose of achieving or preventing action by a government official or entity, or a court of competent jurisdiction.

**REPORTS, MEETINGS, AND PERFORMANCE MEASURES AND TASKS**

**Performance Measures:**  The Grantee must provide quarterly reports as specified by HUD on its performance measures.  The Grantee's measures will support HUD's strategic goals and policy priorities.  Reports must identify and include milestones and timelines, such as, but not limited to, identifying the tasks completed, providing appropriate information on any seminars, training and/or conferences held, referrals of fair housing complaints to HUD or to the substantially equivalent fair housing enforcement agencies, and any other activity undertaken by the Grantee under the grant.  Report success in meeting organization's benchmark output goals and output results, outcomes associated to the achievement of the purposes of the program, as well as the impact that the work has made on the individual assisted, the community, and the

April 2024

strategic goals of the Department.  See https://www.ecfr.gov/current/title-2/subtitle-A/chapter-II/part-200/subpart-D/section-200.301 for information on *Performance Measurement*.

**Performance Assessment:**  Performance per FHIP's NOFO requirements stipulate that if a grantee has received a "Poor" performance rating at the end of the Performance period of their grant, they will be deemed ineligible to apply for a new grant for 12 months (1-year suspension). If the grantee has a current multi-year grant, all funding will be terminated and de-obligated.  In order to become eligible to apply for future grants, the grantee must seek technical assistance to improve their performance and if awarded a grant after the suspension, they will be placed on a "High Risk" designation.  The length of time and performance requirements for the "High Risk" designation will be determined and negotiated with their HUD designated Grant Officer, GTR and GTM.

**Reports:**  At the conclusion of the grant, the Grantee agrees to describe the status of performance measures in a spreadsheet format or other manner specified by HUD.  The Grantee will also report quarterly, in a format determined by HUD (which may be computer generated) on the status of project tasks against the approved milestones and timelines.  Reports must include the number and basis of claims/complaints filed with HUD, or in any court, the number and terms of settlements or other outcomes achieved.  The terms of the settlements ordered by a court or other tribunal that requires confidentiality need not be reported.

**Financial Monitoring and Reporting:**  The Federal Financial Reports, SF-425, will be prepared and submitted quarterly (4 times a year) during the period of performance for the grant.  Based on assessment of the grant performance and for more effective monitoring, more frequent reporting of the SF-425 will be conducted.  The reports must reflect accurate, current and complete disclosure of the financial results (Refer to 2 CFR 200.238 *Financial Reporting* and  2 CFR 200.302 *Financial Management* ).  Failure to comply will result in one or more of the following actions (See 2 CFR 200.339 *Remedies for Non-Compliance* and 2 CFR 200.340 *Termination*):

a) Temporarily withhold cash payments pending correction of the deficiency;
b) Disallow (that is, deny both use of funds and any applicable matching credit for) all or part of the cost of the activity or action not in compliance;
c) Wholly or partly suspend or terminate the Federal award;
d) Initiate suspension or debarment proceedings as authorized under 2 CFR 180 *Government-Wide Debarment and Suspension*  and Federal awarding agency regulations;
e) Withhold further Federal awards for the project or program;
f) Terminate the Federal award.

**Evaluation Process**:  Report numerical measures characterizing the results of a program activity, service or intervention and used to measure performance.  Outputs must lead to targets for achievement of outcomes.  Results must be represented by both the actual number and percent of the goal achieved.

**Meetings:**  Furthermore, the Grantee agrees to meet semi-annually with HUD to ensure that project activities satisfy grant requirements.

April 2024

**Program Deliverables:**  Grantees are to submit to HUD one electronic copy of all final education and outreach materials to the FHIP Program Division using the HUD approved format as follows:

- Graphics – Vector
- Photos – JPEG
- Video – MPEG4
- Audio – MP3 or above, or WMA
- Text – Word, HTML5
- PDFs – Fully searchable
- Name of grantee organization
- Grant number
- Contact person
- Organization telephone number
- email address
- brief description of the material(s)

## PROGRAM EVALUATIONS

Grantee is required to report meaningful data derived from client feedback on how they benefited from the project activities.  Accomplishments can be achieved using specific measurement tools to assess the impact of grantee solutions.

## CONSULTANTS/SUBCONTRACTORS

The Grantee must obtain advance written approval, provide a detailed budget, and provide resumes/qualifications for subcontractors and consultants fees not to exceed the GS-15 Step 10 daily rate for FY 2023(locality pay will not be included).

## WAIVERS

Grantee must provide further justification to the Grant Officer to support the waiver of the daily rate for attorneys' and/or consultants' fees not to exceed the GS-15 Step 10 daily rate for FY 2023.

## PUBLICATIONS AND NEWS RELEASES

The Grantee agrees that news releases, publications, studies, or other products involving grant-funded activities will NOT BE RELEASED to the public without prior HUD approval.  The Grantee further agrees that it will submit any press release/news announcement, study, and/or other product developed as part of grant-funded activities to the GTR  for review and approval at least  2 weeks prior to its release (this will allow time for the GTR to send to the Office of Public Affairs for review and approval for release), unless the HUD agrees in writing to waive the "at least 2  weeks" submission requirement.  Publications, flyers and other routine documents

previously approved by the GTR and/or HUD, may be published without further  HUD approval.  However, audio and video announcements must be submitted to the GTR and the grantee must await approval.

Publication and printing costs are covered in 2 CFR 200.461.

**NON-DUPLICATION OF PAYMENTS**

Neither the Grantee nor any subcontractor(s) may charge HUD, the U.S. Department of Justice, or any other Federal funding source for any activities funded by FHIP.

**EXCESS FUNDS**

In accordance with 2 CFR 200.344, *Closeout*, the non-Federal entity must promptly refund any balances of unobligated cash that the Federal awarding agency or pass-through entity paid in advance or paid and that is not authorized to be retained by the non-Federal entity for use in other projects.  **ALL** funds that have not been utilized in support of grant activities will be returned to HUD.  HUD will no longer authorize the retention and/or use of Excess Funds.  Thirty (30) days prior to the end of the period of performance for each grant, the HUD GTR and GTM will review the grant's financial account of received and approved invoices, and approved budget to determine if all grant funding has been expended in accordance with the negotiated agreement.  The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used.  If funds have not been utilized completely, the grantee must provide the following: a detailed explanation, which explains by budget line item what gave rise to the unused fund balance.  This information must be provided to the GTR and GO within  30 days  before the end date of the grant performance period.  **(See Appendix 1 on page 13 for Procedures for returning funds.)**

**FRINGE BENEFITS**

Per 2 CFR 200.431(g)(6)(iii), *Fringe Benefits*, amounts funded by the non-Federal Entity in excess of the actuarially determined amount for a fiscal year may be used as the non-Federal entity's contribution in future periods.   As stated, "may" is an optional decision on the part of the Federal Government.  It is the decision of the HUD Program Office not to allow usage of excess fringe benefits to be used as "matching funds."

**INDIRECT COST RATE**

**For grantees that have an approved and current negotiated (final or pre-determined) or provisional rate for indirect costs, the grantee may use the applicable rate to charge indirect costs to the grant.**  Grantees also have the option to use a De Minimis 10 percent rate if they do have an approved indirect cost rate at the time of award.

Grantees must submit indirect cost rate proposals and audited financial statements each year for their active federal funding no later than six months after the end of their prior fiscal year end (FYE).  This is necessary to establish Final Rates based on actual costs for the prior fiscal year.  Provisional indirect cost rates are temporary and can be used to charge indirect costs until final

April 2024

rates are established based on actual costs.  If final rates come in less than the provisional rate used to charge the grant, HUD may require the grantee to return the difference or be subject to alternative offsets of grant funds.

_____  A. - Grantee will develop and submit to HUD an indirect cost proposal within 90 days of the effective date of this award, if this is the grantee's first federal grant or the grantee's previous indirect cost rate has expired.

_____  B. - Grantee's proposed indirect cost rate of ___% of the total direct labor and fringe benefits or other base (_____) has been approved for billing purposes for this grant pending the negotiation of a provisional or other type of indirect cost rate with HUD.

_____  C. - Certain indirect-type costs have been included as direct costs pending the negotiation of a final, pre-determined, provisional, or other type of indirect cost rate with HUD.

_____  D. - Grantee's currently negotiated provisional indirect cost rate of ___% of total labor and fringe benefits or other base (specify_____) has been approved pending negotiation of a final indirect cost rate with HUD.

__x__  E.   Other (De Minimis 10 percent)                                        ).


See 2 CFR 200.414 for more information on indirect cost rates.  Some federal agencies have indirect cost rate guidance available on-line.  The Department of Labor has an indirect cost rate guide posted at *A Guide for Indirect Cost Rate Determination (dol.gov)*.

## FINANCIAL AUDITS/AUDIT COSTS

A Grantee that expends $750,000 or more in a year in total Federal awards shall have a single or program-specific audit conducted for that year in accordance with the provisions of 2 CFR 200.501 and 2 CFR 200.514 of 2 CFR 200, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards".

A Grantee that expends less than $750,000 a year in Federal awards is exempt from Federal audit requirements for that year, except where HUD, the Inspector General, or the General Accounting Office (GAO) conducts or arranges for additional audits (e.g., financial audits, performance audits, evaluations, inspections, or reviews).  2 CFR Part 200 does not limit the authority of Federal agencies (including their Inspectors General or GAO) to conduct or arrange for additional audits, nor authorize any auditor to constrain Federal agencies from carrying out additional audits.  Any additional audits shall be planned and performed in such a way as to build upon the work performed by other auditors.  A Federal agency that conducts or contracts for additional audits shall, consistent with other applicable laws and regulations, arrange for funding the full cost of such additional audits.

April 2024

For a Grantee expending $750,000 or more in a year in Federal awards, the cost of audits made in accordance with the provisions of 2 CFR Part 200, Subpart F – Audit Requirements, are allowable charges to Federal awards.  The charges may be considered a direct cost or an allocated indirect cost, as determined in accordance with the provisions of applicable 2 CFR Part 200, Subpart E - Cost Principles, the Federal Acquisition Regulations (FAR) (48 CFR parts 30 and 31), or other applicable cost principles or regulations.

A Grantee shall not charge to a Federal award the cost of any audit under the Single Audit Act not conducted in accordance with 2 CFR Part 200, or the cost of auditing a Grantee which had Federal awards expended of less than $750,000 per year and is thereby exempted from having an audit conducted under the provisions of 2 CFR Part 200.

The only exemption to the OMB Circular A-133 is that pass-through entities may charge Federal awards for the cost of agreed-upon-procedures engagements to monitor subrecipients who are exempted from the requirements of the Single Audit Act and Subpart F—Audit Requirements of this 2 CFR Part 200.

**PROGRAM INCOME**

*Program Income Earned During Period of Performance*. In accordance with 2 CFR § 200.307, a non-Federal entity grantee who receives program income from fees for services, settlements, conciliations, and agreements directly generated by a grant supported activity or earned only as a result of the grant agreement during the grant period of performance, must use these funds in support of the grant's current costs and/or on fair housing activities in support of the current grant.  The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used.  In order to use these funds the grantee must provide the following:  (1) a detailed explanation, which explains what gave rise to the program income, provided to the Government Technical Representative and the Grant Officer within thirty days (30) before the end date of the grant period of performance; and (2) the grantee must submit a request to the Grant Officer outlining the planned use of the program income and receive the Grant Officer's approval of this request prior to use of the funds.  Additionally, if the grantee wishes to use these funds to offset increased indirect costs, the grantee must request such approval from the Grant Officer within thirty days (30) before the end date of the grant period of performance.

*Return of Unused Program Income*.  If the grantee cannot and does not use the program income to support the grant's current costs and/or on fair housing activities in support of the grant, then in accordance with 2 CFR 200.307 the funds must be returned to HUD to reduce the federal award and/or defray program costs. [See Appendix 1 to the Addendum (B) to the Schedule of Articles for return instructions.]

*Income Earned After Period of Performance*.  Income received after the end of the grant period of performance is not program income. This income should be used by the grantee conduct activities to affirmatively further fair housing.

April 2024

As stated above, the use of funds for this purpose must be pre-approved in writing by the GTR assigned to the grant (2 CFR 200.407). All funds that have not been utilized in support of grant activities will be returned to HUD. (See Appendix 1 for Procedures on returning funds and 2 CFR 200.346 on Collection of Debts.)  (See Schedule of Articles for additional instructions.)

**CONFLICT OF INTEREST**

The Grantee agrees to certify it will not solicit funds from or seek to provide fair housing educational or other services or products for compensation, directly or indirectly, to any person or organization which has been the subject of FHIP-funded testing by the Grantee in the past 12 months following testing by the Grantee. (*See Appendix 2 for Conflict of Interest Policy forms*.)

**POTENTIAL CONFLICT OF ORGANIZATIONAL INTEREST**

FHIP defines a sponsor as an organization that applies for a grant on behalf of an organization that may not be eligible to apply directly to FHIP for a grant. Such an organization may also be called a "pass-through" organization. The sponsored organization, also called the sub-recipient, will carry out the work of the project under the oversight of the sponsoring organization for a period as specified under the grant agreement. Pass-through/sub-recipients must be empowered as follows:

- To contract or otherwise conduct the activities under the grant agreement;
- Have the financial resources, the necessary experience, organization, technical qualifications, and facilities; or a firm commitment or ability to obtain such; and
- Have a financial management system which provides efficient and effective accountability and control of all property, funds, and assets sufficient to meet grantee needs and grantee audit requirements.

Private non-profit agencies must be properly incorporated as a non-profit organization with an elected and autonomous board (separate from the "Sponsor") which meets regularly.

Provisions of 2 CFR 200 applicable to conflict of interests, pass-through entity (PTE), sponsors, and sub-recipients include, but are not limited to:

   a.  2 CFR Part 200.1 (*Definitions*) –  2 CFR 200.1.

        "non-Federal entity", "non-profit organization" "pass-through entity", "recipient", "sub-award", "sub-recipient."

   b.  2 CFR Part 200.101 (*Applicability to different types of Federal awards*) – 2 CFR 200.101.

        Table 1 to paragraph b describes the following:

        "…what portions of this part apply to which types of Federal awards. The terms and conditions of Federal awards (including this part) flow down to subawards to

April 2024

subrecipients unless a particular section of this part or the terms and conditions of the Federal award specifically indicate otherwise. This means that non-Federal entities must comply with requirements in this part regardless of whether the non-Federal entity is a recipient or subrecipient of a Federal award. Pass-through entities must comply with the requirements described in subpart D of this part, §§ 200.331 through 200.333, but not any requirements in this part directed towards Federal awarding agencies unless the requirements of this part or the terms and conditions of the Federal award indicate otherwise."

c.  2 CFR Part 200.112 (*Conflict of Interest*) –  2 CFR 200.112.

"The Federal awarding agency must establish conflict of interest policies for Federal awards. The non-Federal entity must disclose in writing any potential conflict of interest to the Federal awarding agency or pass-through entity in accordance with applicable Federal awarding agency policy."

d.  2 CFR Part 200.331-332 (*Subrecipient and Contractor Determinations and Requirements for pass-through entities, a-h*) 2 CFR 200.331 and 2 CFR 200.332.

e.  2 CFR Subpart D (*Post Federal Award Requirements*) 2 CFR 200 subpart D.

f.  Appendix IV to Part 200 – (*Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Nonprofit Organizations*) Appendix IV to Part 200.

## CONTINUITY OF OPERATIONS (COOP) PLAN

The Grantee will develop a COOP Plan.  This Plan will enable an agency to continue essential functions and services when normal operations are disabled due to disaster or events that take the agency offline.  The COOP Plan is the agency's blueprint for internal operations in the event of a disaster.  The original Plan and all updates will be provided to the HUD Director (Grant Officer).

## TESTERS [FOR PEI-FHOI ONLY]

All grantees that propose testing must review the FHIP Regulation at  24 CFR 125.107 (*Testers*) and reflect these requirements in their application as well as be a Qualified Fair Housing Enforcement Organization or a Fair Housing Enforcement Organization.  Costs for any background checks are an allowable expenditure. Refer to HUD's publication of a Final Rule (*Expanding the pool of fair housing testers for FHIP and FHAP Funded Entities*) for further information regarding FHIP testers.

## LENDER/INSURANCE TESTER TRAINING FEES [FOR PEI-FHOI ONLY]

A $75/day rate for 2 days ($150 maximum) has been approved for lender/insurance tester training fees.  Grantee must provide documentation to the GTR during the term of this award that

April 2024

each tester completing the training has conducted a minimum of two tests or provide reasonable justification for the inability of any tester to meet this requirement.

The Grantee agrees to include the following language in the agreement entered into with lending/insurance testers:

> "I have completed lender and/or insurance tester training provided by _____.*  It is my intention to make myself reasonably available when requested to conduct tests during the next _____."**

> *Insert Grantee name.
> **Insert grant duration or number of months testing will occur during grant.

## APPROVAL OF TESTING METHODOLOGY AND TESTER TRAINING [FOR PEI-FHOI ONLY]

For all testing other than rental or accessibility testing, the Grantee agrees to submit to the GTR for review and approval the testing methodology and tester training to be used in tests funded under the grant.  The methodology and training are tasks under the SOW and no payment for tests will be authorized until they receive HUD review and approval.  The documents which must be submitted for review are the testing manual, the tester training manual and all testing materials, including the blank test book.  The methodology must include a general description of the procedures for testing, including any plans for multi-variable testing and the reasons for such testing [when is a test used, when is further investigation appropriate, and an estimate of the numbers of tests and test types (sales, insurance, lending, etc.)]; the basis or protected class of tests to be conducted (e.g., race, religion, familial status, etc.); the criteria for selecting testers for each type of test to be conducted; areas of tester training to be provided to testers under the grant; criteria for selecting subjects of the tests; factors to be examined in analyzing test results; and, types of actions that may be taken based on test results.

The testing methodologies and procedures will be protected to the extent that any information is proprietary, confidential, a trade secret, copyrighted, patented subject to trademark restrictions, or in any other way inappropriate for disclosure.  The Grantee as originator of the information will make this initial determination and will conspicuously notify HUD that the information is subject to a specific protection against disclosure by a method reasonably calculated to give adequate notice.  To the extent that the information is requested via the Freedom of Information Act (FOIA), the Privacy Act, or any other legal mechanism, HUD legal counsel will review, and base any determination concerning the release of the information on the recommendation of the grantee in accordance with submitter notice requirements.

## GRANTEE/TESTER ECONOMIC INTERESTS [FOR PEI-FHOI ONLY]

Grantee agrees that it and testers will not have an economic interest in the outcome of any test, directly or indirectly, without prejudice to the right of any person or entity to recover damages for any cognizable injury.  Furthermore, the Grantee nor any of its personnel, testers and the organizations conducting tests, when different from the Grantee, may not (1) be a relative by adoption, blood, or marriage of any party in a case,  (2) have had any employment or other

April 2024

affiliation, within 1 year before or after the test, with the person or organization to be tested, or (3) be a licensed competitor of the person or organization to be tested in the listing, rental, sale, or financing of real estate.

## RETALIATION - TARGETING NON-COMPLAINT BASED TESTS [FOR PEI-FHOI ONLY]

The Grantee agrees that refusal by a person or organization to enter into an agreement that brings economic benefit to the Grantee may not be used as a criterion for targeting non-complaint based testing.

## REPORTS ON ENFORCEMENT ACTIVITIES [FOR PEI-FHOI ONLY]

The Grantee agrees to provide reports in a format (which may be computer generated), at a frequency and with contents specified by HUD.   The report must include the number and basis of claims/complaints filed with HUD or in Federal/State court, the number and terms of settlements or other outcomes achieved, unless confidential.

## ENFORCEMENT LOG/FORMAT [FOR PEI-FHOI ONLY]

A Grantee must complete an enforcement log for all allegations of discrimination under the Fair Housing Act received by the Grantee under this award.  This log must be submitted in accordance with provisions of the approved SOW.  The log will be protected to the extent that any of that information is proprietary, confidential, a trade secret, copyrighted, patented subject to trademark restrictions, or in any other way inappropriate for disclosure.  The Grantee as originator of the information will make this initial determination and will conspicuously notify HUD that the information is subject to a specific protection against disclosure by a method reasonably calculated to give adequate notice.  To the extent that the information is requested via the FOI, the Privacy Act, or any other legal mechanism, HUD legal counsel will review, and base any determination concerning the release of the information on the recommendation of the Grantee in accordance with submitter notice requirements.

April 2024

APPENDIX 1

## PROCEDURES FOR PROCESSING THE RETURN OF GRANT FUNDS TO THE U.S. DEPARTMENT OF TREASURY

In accordance with  2 CFR 200.344- *Closeout*, the non-Federal entity must promptly refund any balances of unobligated cash that the Federal awarding agency or pass-through entity paid in advance or paid and that is not authorized to be retained by the non-Federal entity for use in other projects.  **ALL** funds that have not been utilized in support of grant activities will be returned to HUD.  HUD will no longer authorize the retention and/or use of Excess Funds.  Thirty (30) days prior to the end of the period of performance for each grant, the HUD GTR and GTM will review the grant's financial account of received and approved invoices, and approved budget to determine if all grant funding has been expended in accordance with the negotiated agreement.  The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used.  If funds have not been utilized completely, the grantee must provide the following: a detailed explanation, which explains by budget line item what gave rise to the unused fund balance.  This information must be provided to the GTR and GO within 30 days before the end date of the grant performance period.

**The following are the required procedures for the grantee and HUD personnel to use to document and return funds back to the U.S. Department of Treasury:**

A.  Grantee will write a check to the U.S. Department of Treasury for the amount of funds being returned and a brief cover letter regarding the returned funding addressed to the HUD point of contact (POC) (Regional Director/GO, GTR, or GTM).  The check and correspondence will be sent to the HUD POC.

B.  The HUD POC will mail the check and correspondence to the HUD lockbox at the following address:

> U.S. Department of Housing and Urban Development
> US Bank
> PO Box 6200-05
> Portland, OR 97228-6200

April 2024

APPENDIX 2

> ## THE FOLLOWING ARE EXAMPLES YOU CAN USE – NOT REQUIRED TO USE THIS FORMAT

**[Name of organization and address]**

### CONFLICT OF INTEREST POLICY

**SECTION 1.  PURPOSE**:

_____ is a nonprofit, tax-exempt organization.  Maintenance of its tax-exempt status is important both for its continued financial stability and for public support.  Therefore, the IRS as well as state regulatory and tax officials view the operations of _____ as a public trust, which is subject to scrutiny by and accountable to such governmental authorities as well as to members of the public.

Consequently, there exists between _____ and its board, officers, and management employees and the public a fiduciary duty, which carries with it a broad and unbending duty of loyalty and fidelity.  The board, officers, and management employees have the responsibility of administering the affairs of _____ honestly and prudently, and of exercising their best care, skill, and judgment for the sole benefit of _____.  Those persons shall exercise the utmost good faith in all transactions involved in their duties, and they shall not use their positions with _____ or knowledge gained therefrom for their personal benefit.  The interests of the organization must be the first priority in all decisions and actions.

**SECTION 2.  PERSONS CONCERNED:**

This statement is directed not only to directors and officers, but to all employees who can influence the actions of _____.  For example, this would include all who make purchasing decisions, all persons who might be described as "management personnel," and anyone who has proprietary information concerning _____.

**SECTION 3.  AREAS IN WHICH CONFLICT MAY ARISE:**

Conflicts of interest may arise in the relations of directors, officers, and management employees with any of the following third parties:

1. Persons and firms supplying goods and services to _____.
2. Persons and firms from whom _____ leases property and equipment.
3. Persons and firms with whom _____ is dealing or planning to deal in connection with the gift, purchase or sale of real estate, securities, or other property.
4. Competing or affinity organizations.
5. Donors and others supporting _____.

April 2024

6. Agencies, organizations. and associations which affect the operations of _____.
7. Family members, friends, and other employees.

## SECTION 4.  NATURE OF CONFLICTING INTEREST:

A conflicting interest may be defined as an interest, direct or indirect, with any persons or firms mentioned in Section 3.  Such an interest might arise through:

1. Owning stock or holding debt or other proprietary interests in any third party dealing with _____.
2. Holding office, serving on the board, participating in management, or being otherwise employed (or formerly employed) with any third party dealing with _____.
3. Receiving remuneration for services with respect to individual transactions involving _____.
4. Using _____'s time, personnel, equipment, supplies, or good will for other than _____-approved activities, programs, and purposes.
5. Receiving personal gifts or loans from third parties dealing or competing with _____.  Receipt of any gift is disapproved except gifts of a value less than $50, which could not be refused without discourtesy.  No personal gift of money must ever be accepted.

## SECTION 5.  INTERPRETATION OF THIS STATEMENT OF POLICY:

The areas of conflicting interest listed in Section 3, and the relations in those areas which may give rise to conflict, as listed in Section 4, are not exhaustive.  Conflicts might arise in other areas or through other relations.  It is assumed that the directors, officers, and management employees will recognize such areas and relation by analogy.

The fact that one of the interests described in Section 4 exists does not necessarily mean that a conflict exists, or that the conflict, if it exists, is material enough to be of practical importance, or if material, that upon full disclosure of all relevant facts and circumstances it is necessarily adverse to the interests of _____.

However, it is the policy of the board that the existence of any of the interests described in Section 4 shall be disclosed before any transaction is consummated.  It shall be the continuing responsibility of the board, officers, and management employees to scrutinize their transactions and outside business interests and relationships for potential conflicts and to immediately make such disclosures.

April 2024

**SECTION 6. DISCLOSURE POLICY AND PROCEDURE:**

Transactions with parties with whom a conflicting interest exists may be undertaken only if all of the following are observed:

1. The conflicting interest is fully disclosed;
2. The person with the conflict of interest is excluded from the discussion and approval of such transaction;
3. A competitive bid or comparable valuation exists; and
4. The [board or a duly constituted committee thereof] has determined that the transaction is in the best interest of the organization.

Disclosure in the organization must be made to the chief executive officer (or if she or he is the one with the conflict, then to the board chair), who shall bring the matter to the attention of the [board or a duly constituted committee thereof]. Disclosure involving directors must be made to the board chair, (or if she or he is the one with the conflict, then to the board vice-chair) who shall bring these matters to the [board or a duly constituted committee thereof].

The [board or a duly constituted committee thereof] shall determine whether a conflict exists and in the case of an existing conflict, whether the contemplated transaction may be authorized as just, fair, and reasonable to _____. The decision of the [board or a duly constituted committee thereof] on these matters will rest in their sole discretion, and their concern must be the welfare of _____ and the advancement of its purpose.

April 2024

| THE FOLLOWING ARE EXAMPLES YOU CAN USE – NOT REQUIRED TO USE THIS FORMAT |
|---|

**[Name of organization and address]**

### CONFLICT OF INTEREST DISCLOSURE STATEMENT

      Preliminary note: In order to be more comprehensive, this statement of disclosure/questionnaire also requires you to provide information with respect to certain parties that are related to you.  These persons are termed "affiliated persons" and include the following:

    a.  your spouse, domestic partner, child, mother, father, brother or sister;

    b.  any corporation or organization of which you are a board member, an officer, a partner, participate in management or are employed by, or are, directly or indirectly, a debt holder or the beneficial owner of any class of equity securities; and

    c.  any trust or other estate in which you have a substantial beneficial interest or as to which you serve as a trustee or in a similar capacity.

1. NAME OF EMPLOYEE OR BOARD MEMBER: (Please print)
_____

2. CAPACITY:       _____board of directors
                _____executive committee
                _____officer
                _____committee member
                _____staff (position): _____

3. Have you or any of your affiliated persons provided services or property to _____ in the past year?

_____YES _____NO

If yes, please describe the nature of the services or property and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:
_____
_____
_____

4. Have you or any of your affiliated persons purchased services or property from _____ in the past year?

_____YES _____NO

If yes, please describe the purchased services or property and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:
_____
_____

April 2024

_____

5. Please indicate whether you or any of your affiliated persons had any direct or indirect interest in any business transaction(s) in the past year to which _____ was or is a party?

_____YES _____NO

If yes, describe the transaction(s) and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

_____
_____
_____

6. Were you or any of your affiliated persons indebted to pay money to _____ at any time in the past year (other than travel advances or the like)?

_____YES _____NO

If yes, please describe the indebtedness and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

_____
_____
_____

7. In the past year, did you or any of your affiliated persons receive, or become entitled to receive, directly or indirectly, any personal benefits from _____ or as a result of your relationship with _____, that in the aggregate could be valued in excess of $1,000, that were not or will not be compensation directly related to your duties to _____?

_____YES _____NO

If yes, please describe the benefit(s) and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

_____
_____
_____

8. Are you or any of your affiliated persons a party to or have an interest in any pending legal proceedings involving _____?

_____YES _____NO

If yes, please describe the proceeding(s) and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

April 2024

_____
_____
_____

9. Are you aware of any other events, transactions, arrangements or other situations that have occurred or may occur in the future that you believe must be examined by _____'s [board or a duly constituted committee thereof] in accordance with the terms and intent of _____'s conflict of interest policy?

_____YES _____NO

If yes, please describe the situation(s) and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

_____
_____
_____

I HERBY CONFIRM that I have read and understand _____'s conflict of interest policy and that my responses to the above questions are complete and correct to the best of my information and belief.  I agree that if I become aware of any information that might indicate that this disclosure is inaccurate or that I have not complied with this policy, I will notify [designated officer or director] immediately.


_____    _____
Signature                                    Date

April 2024

**THE FOLLOWING ARE EXAMPLES YOU CAN USE –
NOT REQUIRED TO USE THIS FORMAT**

**[Name of organization and address]**

## GIFT POLICY AND DISCLOSURE FORM

As part of its conflict of interest policy, _____ requires that directors, officers and employees decline to accept certain gifts, consideration or remuneration from individuals or companies that seek to do business with _____ or are a competitor of it.  This policy and disclosure form is intended to implement that prohibition on gifts.

**Section 1.**    "Responsible Person" is any person serving as an officer, employee or a member of the board of directors of _____.

**Section 2.**    "Family Member" is a spouse, domestic partner, parent, child or spouse of a child, or a brother, sister, or spouse of a brother or sister, of a Responsible Person.

**Section 3.**    "Contract or Transaction" is any agreement or relationship involving the sale or purchase of goods, services or rights of any kind, receipt of a loan or grant, or the establishment of any other pecuniary relationship.  The making of a gift to _____ is not a "contract" or "transaction."

**Section 4.**    Prohibited gifts, gratuities and entertainment.  Except as approved by the Chairman of the Board or his designee or for gifts of a value less than $50 which could not be refused without discourtesy, no Responsible Person or Family Member shall accept gifts, entertainment or other favors from any person or entity which:

1. Does or seeks to do business with _____ or,

2. Does or seeks to compete with _____ or,

3. Has received, is receiving, or is seeking to receive a Contract or Transaction with _____.

**GIFT STATEMENT**

I certify that I have read the above policy concerning gifts, and I agree that I will not accept gifts, entertainment or other favors from any individual or entity, which would be prohibited by the above policy.  Following my initial statement, I agree to provide a signed statement at the end of each calendar year certifying that I have not received any such gifts, entertainment or other favors during the preceding year.

_____          _____
Signature                                                            Date

April 2024

# EXHIBIT 5-B

**Assistance Award/Amendment**

U.S. Department of Housing and
Urban Development
Office of Administration

| 1. Assistance Instrument | | 2. Type of Action | |
|---|---|---|---|
| ☐ Cooperative Agreement   ☒ Grant | | ☐ Award   ☒ Amendment | |

| 3. Instrument Number | 4. Amendment Number | 5. Effective Date of this Action | 6. Control Number |
|---|---|---|---|
| **FEOI230061** | **1** | 05/29/2024 | 34-1771480 |

| 7. Name and Address of Recipient | 8. HUD Administering Office | |
|---|---|---|
| **Housing Research and Advocacy Center**<br>**2728 Euclid Avenue, Suite 200**<br>**Cleveland, Ohio 44115-2429**<br>**UEI: GQLF CDXM WH58** | **U.S. Department of Housing and Urban Development**<br>**Midwest Regional Office, Region V - - Office of Fair Housing and Equal Opportunity**<br>**77 West Jackson Boulevard, Room 2202**<br>**Chicago, Illinois 60604-3507** | |

| | | 8a. Name of Administrator | 8b. Telephone Number |
|---|---|---|---|
| | | **Lon Meltesen, Grant Officer** | **312-913-8400** |

| 10. Recipient Project Manager | 9. HUD Government Technical Representative |
|---|---|
| Carrie Pleasants (216-361-9240) | **John Meade (312-913-8444)** |

| 11. Assistance Arrangement | 12. Payment Method | 13. HUD Payment Office |
|---|---|---|
| ☐ Cost Reimbursement<br>☐ Cost Sharing<br>☒ Fixed Price | ☐ Treasury Check Reimbursement<br>☐ Advance Check<br>☒ Automated Clearinghouse | eLOCCS |

| 14. Assistance Amount | | 15. HUD Accounting and Appropriation Data | |
|---|---|---|---|
| | | 15a. Appropriation Number | 15b. Reservation number |
| Previous HUD Amount | $100,000.00 | 86 23/24 0144  EOI/ARE | |
| HUD Amount this action | $0 | | |
| Total HUD Amount | $100,000.00 | Amount Previously Obligated | $100,000.00 |
| Recipient Amount | $0 | Obligation by this action | $0 |
| Total Instrument Amount | **$100,000.00** | Total Obligation | **$100,000.00** |

16. Description

The purpose of amendment is to acknowledge total award amount and revised documentation in Region V. Funding is under the FHIP Education and Outreach Initiative/Advancing Racial Equity Component. **There are no costs associated with amendment.** This grant agreement consists of the basic agreements and the following attachments which are appended here and made a part hereof:

1.    Attachment A - - -Schedule of Articles
2.    Attachment B - - Addendum to Schedule of Articles
3.    Attachment C - - -Special Conditions
4.    Attachment D - - Grantee Declarations Form
5.    Attachment E- - - -Additional Assurances
6.    Attachment F - - - - - Revised Final Statement of Work
7.    Attachment G- - - - - Revised Payment Schedule
8.    Attachment H - - Applicant Assurance
9.    Revised Final Budget

The period of performance is **12 MONTHS**: **August 1, 2024** to **July 31, 2025.**

**The recipient has until November 28, 2025 to submit final work products and request final payment.**

**Government Technical Monitor is Debra L. Bizzell-Wood, (312-913-8226)**

| 17. ☒ Recipient is required to sign and return three (3) copies of this document to the HUD Administering Office | 18. ☐ Recipient is not required to sign this document. |
|---|---|
| 19. Recipient (By Name)<br>**Housing Research and Advocacy Center** | 20. HUD (By Name)<br>**Midwest Regional Office, Region V – Fair Housing and Equal Opportunity** |

| Signature & Title | Date (mm/dd/yyyy) | Signature & Title | Date (mm/dd/yyyy) |
|---|---|---|---|
| *Carrie L. Pleasants*<br>**Carrie A. Pleasants, Executive Director** | 05/30/2024 | *Lon J Meltesen*<br>**Lon Meltesen, Grant Officer, Region V** | 05/29/2024 |

form HUD-1044 (8/90)
ref. Handbook 2210.17

**Awardee: Housing Research & Advocacy Center**                    ATTACHMENT A
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

## SCHEDULE OF ARTICLES

### TABLE OF CONTENTS

1.  Definitions
2.  Scope of work (fixed price)
3.  Period of performance
4.  Amendments
5.  Inspection and acceptance
6.  Conduct of work
7.  Instrument amount and electronic payments
8.  Limitation on consultant payments
9.  Key personnel
10. Code of conduct
11. Publications and news releases
12. Reproduction of reports
13. Government property
14. Collection of data
15. Patent rights-small business firms and nonprofit organizations
16. Disputes
17. Drug-free workplace (recipients other than individuals)
18. Limitation on payments to influence certain federal transactions (over $100,000)
19. Limitation on payments to influence certain federal transactions (under $100,000)
20. Excess funds
21. Program income
22. Fringe benefits
23. Certification prohibiting excess force against non-violent civil rights demonstrations
24. Seat belt usage
25. Resource Conservation and Recovery Act (RCRA)
26. Order of Precedence
27. Executive Order 13520: *Reducing Improper payments: Enhancing Payment Accuracy through a* "Do Not Pay List"
28. Executive Order 14005: *Ensuring the Future is Made in All America by all of America's Workforce*
29. Executive Orders 13985 And 14091, *Advancing Racial Equity and Support For Underserved Communities Through The Federal Government*
30. Executive Order 14075, *Advancing Equality for Lesbian, Gay, Bisexual, Transgender, Queer, And Intersex Individuals*31. Executive Order 13988: *Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*
32. Other Administrative Provisions

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

33. Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 CFR Part 200)
34. Education and Outreach (EOI) Funds
35. Private Enforcement Initiative (PEI) and Fair Housing Organization Initiative (FHOI) Funds


1. DEFINITIONS

a. The term "Schedule of Articles" means an official document which sets forth the terms and conditions of the grant agreement, which binding authority over grants management policy and administration within one or more HUD organizational elements.

b. The term "Cooperative Agreement" means a legal instrument of financial assistance between a Federal awarding agency and a recipient or a pass-through entity and a subrecipient that, consistent with 31 U.S.C. 6302–6305:

   (1) Is used to enter into a relationship the principal purpose of which is to transfer anything of value to carry out a public purpose authorized by a law of the United States (see 31 U.S.C. 6101(3)); and not to acquire property or services for the Federal Government or pass-through entity's direct benefit or use;

   (2) *Is distinguished from a grant* in that it provides for substantial involvement of the Federal awarding agency in carrying out the activity contemplated by the Federal award.

   (3) The term does not include:

      (i)    A cooperative research and development agreement as defined in 15 U.S.C. 3710a; or
      (ii)   An agreement that provides only:
             (A) Direct United States Government cash assistance to an individual;
             (B) A subsidy;
             (C) A loan;
             (D) A loan guarantee; or
             (E) Insurance.

c. The term "Grant Agreement" means a legal instrument of financial assistance between a Federal awarding agency or pass-through entity and a non-Federal entity that, consistent with 31 U.S.C. 6302, 6304:

   (1) Is used to enter into a relationship the principal purpose of which is to transfer

anything of value from the Federal awarding agency or pass-through entity to the non-Federal entity to carry out a public purpose authorized by a law of the United States (see 31 U.S.C. 6101(3)); and not to acquire property or services for the Federal awarding agency or pass-through entity's direct benefit or use;

(2) Is *distinguished from a cooperative agreement* in that it does not provide for substantial involvement between the Federal awarding agency or pass-through entity and the non-Federal entity in carrying out the activity contemplated by the Federal award.

(3) The term does not include an agreement that provides only:

    (i)    A cooperative research and development agreement as defined in 15 U.S.C. 3710a; or

    (ii)    An agreement that provides only:

        (A) Direct United States Government cash assistance to an individual;

        (B) A subsidy;

        (C) A loan;

        (D) A loan guarantee; or

        (E) Insurance.

d. The term "Government Technical Representative (GTR)" means the HUD individual who is responsible for the technical administration of the grant, the evaluation of performance under the grant, the acceptance of technical reports or projects, and other such specific responsibilities as may be stipulated in the grant, and approval of payment.

e. The term "Government Technical Monitor (GTM)" means the HUD individual who has been designated to provide technical monitoring, advice, and assistance, to aid the GTR in the technical and financial oversight and evaluation of the grantee's performance.

f. The term "Grant Officer" means the official authorized by HUD to execute and/or administer this grant or cooperative agreement. This term also refers to a Cooperative Agreement Officer when the instrument is a cooperative agreement.

g. The term "Head of the Awarding Activity (HAA)" means a HUD official, at the Assistant Secretary level or equivalent, with authority for policy, award, and administration of discretionary grants within one or more HUD organizational elements.

h. The term "Excess Funds" means any unliquidated and unobligated balance of Federal funds, as reflected on the final Financial Status Report Form, SF-425, at the time of project closeout, that remains available with the grantee after all work products have been

**Awardee: Housing Research & Advocacy Center**                          **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

satisfactorily completed and accepted by the GTR.

## 2. SCOPE OF WORK (FIXED PRICE)

The grantee shall furnish the necessary personnel, materials, services, equipment, facilities, (except as otherwise specified herein) and otherwise do all things necessary for or incidental to the performance of the work set forth in the Statement of Work (also known as the Work Management Plan) for the firm fixed price set forth herein.

## 3. PERIOD OF PERFORMANCE

The grantee shall provide all services hereunder for a period of time, which is stated in the Form HUD-1044, Assistance Award/Amendment - (Form HUD-1044). This time period is referred to as the period of performance (PoP) and is included in Box 16 of the 1044.  The PoP is defined in 2 CFR §200.1 (2 CFR 200.1 Definitions) as the time during which the non-Federal entity may incur new obligations to carry out the work authorized under the Federal award.

The definitions in 2 CFR 200 also define period of performance as the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions, or budget periods. Identification of the period of performance in the Federal award per § 200.211(b)(5) does not commit the awarding agency to fund the award beyond the currently approved budget period.

Note that the FHIP program requires that grantees obtain prior HUD approval for any proposed extensions of the Period of Performance as a condition of the grant award as permitted by 2 CFR 200.308(e)(2)(i). For reference only, federal agency approved modifications to the Period of Performance are covered in 2 CFR § 200.309.  Grantee-initiated modifications to the Period of Performance (if no conditions requiring prior HUD approval are present) are covered in §2 CFR 200.308(e)(2).

## 4. POST-AWARD AMENDMENTS

Post-award, this grant may be amended or modified by a written amendment to extend the period of performance or modify the scope of work and/or budget.  Amendments which reflect the rights and obligations of either party shall be executed by both HUD (the Grant Officer) and the grantee. Requests for amendments which affect the length of time or scope of the project being undertaken must be accompanied by a written justification.

As indicated, extensions and budget or scope of work modifications must be approved in advance by the Department. Per 2 CFR 200.309, (2 CFR 200. 309) if HUD approves an extension, the

**Awardee: Housing Research & Advocacy Center**                    ATTACHMENT A
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

Period of Performance will be amended to end at the completion date stated in the extension. If a termination occurs, the Period of Performance will be amended to end on the effective date of termination.

Per 2 CFR 200.308(c) grantees must request prior approval from the FHIP Grant Officer for the following program or budget-related reasons:

(1) Change in the scope or the objective of the project or program (even if there is no associated budget revision requiring prior written approval).

(2) Change in a key person specified in the application or the Federal award.

(3) The disengagement from the project for more than three months, or a 25 percent reduction in time devoted to the project, by the approved project director.

(4) The inclusion, unless waived by the Federal awarding agency, of costs that require prior approval in accordance with subpart E of 2 CFR 200 (Cost Principles) as applicable. These pre-approved costs include (only if applicable). but are not limited to constraints on faculty member salaries, limits on severance pay, costs of membership in any civic or community organization, organizational costs related to establishment or reorganization, participant support costs (direct costs for items such as stipends or subsistence allowances, travel allowances, and registration fees paid to or on behalf of participants or trainees (but not employees) in connection with conferences, or training projects), facility alterations, selling and marketing any products or services of the non-Federal entity, use of foreign government tax refunds, and travel costs for dependents for extended travel periods.

(5) Unless described in the application and funded in the approved Federal awards, the sub-awarding, transferring or contracting out of any work under a Federal award, including fixed amount subawards as described in § 200.333. This provision does not apply to the acquisition of supplies, material, equipment, or general support services.

(6)  Changes in the Budget - Under §2 CFR 200.308 Revision of Budget and Program Plans, optional requirements are outlined regarding budgetary revisions. Accordingly, grantees are required to do the following:

  a.  Request prior approval from the Grant Officer for appropriate transfer between direct and indirect categories of the grant budget in all instances; and

  b.  Request prior approval from the Grant Officer regarding transfers of funds among direct cost categories when the total FHIP grant award amount (e. g., the Federal

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

share) exceeds $250,000 and the cumulative transfers of funds are expected to exceed 10 percent of the total budget. If the grant award amount is less than $250,000 and the transfer is less than 10% of the total budget, prior approval is not required. However, the grantee <u>must</u> notify the GTR of all changes prior to execution of the changes.

c. When applicable under 6(a) and 6(b), submit advanced written requests and justifications for such transfers, including amounts and categories, and confirmation that funds will not be used for purposes inconsistent with appropriations requirements. Any such transfers must be accompanied by an explanation of whether and how the Statement of Work (SOW) is impacted. Changes to SOWs also require prior approval by the Grant Officer in accordance with 200.308(c)(1) above.

d. All changes to Budget that exceed 10 percent of the award and/or changes to the SOW must be incorporated by an amendment to the grant agreement.

Administrative amendments, such as changes in appropriation data, may be issued unilaterally by the Grant Officer.  Also, HUD reserves the right to review and revise the budgets for grants, where appropriate.

## 5. INSPECTION AND ACCEPTANCE

Inspection and acceptance of all but the final products may be accomplished by the Government Technical Monitors (GTMs), if so delegated.  Final acceptance shall be accomplished by the Government Technical Representative (GTR).

## 6. CONDUCT OF WORK

a. During the effective period of this grant, the Government Technical Representative and/or the Government Technical Monitor identified in Block 9 of the <u>Form HUD-1044</u> cover page shall be responsible for monitoring the technical effort of the grantee unless the grantee is notified in writing by the Grant Officer of a replacement.

b. Only the Grant Officer has the authority to authorize deviations from this grant, including deviations from the Statement of Work.  In the event the grantee does deviate without written approval of the Grant Officer, such deviation shall be at the risk of, and any costs related thereto, shall be borne by the grantee.

c. The grantee shall submit two copies of all quarterly performance reports, final reports and all deliverables to the GTR and GTM listed in Block 9 of the HUD-1044 in accordance with the SOW.

d. Between the required performance reporting dates, events may occur that have significant

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

impact upon the project or program.  In such instances, the grantee shall inform the GTR and the Grant Officer as soon as the following types of conditions become known:

(1) Problems, delays, or adverse conditions that will materially affect the ability **of the grantee** to attain program objectives, prevent the meeting of the time schedules and goals, or preclude the attainment of project work units by established time periods.  This disclosure shall be accompanied by a statement of the action taken, or contemplated, and any HUD assistance needed to resolve the situation.

(2) Favorable developments or events that enable time schedules to be met sooner than anticipated or more work units to be produced than originally projected.
See 2 CFR 200.301 (2 CFR 200.301) for more on Performance Measurement.

## 7. INSTRUMENT AMOUNT AND ELECTRONIC PAYMENTS

a. HUD shall pay the grantee for performance of this grant the firm award amount identified in Block 14 of the HUD-1044 based on acceptance and approval of negotiated deliverables.

b. The grantee agrees to provide a detailed breakdown of federal costs, as well as in-kind costs, identified in the negotiated budget on a quarterly basis.  The grantee shall account for both the federal costs and the in-kind contribution costs on Standard Form (SF) 425 (SF-425).

In addition, the grantee shall provide an attachment to Item 12, SF-425, to show a detailed breakdown of cost(s) claimed for the payment period as well as a narrative explanation (see 2 CFR, Part §200.302 (Financial Management); and §200.328 (Financial Reporting)).  Failure by the grantee to ensure the full in-kind contribution identified as utilized for this project, may result in the grantee receiving less than favorable assessment in the evaluation of its performance, at close out, or on future FHIP competitions.

c. Payment will be made after acceptance of the completed projects or tasks by the Government Technical Representative (GTR) in consultation with the Government Technical Monitor (GTM).  Provided that the grantee is in compliance with all other terms of the grant, the grantee shall be paid in accordance with the final, negotiated grant agreement (see 2 CFR§200.305, 2 CFR 200.305).

d. Payments are made through HUD's Line of Credit Control System (eLOCCS).  ELOCCS uses a computer software program which ensures that requested payments do not exceed the amount authorized to the grantee.  All payments are certified by HUD and forwarded to Treasury for processing.  Each day eLOCCS generates a payment tape for the Department of the Treasury which disburses the payments via the Automated Clearing House (ACH) Payment System via a

**Awardee: Housing Research & Advocacy Center**                          **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

Treasury Voucher Schedule.

e.  The grantee shall submit the request for payment directly into the automated payment system
    (eLOCCS).  The payment request shall be supported by a detailed breakdown of the cost(s)
    claimed as previously submitted on a quarterly basis on the SF-425.  The payment process is
    activated via computer.  To have access to eLOCCS the grantee must obtain a Security ID and
    Password from HUD's LOCCS Security Officer and complete form HUD-27054E (12/23
    version as of this update to Schedule of Articles).  In order to assure proper payment, it is
    important that the payment amount requested online is in accordance with the payment amount
    authorized for approval by the GTR. Find more information at:

    1.  loccs_guidelines | HUD.gov / U.S. Department of Housing and Urban Development (HUD).
    2.  https://www.hud.gov/sites/dfiles/CFO/documents/eLOCCS_Approving_Official_Recertific
        ation_Guide-Sept_2022.pdf

f.  Before receiving funds from eLOCCS, the grantee must designate a financial institution for
    HUD to make direct deposit payments through the ACH system.  The grantee's authorized
    officials must complete SF-1199A, Direct Deposit Sign-up.  Note there are two options for
    the grantee to transmit the SF-1199A to the Fort Worth Accounting Center (FWAC).
    Option 2 is preferred.

    1.  The grantee may send physical copies of the SF-1199A form and supporting documents
        (e.g. voided check) to:

        U.S. Department of Housing and Urban Development
        CFO Accounting Operations Center
        307 W. 7th St.
        Suite 1000
        Fort Worth, TX 76102

    2.  For electronic submissions, the Form SF-1199A and any supporting documents must be
        submitted to the HUD programmatic representative (GTR) for review and processing. Only
        HUD staff are permitted to send direct deposit documents to the FWAC electronically.

In the event the grantee, during the performance of this grant, elects to designate a different bank
account or financial institution for the receipt of payments a new SF-1199A must be completed and
submitted as previously indicated.  The grantee is responsible for ensuring that the GTR is apprised
of any change(s).

Find more information at:

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

- Financial Institution Establishment and Direct Deposit Sign-Up | HUD.gov / U.S. Department of Housing and Urban Development (HUD).

g.  Detailed instructions for using the eLOCCS system accompany the transmittal of the forms, or if needed, may be requested from the GTR or found online at links provided above.

## 8. LIMITATION ON CONSULTANT PAYMENTS

As required by HUD's Appropriations Act, salary payments to consultants under this instrument **shall not exceed the equivalent of the maximum daily rate paid to GS 15 Step 10 daily rate (locality pay will not be included – see** General Schedule (GS) Base Pay Scale for 2023 (federalpay.org)).  This limitation refers to consultants hired through the grantee's personnel system, but not to consultants who perform as independent contractors (see Attachment B, **Addendum** to the Schedule of Articles).  For rates exceeding the above-referenced daily maximum, or to waive the use of a consultant prior approval be requested and secured from the Grant Officer.

## 9. KEY PERSONNEL

The personnel specified in Form HUD-1044, the Statement of Work, and Attachments are considered to be essential to the work being performed hereunder.

Prior to replacing or diverting any of the specified individuals to other work, the grantee shall notify the GTR reasonably in advance and shall submit written justification (including proposed hires or substitutions) in sufficient detail to permit evaluation of the impact on the work effort.  No replacement or diversion shall be made by the grantee without the written consent of the Grant Officer.

The grantee is required to allow HUD access to personnel and pertinent personnel records or information for any staff that receive salary or other payments under the FHIP grant.  The grantee is required to inform HUD if any of its key personnel are or have been convicted of a felony or other crime involving fraud or perjury.  The grantee is required to maintain personnel records for a period of no less than three years. (2 CFR §200.201(b)(5) - 2 CFR 200.201(b)(5)).  See also 2 CFR §200.334 – 2 CFR 200.334.

## 10. CODE OF CONDUCT

Entities subject to 2 CFR Part 200 (most nonprofit organizations and State, local and tribal governments or government agencies or instrumentalities who receive Federal awards of financial assistance) are required to develop and maintain a written code of conduct (see §2 CFR 200.112 on Conflict of Interest, §2 CFR 200.318 on General Procurement Standards, - and §2 CFR 200.113 on

**Awardee: Housing Research & Advocacy Center**                              **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

Mandatory Disclosures.  Consistent with regulations governing specific programs, your code of conduct must: prohibit real and apparent conflicts of interest that may arise among officers, employees, or agents; prohibit the solicitation and acceptance of gifts or gratuities by your officers, employees, and agents for their personal benefit in excess of minimal value; and outline administrative and disciplinary actions available to remedy violations of such standards.  **All grantees must submit a copy of their code of conduct to HUD.** See more information on HUD's Grants Management and Oversight Division (GMO) page at Code of Conduct for HUD Grant Programs | HUD.gov / U.S. Department of Housing and Urban Development (HUD).

## 11. PUBLICATIONS AND NEWS RELEASES

a.  Definition.  For the purpose of this clause, "publication" includes:

  (1)  Any document, audio, or video materials containing information for public consumption; or

  (2)  The act of, or any act which may result in, disclosing information to the public.

b.  The results of this program are planned to be made available to the public through dedication, assignment by HUD, or such other means as the Secretary shall determine.

c.  Government Ownership of Official Products of Work.  All interim and final reports and information, data analyses, special methodology, findings, and their related documents and work products, including reports, work sheets, survey instruments, computer tapes, audio or video materials, and any other physical materials and products produced directly under the Statement of Work of this grant are considered Official Products of Work, owned by the Government and held for the benefit of the public.

d.  Publication of Official Products of Work.  Official Products of Work, quotations there from, para-phrasing, or disclosures of interim findings may not be published without the approval of the GTR for a period of sixty (60) days after acceptance of the product by the GTR. Thereafter, the grantee shall be free to publish without HUD approval.

e.  Acknowledgment and Disclaimer.  All Official Products of Work, or any part thereof, and any Independent Products and Special Products arising out of this instrument, when published by the grantee or other participants in the work, shall contain the following acknowledgment and disclaimer:

    "The work that provided the basis for this publication was supported by funding under a grant with the U.S. Department of Housing and Urban Development.  The substance and findings of the work are dedicated to the public. The author and publisher are solely responsible for the accuracy of the statements and interpretations contained in this

Awardee: Housing Research & Advocacy Center                    ATTACHMENT A
Grant #: FEOI230061
Initiative/Component: EOI-ARE

publication.  Such interpretations do not necessarily reflect the views of the Federal
Government."

 f.  Notice of News Release and Public Announcements.  Two copies of all press releases, formal
announcements, and other planned, written issuances containing news or information concerning
this grant that may be made by the grantee or its staff, or any subcontractor or other person or
organization participating in the work of this grant shall be provided to the GTR at the earliest
possible time in advance of any public announcement.  News releases and other public
announcements may not disclose any interim finding or quote or paraphrase any part of any Official
Product of Work without complying with paragraph e. above.

g.  Copyrights.  Provisions found at 2 CFR 200.1 (Definitions), §200.315 (Intangible Property), and
§200.448 (Intellectual Property), shall apply to all FHIP recipients.  Specifically, the Federal
awarding agency reserves a royalty-free, nonexclusive and irrevocable license to reproduce, publish
or otherwise use, and to authorize others to use, for Federal Government purposes: (i) the copyright
in any work developed under a grant, subgrant, or contract under a grant or sub-grant; and (ii) any
rights of copyright to which a grantee, subgrantee or a contractor purchases ownership with grant
support. Notwithstanding this paragraph, HUD reserves the right to reproduce, publish or otherwise
use such work for Federal purposes.

h. Publication and Printing Costs

See §2 CFR 200.461 for the following provisions concerning publication and printing costs:

    (a) Publication costs for electronic and print media, including distribution, promotion, and
    general handling are allowable. If these costs are not identifiable with a particular cost
    objective, they should be allocated as indirect costs to all benefiting activities of the non-
    Federal entity.

    (b) Page charges for professional journal publications are allowable where:

      (1) The publications report work supported by the Federal Government; and

      (2) The charges are levied impartially on all items published by the journal, whether or not
      under a Federal award.

      (3) The non-Federal entity may charge the Federal award during closeout for the costs of
      publication or sharing of research results if the costs are not incurred during the period of
      performance of the Federal award. If charged to the award, these costs must be charged to the
      final budget period of the award, unless otherwise specified by the Federal awarding agency.

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

## 12. REPRODUCTION OF REPORTS

In accordance with Government Printing and Binding Regulations, reproduction of reports, data or other written materials intended for submission to HUD for Government use, if required herein, is authorized provided that the materials produced do not exceed 5,000 production units of any page and the items consisting of multiple pages do not exceed 25,000 production units in the aggregate.

The above limitations do not apply to the reproduction of materials intended for distribution by the grantee to non-Federal Government sources in accordance with the terms of this grant.

## 13. EQUIPMENT AND PROPERTY

§2 CFR 200.1 Definitions contains the following:

**Equipment** means tangible personal property (including information technology systems) having a useful life of more than one year and a per-unit acquisition cost which equals or exceeds the lesser of the capitalization level established by the non-Federal entity for financial statement purposes, or $5,000.

      See also the definitions of *capital assets, computing devices, general purpose equipment, information technology systems, special purpose equipment,* and *supplies* in this section.

**Personal property** means property other than real property. It may be tangible, having physical existence, or intangible.

**Real Property** means land, including land improvements, structures and appurtenances thereto, but excludes moveable machinery and equipment.

**Equipment**.  Any equipment acquired for the performance of this grant is identified in the final negotiated budget for this grant.  See §2 CFR 200.313 (*Equipment*) within (2 CFR 200 Subpart D) for property standards that govern equipment, including physical inventories and safeguards, allowable uses, disposition and whether title vests with the non-federal entity or the Government. See also (§2 CFR 200.439) on *Equipment and Capital Expenditures.*

Property in excess of $5,000 must be accounted for by the grantee. However, all property must be accounted for by the grantee at closeout of the grant. Equipment with a current per unit fair market value of $5,000 or less may be retained, sold or otherwise disposed of with no further responsibility to the Federal awarding agency.

Grantees must also make equipment available for use on other projects or programs currently or

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

previously supported by the Federal Government, provided that such use will not interfere with the work on the projects or program for which it was originally acquired. First preference for other use must be given to other programs or projects supported by HUD, which financed the equipment and second preference must be given to programs or projects under Federal awards from other Federal awarding agencies. Use for non-federally-funded programs or projects is also permissible. User fees should be considered if appropriate.

When no longer needed for the original program or project, equipment may be used in other activities supported by the Federal awarding agency, in the following order of priority:

When the period of performance for the grant has ended, , the Grant Officer will provide the grantee with instructions concerning the disposition of the inventory of equipment, for all equipment, for which the title is vested in the government, if appropriate.

Equipment and other capital expenditures are not allowable as indirect costs.

## 14. COLLECTION OF DATA

Collection of data from ten or more respondents and sponsored by HUD shall be subject to the Paperwork Reduction Act (44 U.S.C. 3501 – 3520 and 2 CFR 200.207).  If a survey instrument is proposed, it will be subject to review and approval by the Office of Management and Budget (OMB).   Such review and approval must be obtained prior to the use of the survey instrument.  Also, a time element is involved here, which may considerably lengthen the time required for completion of the project proposed.  Information collections submitted to OMB under the Paperwork Reduction Act include 60-day and 30-day public comment periods in addition to internal HUD and external OMB reviews.  It can take six months or longer to obtain approval for information collection instruments. The collection of data is deemed to be sponsored by HUD only under the conditions indicated below.  Collection of data under circumstances other than the four conditions given below is not a sponsored collection and is not subject to the Paperwork Reduction Act:

a.  The grantee represents to respondents that the information is being collected for or in association with HUD (however, this condition is not intended to preclude mention of Federal support in response to an inquiry, or an acknowledgment of Federal assistance in any publication or report on the data); or

b.  The grantee uses the data collection activities to collect information that HUD has requested for the planning, operation, or evaluation of its program; or

c.  The terms and conditions of this grant provide for approval by HUD of the survey design

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

questionnaire content, or data collection procedure; or

e.   The terms and conditions of this grant provide for either submission to HUD of the data for
     individual respondents or the preparation and submission of tabulations requested by HUD.

## 15. PATENT RIGHTS (SMALL BUSINESS FIRMS AND NONPROFIT ORGANIZATIONS)

**BACKGROUND**

37 Part 401 RIGHTS TO INVENTIONS MADE BY NONPROFIT ORGANIZATIONS AND
SMALL BUSINESS FIRMS UNDER GOVERNMENT GRANTS, CONTRACTS, AND
COOPERATIVE AGREEMENTS states:

"This regulation supersedes OMB Circular A-124 and shall take precedence over any regulations
dealing with ownership of inventions made by small businesses and nonprofit organizations which
are inconsistent with it. This regulation will be followed by all agencies pending amendment of
agency regulations to conform to this part and amended Chapter 18 of Title 35."

See link at 37 CFR 401 for full text of this regulation.

a.  Definitions.

(1)  "Invention" means any invention or discovery, which is or may be patentable or otherwise
protectable under Title 35 of the United States code.

(2)  "Subject invention" means any invention of the grantee conceived or first actually reduced to
practice during the period of grant performance.

(3)  "Practical Application" means to manufacture in the case of a composition or product, to
practice in the case of a process or method, or to operate in the case of a process or method, or to
operate in the case of a machine or system; and, in each case, under such conditions as to establish
that the invention is being utilized and that its benefits are, to the extent permitted by law or
government regulations, available to the public on reasonable terms.

(4)  "Made" when used in relation to any invention means the conception or first actual reduction to
practice of such invention.

(5)  "Small Business Firm" means a small business concern as defined at Section 2 of Pub. L.
85-536 (15 U.S.C. 632) and implementing regulations of the Administrator of the Small Business
Administration.  For the purpose of this clause, the size standards for small business concerns

**Awardee: Housing Research & Advocacy Center**                     **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

involved in government procurement and subcontracting at 13 CFR 121.3-8 and 13 CFR 121.3-12, respectively, will be used.

(6)  "Nonprofit Organization" means a university or other institution of higher education or an organization of the type described in Section 501 (c) (3) of the Internal Revenue Code (25 U.S.C. 501(a)) and exempt from taxation under section 501(a) of the Internal Revenue Code of 1954 (25 U.S.C. 501(a)) or any nonprofit scientific or educational organization qualified under a state nonprofit organization statute.

b.  <u>Allocation of Principal Rights</u>.  The grantee may retain the entire right, title, and interest throughout the world to each subject invention subject to the provisions of this clause and 35 U.S.C. 203.  With respect to any subject invention in which the grantee retains title, the Federal government shall have a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States the subject invention throughout the world.

c.  <u>Invention Disclosure, Election of Title and Filing of Patent Application by Grantee</u>.

(1)  The grantee will disclose each subject invention to the Federal Agency within two months after the inventor discloses it in writing to grantee personnel responsible for patent matters. The disclosure to the agency shall be in the form of a written report and shall identify the grant under which the invention was made and the inventor(s).  It shall be sufficiently complete in technical detail to convey a clear understanding to the extent known at the time of the disclosure, of the nature, purpose, operation, and the physical, chemical, biological or electrical characteristics of the invention.  The disclosure shall also identify any publication, on sale or public use of the invention and whether a manuscript describing the invention has been submitted for publication and, if so, whether it has been accepted for publications at the time of disclosure. In addition, after disclosure to the agency, the grantee will promptly notify the agency of the acceptance of any manuscript describing the invention for publication or of any on sale or public use planned by the grantee.

(2)  The grantee will elect in writing whether or not to retain title to any such invention by notifying the Federal agency within two years of disclosure to the Federal agency. However, in any case where publication, on sale or public use has initiated the one- year statutory period wherein valid patent protection can still be obtained in the United States, the period for election of title may be shortened by the agency to a date that is no more than 60 days prior to the end of the statutory period.

(3)  The grantee will file its initial patent application on a subject invention to which it elects to retain title within one year after election of title or, if earlier, prior to the end of any statutory period wherein valid patent protection can be obtained in the United States after a publication, on

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

sale, or public use.  The grantee will file patent applications in additional countries or international patent offices within either ten months of the corresponding initial patent application or six months from the date permission is granted by the Commissioner of Patents and Trademarks to file foreign patent applications where such filing has been prohibited by a Secrecy Order.

    (4)  Requests for extension of the time for disclosure, election, and filing under subparagraphs (1), (2), and (3) may, at the discretion of the agency, be granted.
d.  <u>Conditions When the Government May Obtain Title</u>.  The grantee will convey to the Federal agency, upon written request, title to any subject invention--

    (1)  If the grantee fails to disclose or elect title to the subject invention within the times specified in (c), above, or elects not to retain title; provided that the agency may only request title within 60 days after learning of the failure of the grantee to disclose or elect within the specified times.

    (2)  In those countries in which the grantee fails to file patent applications within the times specified in (c) above; provided, however, that if the grantee has filed a patent application in a country after the times specified in (c), above, but prior to its receipt of the written request of the Federal agency, the grantee shall continue to retain title in that country.

    (3)  In any country in which the grantee decides not to continue the prosecution of any application for, to pay the maintenance fees on, or defend in reexamination or opposition proceeding on, a patent on a subject invention.

 e.  <u>Minimum Rights to Grantee and Protection of the Grantee's Right to File</u>.

    (1)  The grantee will retain a nonexclusive royalty-free license throughout the world in each subject invention to which the Government obtains title, except if the grantee fails to disclose the invention within the times specified in (c), above. The grantee's license extends to its domestic subsidiary and affiliates, if any, within the corporate structure of which the grantee is a party and includes the right to grant sublicenses of the same scope to the extent the grantee was legally obligated to do so at the time the grant was awarded.  The license is transferable only with the approval of the Federal agency except when transferred to the successor of that party of the grantee's business to which the invention pertains.

    (2)  The grantee's domestic license may be revoked or modified by the funding Federal agency to the extent necessary to achieve expeditious practical application of the subject invention pursuant to an application for an exclusive license submitted in accordance with applicable provisions at 37 CFR Part 404 and agency licensing regulations (if any).  This license will not be revoked in that field of use or the geographical areas in which the grantee has achieved practical application and continues to make the benefits of the invention reasonably accessible to the public.

**Awardee: Housing Research & Advocacy Center**                    ATTACHMENT A
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

The license in any foreign country may be revoked or modified at the discretion of the funding Federal agency to the extent the grantee, its licensees, or the domestic subsidiaries or affiliates have failed to achieve practical application in that foreign country.

(3)  Before revocation or modification of the license, the funding Federal agency will furnish the grantee a written notice of its intention to revoke or modify the license, and the grantee will be allowed thirty days (or such other time as may be authorized by the funding Federal agency for good cause shown by the grantee) after the notice to show cause why the license should not be revoked or modified.  The grantee has the right to appeal, in accordance with applicable regulations in 37 CFR Part 404 and agency regulations (if any) concerning the licensing of Government-owned inventions, any decision concerning the revocation or modification of the license.

f.  Grantee Action to Protect the Government's Interest.

(1)  The grantee agrees to execute or to have executed and promptly deliver to the Federal agency all instruments necessary to (i) establish or confirm the rights the Government has throughout the world in those subject inventions to which the grantee elects to retain title, and (ii) convey title to the Federal agency when requested under paragraph (d) above and to enable the government to obtain patent protection throughout the world in that subject invention.

(2)  The grantee agrees to require, by written agreement, its employees, other than clerical and non-technical employees, to disclose promptly in writing to personnel identified as responsible for the administration of patent matters and in a format suggested by the grantee each subject invention made under agreement in order that the grantee can comply with the disclosure provisions of paragraph (c), above, and to execute all papers necessary to file patent applications on subject inventions and to establish the government's rights in the subject inventions.  This disclosure format should require, as a minimum, the information required by (c)(1), above.  The grantee shall instruct such employees through employee agreements or other suitable educational programs on the importance of reporting inventions in sufficient time to permit the filing of patent applications prior to U.S. or foreign statutory bars.

(3)  The grantee will notify the Federal agency of any decisions not to continue the prosecution of a patent application, pay maintenance fees, or defend in a reexamination or opposition proceeding on a patent, in any country, not less than thirty days before the expiration of the response period required by the relevant patent office.

(4)  The grantee agrees to include, within the specification of any United States patent applications and any patent issuing thereon covering a subject invention, the following statement, "This invention was made with government support under the Grant No. identified in Block 3 of the HUD 1044 awarded by the Department of Housing and Urban Development.  The government has

**Awardee: Housing Research & Advocacy Center**                    ATTACHMENT A
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

certain rights in the invention."

g.  Subcontracts.

    (1)  The grantee will include this clause, suitably modified to identify the parties, in all subcontracts, regardless of tier, for experimental, developmental or research work to be performed by a small business firm or domestic nonprofit organization.  The subcontractor will retain all rights provided for the grantee in this clause, and the grantee will not, as part of the consideration for awarding the subcontract, obtain rights in the subgrantee's subject inventions.
    (2)  The grantee will include in all other subcontracts, regardless of tier, for experimental developmental or research work the patent rights clause required by FAR 52.227-11.

h.  Reporting on Utilization of Subject Inventions.  The grantee agrees to submit on request periodic reports no more frequently than annually on the utilization of a subject invention or on efforts at obtaining such utilization that are being made by the grantee or its licensees or assignees. Such reports shall include information regarding the status of development, date of first commercial sale or use, gross royalties received by the recipient, and such other data and information as the agency may reasonably specify.  The grantee also agrees to provide additional reports as may be requested by the agency in connection with any march-in proceeding undertaken by the agency in accordance with paragraph j. of this clause. As required by 35 U.S.C. 202(c)(5), the agency agrees it will not disclose such information to persons outside the government without permission of the grantee.

i.  Preference for United States Industry.  Notwithstanding any other provision of this clause, the grantee agrees that neither it nor any assignee will grant to any person the exclusive right to use or sell any subject inventions in the United States unless such person agrees that any products embodying the subject invention or produced through the use of the subject invention will be manufactured substantially in the United States.  However, in individual cases, the requirement for such an agreement may be waived by the Federal agency upon a showing by the grantee or its assignee that reasonable but unsuccessful efforts have been made to grant licenses on similar terms to potential licensees that would be likely to manufacture substantially in the United States or that under the circumstances domestic manufacture is not commercially feasible.

j.  March-in Rights.  The grantee agrees that with respect to any subject invention in which it has acquired title, the Federal agency has the right in accordance with the procedures in 37 CFR 401.6 and any supplemental regulations of the agency to require the grantee, an assignee or exclusive licensee of a subject invention to grant a nonexclusive, partially exclusive, or exclusive license in any field of use to a responsible applicant or applicants, upon terms that are reasonable under the circumstances, and if the grantee, assignee, or exclusive licensee refuses such a request the Federal agency has the right to grant such a license itself if the Federal agency determines that:

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

(1)  Such action is necessary because the grantee or assignee has not taken or is not expected to take within a reasonable time, effective steps to achieve practical application of the subject invention in such field of use.

(2)  Such action is necessary to alleviate health or safety needs which are not reasonably satisfied by the grantee, assignee or their licensees;

(3)  Such action is necessary to meet requirements for public use specified by Federal regulations and such requirements are not reasonably satisfied by the grantee, assignee or licensees; or

(4)  Such action is necessary because the agreement required by paragraph (i) of this clause has not been obtained or waived or because a licensee of the exclusive right to use or sell any subject invention in the United States is in breach of such agreement.

k.  <u>Special Provisions for Grants with Nonprofit Organizations</u>. If the grantee is a nonprofit organization, it agrees that:

(1)  Rights to a subject invention in the United States may not be assigned without the approval of the Federal agency, except where such assignment is made to an organization which has as one of its primary functions the management of inventions, provided that such assignee will be subject to the same provisions as the grantee;

(2)  The grantee will share royalties collected on a subject invention with the inventor, including Federal employee co-inventors (when the agency deems it appropriate) when the subject invention is assigned in accordance with 35 U.S.C. 202(e) and 37 CFR 401.10;

(3)  The balance of any royalties or income earned by the grantee with respect to subject inventions, after payment of expenses (including payments to inventors) incidental to the administration of subject inventions, will be utilized for the support of scientific research or education; and

(4)  It will make efforts that are reasonable under the circumstances to attract licensees of subject invention that are small business firms and that it will give a preference to a small business firm when licensing a subject invention if the grantee determines that the small business firm has a plan or application for marketing the invention which, if executed, is equally as likely to bring the invention to practical application as any plans or application from applicants that are not small business firms; provided, that the grantee is also satisfied that the small business firm has the capability and resources to carry out its plan or application.  The decision whether to give a preference in any specific case will be at the discretion of the grantee.  However, the grantee agrees that the Secretary may review the grantee's licensing program and decisions regarding small

**Awardee: Housing Research & Advocacy Center**                          **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

business applicants, and the grantee will negotiate changes to its licensing policies, procedures, or practices with the Secretary when the Secretary's review discloses that the grantee could take reasonable steps to implement more effectively the requirements of this paragraph (k)(4).

Inquiries regarding this Patent Rights clause must be in writing and directed to:

>        Grant Officer:
>        FHEO Regional Office:
>        Address:
>        City/State:
>        Telephone:

## 16. DISPUTES

During performance of the grant, disagreements may arise between the grantee and the Government Technical Representative (GTR) or Government Technical Monitor (GTM) on various issues.  If a dispute concerning a question of fact arises, the GTR shall take the matter to the Grant Officer**,** who shall prepare a final decision, taking into account all facts and documentation presented.  The decision shall be mailed to the grantee.  The decision of the Grant Officer is final**.**

## 17. DRUG-FREE WORKPLACE (RECIPIENTS OTHER THAN INDIVIDUALS)

a.  By signing this grant agreement, the grantee is providing the certification set out below under 17g.

b.  The certification set out below is a material representation of fact upon which reliance was placed when HUD determined to award the grant.  If it is later determined that the grantee knowingly rendered a false certification, or otherwise violates the requirements of the Drug-Free Workplace Act, HUD, in addition to any other remedies available to the Federal Government, may take action authorized under the Drug-Free Workplace Act.

 c.  Workplaces need not be identified on the certification.  If known, they may be identified in the grant application.  If the grantee did not identify the workplaces at the time of application, or upon award, the grantee must keep the identity of the workplace(s) on file in its office and make the information available for Federal inspection.  Failure to identify all known workplaces constitutes a violation of the grantee's drug-free workplace requirements.

d.  Workplace identifications must include the actual address of buildings (or parts of buildings) or other sites where work under the grant takes place.  Categorical descriptions may be used (e.g., all vehicles of a mass transit authority or State highway department while in operation, State employees

**Awardee: Housing Research & Advocacy Center**                **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

in each local unemployment office, performers in concert halls or radio studios).

 e.  If the workplace identified to HUD changes during the performance of the grant, the grantee shall inform the agency of the change(s).

f.  Definitions of terms in the No Procurement Suspension and Debarment common rule (2 CFR Part 2424) and Drug-Free Workplace common rule apply to this certification.

g.  Certification Regarding Drug-Free Workplace Requirements. Recipients and subrecipients receiving funds from HUD are subject to Drug-Free Workplace requirements as set forth in 2 CFR part 2429, which is HUD's implementation of 41 U.S.C. 701, et seq. Specifically, grantees must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of part 2429, which adopts the governmentwide implementation (2 CFR part 182) of sections 5152-5158 of the Drug-Free Workplace Act of 1988 (Pub. L. 100-690, Title V, Subtitle D; 41 U.S.C. 701-707). The grantee certifies that it will maintain or will continue to provide a drug-free workplace in compliance with this requirement via the form HUD-50070 Certification for a Drug-Free Workplace.

The grantee's place of performance of this work is the same as that shown in Block 7 of the HUD 1044.  Grantee will identify other workplace(s) than that shown in Block 7 on the form HUD-50070.

## 18. LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (OVER $100,000)

 a.  Definitions.  As used in this clause:

     (1)  "Agency", as defined in 5 U.S.C. 552(f), includes Federal executive departments and agencies as well as independent regulatory commissions and Government corporations, as defined in 31 U.S.C. 9101(1).

     (2)  "Covered Federal Action" means any of the following Federal actions:

          (a)  The awarding of any Federal contract;
          (b)  The making of any Federal grant;
          (c)  The making of any Federal loan;
          (d)  The entering into of any cooperative agreement; and,
          (e) The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

Covered Federal action does not include receiving from an agency a commitment providing for the United States to insure or guarantee a loan.

(3) "Indian tribe" and "tribal organization" have the meaning provided in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450B). Alaskan Natives are included under the definitions of Indian tribes in that Act.

(4) "Influencing or attempting to influence" means making, with the intent to influence, any communication to or appearance before an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any covered Federal action.

(5) "Local government" means a unit of government in a State and, if chartered, established, or otherwise recognized by a State for the performance of a governmental duty, including a local public authority, a special district, an intrastate district, a council of governments, a sponsor group representative organization, and any other instrumentality of a local government.

(6) "Officer or employee of an agency" includes the following individuals who are employed by an agency:

(a) An individual who is appointed to a position in the Government under title 5, U.S.C., including a position under a temporary appointment;

(b) A member of the uniformed services as defined in section 202, title 18, U.S.C.;

(c) A special Government employee as defined in section 202, title 18, U.S.C.; and,

(d) An individual who is a member of a Federal advisory committee, as defined by the Federal Advisory Committee Act, title 5, appendix 2.

(7) "Person" means an individual, corporation, company, association, authority, firm, partnership, society, State, and local government, regardless of whether such entity is operated for profit or not for profit. This term excludes an Indian tribe, tribal organization, or other Indian organization with respect to expenditures specifically permitted by other Federal law.

(8) "Reasonable compensation" means, with respect to professional and other technical services, a payment in an amount that is consistent with the amount normally paid for such services in the private sector.

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

(9)  "Recipient," as used in this clause, includes the grantee or cooperating party and all sub-grantees at any tier.  The term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

(10) "Regularly employed" means, with respect to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, an officer or employee who is employed by such person for at least 130 working days within one year immediately preceding the date of the submission that initiates agency consideration of such person for receipt of such contract, grant, loan, or cooperative agreement.  An officer or employee who is employed by such person for less than 130 working days within one year immediately preceding the date of submission that initiates agency consideration of such person shall be considered to be regularly employed as soon as he or she is employed by such person for 130 working days.

(11) "State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a territory of possession of the United States, an agency or instrumentality of a State, and a multi-State, regional, or interstate entity having governmental duties and powers.

b.  <u>Prohibition</u>.

(1)  Section 1352 of title 31, U.S.C. provides in part that no appropriated funds may be expended by the recipient of a Federal contract, grant, loan, or cooperative agreement to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions:  the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2)  The prohibition does not apply as follows:

(a)  Agency and legislative liaison by own employees

(i)  The prohibition on the use of appropriated funds, in paragraph (1) of this section, does not apply in the case of a payment of reasonable compensation made to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, if the payment is for agency and legislative activities not directly related to a covered Federal action.

**Awardee: Housing Research & Advocacy Center**                          **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

(ii)  For purposes of paragraph b. (2)(a)(i) of this section, providing any information specifically requested by an agency or Congress is allowable at any time.

(iii)  For purposes of paragraph b.(2)(a)(i) of this section, the following agency and legislative liaison activities are allowable at any time only where they are not related to a specific solicitation for any covered Federal action:

(aa) Discussing with an agency (including individual demonstrations) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and,

(bb) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(b)  For purposes of paragraph (a) of this section, the following agency and legislative liaison activities are allowable only where they are prior to formal solicitation of any covered Federal action:

(i)  Providing any information not specifically requested but necessary for an agency to make an informed decision about initiation of a covered Federal action;

(ii)  Technical discussions regarding the preparation of an unsolicited application prior to its official submission; and

(iii)  Capability presentations by persons seeking awards from an agency pursuant to the provisions of the Small Business Act, as amended by Public Law 95-507 and other subsequent amendments.

(c)  Only those activities expressly authorized by paragraph 2(b)(i) of this section are allowable under paragraph 2(b)(i).

(ii)  Professional and technical services by Own Employees.

(aa)  The prohibition on the use of appropriated funds, in paragraph (1) of this section, does not apply in the case of payment of reasonable compensation made to an officer or employee of a person requesting or receiving a Federal contract, grant, cooperative agreement, or loan or an extension, continuation, renewal, amendment, or modification of a Federal contract, grant, cooperative agreement, or loan, if

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, application, or application for that Federal contract, grant, cooperative agreement, or loan or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal contract, grant, cooperative agreement, or loan.

(bb) For purposes of paragraph (A) of this section, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline.

(cc) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award includes those required by law or regulation, or reasonably expected to be required by law or regulation, and any other requirements in the actual award documents.

(dd) Only those services expressly authorized by paragraph (ii) of this section are allowable under paragraph (ii).

(iii)  Reporting for Own Employees.

No reporting is required with respect to payments of reasonable compensation made to regularly employed officers or employees of a person.

(iv)  Professional and technical services by Other than Own Employees.

(aa)  The prohibition on the use of appropriated funds, in paragraph (1) of this section, does not apply in the case of any reasonable payment to a person, other than an officer or employee of a person requesting or receiving a covered Federal action, if the payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, application, or application for that Federal contract, grant, cooperative agreement, or loan or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal contract, grant, cooperative agreement, or loan.

(bb) For purposes of paragraph (A) of this section, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline.

(cc) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award include those required by law or regulation, or reasonably

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

expected to be required by law or regulation, and any other requirements in the actual award documents.

   (dd) Persons other than officers or employees of a person requesting or receiving a covered Federal action include consultants and trade associations.

   (ee) Only those services expressly authorized by paragraph (iii) of this section are allowable under paragraph (iii).

(3)  <u>Disclosure</u>.

   (a)  Each person who requests or receives from an agency a Federal contract, grant, cooperative agreement, or loan shall file with that agency a certification, set forth in this solicitation that the person has not made, and will not make, any payment prohibited by paragraph (b) of this section.

   (b)  Each person who requests or receives from an agency a Federal contract, grant, cooperative agreement, or loan shall file with that agency a disclosure form, Standard Form-LLL, "Disclosure of Lobbying Activities," if such person has made or has agreed to make any payment using non-appropriated funds (to include profits from any covered Federal action), which would be prohibited under paragraph (b) of this clause if paid for with appropriated funds.

   (c)  Each person shall file a disclosure form at the end of each calendar quarter in which there occurs any event that requires disclosure or that materially affects the accuracy of the information contained in any disclosure form previously filed by such person under paragraph (2) of this section.  An event that materially affects the accuracy of the information reported includes:

   (i)     A cumulative increase of $25,000 or more in the amount paid or expected to be paid for influencing or attempting to influence a covered Federal action; or

   (ii)    (ii)  A change in the person(s) or individual(s) influencing or attempting to influence a covered Federal action; or

   (iii)  A change in the officer(s), employee(s), or member(s) contacted to influence or attempt to influence a covered Federal action.

   (d)  Any person who requests or receives from a person referred to in paragraph (a) of this section a subcontract exceeding $100,000 at any tier under a Federal contract,

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

grant, cooperative agreement, or loan shall file a certification, and a disclosure form, if required, to the next tier above.

(e)  All disclosure forms, but not certifications, shall be forwarded from tier to tier until received by the person referred to in paragraph (a) of this section.  That person shall forward all disclosure forms to the agency.

  (4)  <u>Agreement</u>.  In accepting any contract, grant, cooperative agreement, or loan resulting from this solicitation, the person submitting the offer agrees not to make any payment prohibited by this clause.

  (5)  <u>Penalties</u>.

      (a)  Any person who makes an expenditure prohibited under paragraph (2) of this clause shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such expenditure.

      (b)  Any person who fails to file or amend the disclosure form to be filed or amended if required by this clause, shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

      (c)  Contractors and recipients may rely without liability on the representations made by their subcontractors in the certification and disclosure form.

(6)  <u>Cost Allowability</u>.  Nothing in this clause is to be interpreted to make allowable or reasonable any costs which would be unallowable or unreasonable in accordance with Part 31 of the Federal Acquisition Regulation (FAR), or 2 CFR 200, Subpart E, Cost Principles dealing with cost allowability for recipients of assistance agreements.  Conversely, costs made specifically unallowable by the requirements in this clause will not be made allowable under any of the provisions of FAR Part 31 or 2 CFR 200, Subpart E, Cost Principles.

## 19. LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (UNDER $100,000)

  a.  <u>Definitions</u>.  As used in this clause:

      (1)  "Agency", as defined in 5 U.S.C. 552(f), includes Federal executive departments and agencies as well as independent regulatory commissions and Government corporations, as defined in 31 U.S.C. 9101(1).

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

(2)  "Covered Federal Action" means any of the following Federal actions:

(a)  The awarding of any Federal contract;
(b)  The making of any Federal grant;
(c)  The making of any Federal loan;
(d)  The entering into of any cooperative agreement; and,
(e)  The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

Covered Federal action does not include receiving from an agency a commitment providing for the United States to insure or guarantee a loan.

(3)  "Indian tribe" and "tribal organization" have the meaning provided in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450B).  Alaskan Natives are included under the definitions of Indian tribes in that Act.

(4)  "Influencing or attempting to influence" means making, with the intent to influence, any communication to or appearance before an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any covered Federal action.

(5)  "Local government" means a unit of government in a State and, if chartered, established, or otherwise recognized by a State for the performance of a governmental duty, including a local public authority, a special district, an intrastate district, a council of governments, a sponsor group representative organization, and any other instrumentality of a local government.

(6)  "Officer or employee of an agency" includes the following individuals who are employed by an agency:

(a)  An individual who is appointed to a position in the Government under title 5, U.S.C., including a position under a temporary appointment;

(b)  A member of the uniformed services as defined in section 202, title 18, U.S.C.;

(c)  A special Government employee as defined in section 202, title 18, U.S.C.; and,

(d)  An individual who is a member of a Federal advisory committee, as defined by the Federal Advisory Committee Act, title 5, appendix 2.

(7)  "Person" means an individual, corporation, company, association, authority, firm,

Awardee: Housing Research & Advocacy Center                      **ATTACHMENT A**
Grant #: FEOI230061
Initiative/Component: EOI-ARE

partnership, society, State, and local government, regardless of whether such entity is operated for profit or not for profit.  This term excludes an Indian tribe, tribal organization, or other Indian organization with respect to expenditures specifically permitted by other Federal law.

(8)  "Reasonable compensation" means, with respect to professional and other technical services, a payment in an amount that is consistent with the amount normally paid for such services in the private sector.

(9)  "Recipient" includes all contractors, subcontractors at any tier, and subgrantees at any tier of the recipient of funds received in connection with a Federal contract, grant, loan, or cooperative agreement.  The term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

(10)  "Regularly employed" means, with respect to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, an officer or employee who is employed by such person for at least 130 working days within one year immediately preceding the date of the submission that initiates agency consideration of such person for receipt of such contract, grant, loan, or cooperative agreement.  An officer or employee who is employed by such person for less than 130 working days within one year immediately preceding the date of submission that initiates agency consideration of such person shall be considered to be regularly employed as soon as he or she is employed by such person for 130 working days.

(11)  "State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a territory of possession of the United States, an agency or instrumentality of a State, and a multi-State, regional, or interstate entity having governmental duties and powers.

b.  <u>Prohibition</u>.

(1)  Section 1352 of title 31, U.S.C. provides in part that no appropriated funds may be expended by the recipient of a Federal contract, grant, loan, or cooperative agreement to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions:  the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

Awardee: Housing Research & Advocacy Center                    **ATTACHMENT A**
Grant #: FEOI230061
Initiative/Component: EOI-ARE

(2)  The prohibition does not apply as follows:

(a)  Agency and legislative liaison by Own Employees.

(i)  The prohibition on the use of appropriated funds, in paragraph (1) of this section, does not apply in the case of a payment of reasonable compensation made to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, if the payment is for agency and legislative activities not directly related to a covered Federal action.

(ii)  For purposes of paragraph (2)(a)(i) of this clause, providing any information specifically requested by an agency or Congress is permitted at any time.

(iii)  The following agency and legislative liaison activities are permitted at any time only where they are not related to a specific solicitation for any covered Federal action:

(aa) Discussing with an agency (including individual demonstrations) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and,

(bb) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(iv) The following agency and legislative liaison activities are permitted where they are prior to formal solicitation of any covered Federal action:

(aa) Providing any information not specifically requested but necessary for an agency to make an informed decision about initiation of a covered Federal action;

(bb) Technical discussions regarding the preparation of an unsolicited application prior to its official submission; and

(cc) Capability presentations by persons seeking awards from an agency pursuant to the provisions of the Small Business Act, as amended by Public Law 95-507 and other subsequent amendments.

(v) Only those activities expressly authorized by subdivision (2)(a)(i-iv) of this clause are permitted under this clause.

**Awardee: Housing Research & Advocacy Center**                           **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

(vi) Professional and technical services.

(aa) The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply in the case of:

(i) A payment of reasonable compensation made to an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action, if payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, application, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action.

(ii) Any reasonable payment to a person, other than an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action if the payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, application, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action.  Persons other than officers or employees of a person requesting or receiving a covered Federal action include consultants and trade associations.

(bb) For purposes of subdivision (b)(2)(ii)(A) of clause, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline.

(cc) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award includes those required by law or regulation, or reasonably expected to be required by law or regulation, and any other requirements in the actual award documents.

(dd) Only those services expressly authorized by subdivisions (b)(2)(ii)(A)(1) and (2) of this section are permitted under this clause.

(vii)  Selling activities by independent sales representatives.  The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply to the following selling activities before an agency by independent sales representatives, provided such activities are prior to formal solicitation by an agency and are specifically limited to the merits of the matter:

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

    (aa) Discussing with an agency (including individual demonstration) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and

    (bb) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

  (4)  <u>Agreement</u>.  In accepting any contract, grant, cooperative agreement, or loan resulting from this solicitation, the person submitting the offer agrees not to make any payment prohibited by this clause.

  (5)  <u>Penalties</u>.  Any person who makes an expenditure prohibited under paragraph (b) of this clause shall be subject to civil penalties as provided for by 31 U.S.C. 1352.  An imposition of a civil penalty does not prevent the Government from seeking any other remedy that may be applicable.

  (6)  <u>Cost Allowability</u>.  Nothing in this clause is to be interpreted to make allowable or reasonable any costs which would be unallowable or unreasonable in accordance with Part 31 of the Federal Acquisition Regulation (FAR), or 2 CFR 200, Subpart E, Cost Principles dealing with cost allowability for recipients of assistance agreements.  Conversely, costs made specifically unallowable by the requirements in this clause will not be made allowable under any of the provisions of FAR Part 31 or 2 CFR 200, Subpart E, Cost Principles.

<u>20. EXCESS FUNDS</u>

In accordance with §2 CFR 200.344, Closeout, the non-Federal entity must promptly refund any balances of unobligated cash that the Federal awarding agency or pass-through entity paid in advance or paid and that is not authorized to be retained by the non-Federal entity for use in other projects.  **ALL funds that have not been utilized in support of grant activities will be returned to HUD.  HUD will no longer authorize the retention and/or use of Excess Funds.**  Thirty (30) days prior to the end of the period of performance for each grant, the HUD GTR and GTM will review the grant's financial account of received and approved invoices, and approved budget to determine if all grant funding has been expended in accordance with the negotiated agreement.  The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used.  If funds have not been utilized completely, the grantee must provide the following:   a detailed explanation, which explains by budget line item what gave rise to the unused fund balance.  This information must be provided to the GTR and GO within thirty days (30) before the end date of the grant performance period.  **[See Addendum to the Schedule of Articles for return instructions.]**

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

## 21.  PROGRAM INCOME

In accordance with 2 CFR § 200.307, a non-Federal entity grantee who receives program income from fees for services, settlements, conciliations, and agreements directly generated by a grant supported activity or earned only as a result of the grant agreement during the grant period of performance, must use these funds in support of the grant's current costs and/or on fair housing activities in support of the current grant.  The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used.  In order to use these funds the grantee must provide the following:  (1) a detailed explanation, which explains what gave rise to the program income, provided to the Government Technical Representative and the Grant Officer within 15 days of receipt of the income; and (2) the grantee must submit a request to the Grant Officer outlining the planned use of the program income and receive the Grant Officer's approval of this request prior to use of the funds.  Additionally, if the grantee wishes to use these funds to offset increased indirect costs, the grantee must request such approval from the Grant Officer within thirty days (30) before the end date of the grant period of performance. If the grantee cannot and does not use the program income to support the grant's current costs and/or on fair housing activities in support of the grant, then in accordance with 2 CFR 200.307 the funds must be returned to HUD to reduce the federal award and/or defray program costs. Income received after the end of the grant period of performance is not program income. However, this income should be used by the grantee to affirmatively further fair housing.  **[See Addendum to the Schedule of Articles for return instructions.]**

## 22.  FRINGE BENEFITS

Per 2 CFR Part 200.431(g)(6)(iii) – Pension Costs and 2 CFR Part 200.431(h)(3) – Post-Retirement Health, Fringe Benefits, states - Amounts funded by the non-Federal Entity in excess of the actuarially determined amount for a fiscal year may be used as the non-Federal entity's contribution in future periods.   As stated, "may" is an optional decision on the part of the Federal Government. It is the decision of the HUD Program Office not to allow usage of excess fringe benefits to be used as "matching funds".

## 23. CERTIFICATION PROHIBITING EXCESSIVE FORCE AGAINST NON-VIOLENT CIVIL RIGHTS DEMONSTRATORS

This certification applies to any grant or cooperative agreement using funds appropriated under section 103 of the Housing and Community Development Act of 1974 (42 U.S.C. 5304).

The applicant certifies that it has adopted and is enforcing:

(a)  A policy prohibiting the use of excessive force by law enforcement agencies within its

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

jurisdiction against any individuals engaged in non-violent civil rights demonstrations; and

  (b)  A policy of enforcing applicable State and local laws against physically barring entrance to or exit from a facility or location which is the subject of such non-violent civil rights demonstrations within its jurisdiction.

## 24. SEAT BELT USAGE

In accordance with Executive Order 13043 - Increasing Seat Belt Use in the United States, all grantees are encouraged to adopt and enforce on-the-job seat belt policies and programs for their employees when operating company-owned, rented or personally owned vehicles.

## 25. RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

All grantees must comply with the RCRA (Pub. L. 94-580, 42 USC 6962) which provides that any State agency or agency of a political subdivision of a State which is using appropriated Federal funds must comply with Section 6002.  Section 6002 requires that preference be given in procurement programs to the purchase of specific products containing recycled materials identified in guidelines developed by the Environmental Protection Agency (EPA) (40 CFR Parts 247 through 254).  Accordingly, State and local institutions of higher education, hospitals, commercial organizations and international organizations operating domestically, and non-profit organizations that receive direct Federal awards or other Federal funds shall give preference in their procurement programs funded with Federal funds to the purchase of recycled products pursuant to the EPA guidelines.

## 26. ORDER OF PRECEDENCE

        FHIP funding is made available in accordance with the requirements of the authorizing statute (42 U.S.C. 3616 note), the program regulation at 24 CFR 125, and Notices of Funding Opportunity (NOFOs). Funding is awarded through a grant funding instrument.

Accordingly, in the event of any inconsistency among any provisions of this grant, the following order of precedence shall apply:

a.  Appropriations Statute
b.  Authorizing Statute. 42 U.S.C. 3616a note.
c.  Program Regulations at 24 CFR Part 125.
d.  Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards – 2 CFR 200 and OMB Circulars.
e.  Grant Award Documents (including Schedule of Articles (Grant Terms and Conditions),

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

Statement of Work and other related award documents).
f.   Notice of Funding Opportunity (NOFO).
g.   HUD Policies and Procedures
h.   Grantee's Application (if incorporated).


## 27.  EXECUTIVE ORDER 13520:  REDUCING IMPROPER PAYMENTS:  ENHANCING PAYMENT ACCURACY THROUGH A "DO NOT PAY LIST"

a.   Improper payments are the same as that contained in in the Improper Payments Information Act (IPIA) of 2002 (Pub. L. No. 107-300) and Part I, Section A of Appendix C to the Office of Management and Budget (OMB) Circular A-123, Requirements for Effective Measurement and Remediation of Improper payments.  An improper payment is any payment that should not have been made or that was made in an incorrect amount under statutory, contractual, administrative, or other legally applicable requirements.  Incorrect amounts are overpayments and underpayments (including inappropriate denials of payment or service).  An improper payment includes any payment that was made to an **ineligible recipient** or for an **ineligible service**, duplicate payments, payments for services not received, and payments that are for the incorrect amount.  In addition, when an agency's review is unable to discern whether a payment was proper as a result of insufficient or lack of documentation, this payment must also be considered an error.

A series of basic database checks will be conducted on all pre-award grants and before any reimbursable pre-payment for current existing grants.   Such as the following:

- The fugitive felons list;
- The master death file of deceased individuals;
- The Excluded Parties List System that contains information on entities that are debarred, suspended, or proposed for debarment, excluded, or disqualified or ineligible from receiving Federal contracts, certain subcontracts, and certain Federal assistance and benefits; and
- Any other lists or systems developed by the agency.
  Refer to the following for more information related to improper payments

- The Improper Payments Information Act of 2002 (IPIA), as amended by:
- The Improper Payments Elimination and Recovery Act of 2010 (IPERA) and
- The Improper Payments Elimination and Recovery Improvement Act of 2012 (IPERIA

## 28. EXECUTIVE ORDER 14005, ENSURING THE FUTURE IS MADE IN ALL AMERICA BY ALL OF AMERICA'S WORKFORCE

**Awardee: Housing Research & Advocacy Center**                            **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

This grant must adhere to Executive Order 14005 made by President Biden on January 25, 2021, to *Ensuring the Future is made in All America by All of America's Workforce.* This Executive Order states:

It is the policy of my Administration that the United States Government should, consistent with applicable law, use terms and conditions of Federal financial assistance awards and Federal procurements to maximize the use of goods, products, and materials produced in, and services offered in, the United States. The United States Government should, whenever possible, procure goods, products, materials, and services from sources that will help American businesses compete in strategic industries and help America's workers thrive. Additionally, to promote an accountable and transparent procurement policy, each agency should vest waiver issuance authority in senior agency leadership, where appropriate and consistent with applicable law.

29. <u>EXECUTIVE ORDERS 13985 and 14091, ADVANCING RACIAL EQUITY AND SUPPORT FOR UNDERSERVED COMMUNITIES THROUGH THE FEDERAL GOVERNMENT</u>

On January 20, 2021, President Biden issued Executive Order 13985 on Advancing Racial Equity and Support for Underserved Communities through the Federal Government. The Executive Order requires the Federal Government to advance equity for all, including communities that have long been underserved, and addressing systemic racism in our Nation's policies and programs.

Consistent with the Executive Order and 2024 amendments to Uniform Grant Requirements for Federal Financial Assistance at 2 CFR 200, the FHIP program aims to use its grantmaking authority to Deliver Equitable Outcomes Through Government Policies, Programs, and Activities for the purpose of yielding equitable outcomes for all Americans, including underserved communities. The 2024 uniform grant requirements encourage Federal agencies and grantees to conduct community engagement activities and use federal grant funds related to federal awards on eligible public participation and community engagement activities. Important federal priorities include advancing equity and support for underserved communities and improving customer experience. Community engagement helps inform the public, including underserved communities, of federal services and support available to them.

These efforts also support accessible, culturally, and linguistically appropriate outreach. The FHIP program endeavors to create more flexibility, incentives, and guidelines for grantees, allowing them to effectively engage with underserved communities as projects are designed and implemented. The FHIP program also works to identify funding opportunities for community organizations working in and with underserved communities to improve access to benefits and

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

services for members of underserved communities; and identify and address barriers for individuals with disabilities, as well as older adults, to participate in the engagement process, including barriers to the accessibility of physical spaces, virtual platforms, presentations, systems, training, and documents.

## 30. EXECUTIVE ORDER 14075, ADVANCING EQUALITY FOR LESBIAN, GAY, BISEXUAL, TRANSGENDER, QUEER, AND INTERSEX INDIVIDUALS

On June 15, 2022, President Biden issued Executive Order 13988 on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation.  The Executive Order requires HUD and other federal agencies to combat unlawful discrimination and eliminate disparities that harm LGBTQI+ individuals and their families, defend their rights and safety, and pursue a comprehensive approach to delivering the full promise of equality for LGBTQI+ individuals, consistent with Executive Order 13988 of January 20, 2021 (Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation).

Specifically, HUD and other agencies are directed to provide guidance and technical assistance to HUD grantees and programs on effectively and respectfully serving LGBTQI+ individuals, including youth, and families; develop and provide guidance, sample policies, technical assistance, and training to improve services and outcomes for LGBTQI+ individuals, including youth, and families who are experiencing or are at risk of homelessness, and to ensure compliance with the Fair Housing Act, 42 U.S.C. 3601 et seq., and HUD's 2012 and 2016 Equal Access Rules; and seek funding opportunities, including through the Youth Homelessness Demonstration Program, for culturally appropriate services that address barriers to housing for LGBTQI+ individuals, including youth, and families, and the high rates of LGBTQI+ youth homelessness. The FHIP program and grantees serve LGBTQI+ individuals, youth, and families through FHIP grants – including specifically the Education and Outreach Initiative – Sexual Orientation and Gender Identity (NOFO) grants.

## 31. EXECUTIVE ORDER 13988, PREVENTING AND COMBATING DISCRIMINATION ON THE BASIS OF GENDER IDENTITY OR SEXUAL ORIENTATION

On January 20, 2021, President Biden issued Executive Order 13988 on *Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*.  The Executive Order follows the Supreme Court's decision in *Bostock v. Clayton County* holding that federal prohibitions against sex discrimination in the workplace extend to and include discrimination on the basis of sexual orientation and gender identity.  Relying on this decision, President Biden has directed the federal government to assess and enforce other federal laws that prohibit sex discrimination in the same manner to include sexual orientation and gender identity.

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

The Department's Fair Housing Initiative Program (FHIP) grantees must carry out their funded activities to also prevent and combat discrimination because of sexual orientation and gender identity, consistent with the Executive Order.  FHIP provides funds to public and private not-for-profit entities to conduct activities to prevent or eliminate discriminatory housing practices. These activities provide important support to the full enforcement of the Fair Housing Act by informing the public about fair housing rights and obligations, detecting discriminatory conduct through investigation and testing, and assisting persons to file complaints and obtain relief through legal and administrative forums.  HUD will provide technical assistance to FHIP organizations in the implementation of the Executive Order.

## 32. OTHER ADMINISTRATIVE PROVISIONS

The grantee shall comply with all standard assurances which were executed as part of the application process.

## 33.  EDUCATION AND OUTREACH INITIATIVE (EOI) FUNDS

EOI funding is for education and outreach purposes only.  EOI funds may not be used to support FHOI and PEI activities.

## 34.  PRIVATE ENFORCEMENT INITIATVE (PEI) and FAIR HOUSING ORGANIZATIONS INITIATIVE (FHOI) FUNDS

To assure compliance with appropriations for enforcement-related activities, organizations may perform education and outreach activities limited to only those that support PEI and FHOI grants.  Accordingly, there is a 15% cap (e. g., a limit of 15% of the total dollar amount awarded) allowed for education and outreach related activities.

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

**UNIFORM ADMINISTRATIVE REQUIREMENTS, COST PRINCIPLES, AND AUDIT REQUIREMENTS FOR FEDERAL AWARDS (2 CFR PART 200)**

OMB Guidance at 2 CFR Chapter I, Chapter II Part 200 et al, "OMB Governmentwide Guidance for Grants and Agreements" and "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," are incorporated by reference into these Schedule of Articles. The following links introduce Title 2 and text for the 2 CFR Part 200 requirements:

  1) https://www.ecfr.gov/current/title-2/subtitle-A.
  2) eCFR :: 2 CFR Part 200 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards).

Below is a list of and topics for Subparts A-F and Appendices

**SUBPART A - ACRONYMNS AND DEFINITIONS**
200.0 Acronyms
200.1 Definitions
Acquisition cost
Advance payment
Allocation
Audit finding
Auditee
Auditor
Budget
Central service cost allocation plan
Catalog of Federal Domestic Assistance number
CFDA program title
Capital assets
Capital expenditures
Claim
Class of Federal awards
Closeout
Cluster of programs
Cognizant agency for audit
Cognizant agency for indirect costs
Computing devices
Compliance supplement
Contract
Contractor
Cooperative agreement

**Awardee: Housing Research & Advocacy Center**                                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

Cooperative audit resolution
Corrective action
Cost allocation plan
Cost objective
Cost sharing or matching
Cross-cutting audit finding
Disallowed costs
Data Universal Numbering System (DUNS) number
Equipment
Expenditures
Federal agency
Federal Audit Clearinghouse (FAC)
Federal awarding agency
Federal award
Federal award date
Federal financial assistance
Federal interest
Federal program
Federal share
Final cost objective
Fixed amount awards
Foreign public entity
Foreign organization
General purpose equipment
Generally Accepted Accounting Principles (GAAP)
Generally Accepted Government Auditing Standards (GAGAS)
Grant agreement
Hospital
Improper payment
Indian tribe (or "federally recognized Indian tribe'')
Institutions of Higher Education (IHEs)
Indirect (facilities & administrative) costs
Indirect cost rate proposal
Information technology systems
Intangible property
Intermediate cost objective
Internal controls
Internal control over compliance requirements for Federal awards
Loan
Local government

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

Major program
Management decision
Micro-purchase
Modified Total Direct Cost (MTDC)
Non-Federal entity
Nonprofit organization
Obligations
Office of Management and Budget (OMB)
Oversight agency for audit
Pass-through entity
Participant support costs
Performance goal
Period of performance
Personal property
Personally Identifiable Information (PII)
Program income
Property
Protected Personally Identifiable Information (Protected PII)
Project cost
Questioned cost
Real property
Recipient
Research and Development (R&D)
Simplified acquisition threshold
Special purpose equipment
State
Student Financial Aid (SFA)
Subaward
Subrecipient
Supplies
Termination
Third-party in-kind contributions
Unliquidated obligations
Unobligated balance
Voluntary committed cost sharing

**SUBPART B – GENERAL PROVISIONS**
200.100 Purpose
200.101 Applicability
200.102 Exceptions
200.103 Authorities

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

200.104 Supersession
200.105 Effect on other issuances
200.106 Agency implementation
200.107 OMB responsibilities
200.108 Inquiries
200.109 Review date
200.110 Effective date/applicability date
200.111 English language
200.112 Conflict of interest
200.113 Mandatory disclosures

**SUBPART C - PRE-FEDERAL AWARD REQUIREMENTS AND CONTENTS OF FEDERAL AWARDS**
200.200 Purpose
200.201 Use of grant agreements (including fixed amount awards), cooperative agreements, and contracts
200.202 Program planning and design
200.203 Requirement to provide public notice of Federal financial assistance programs
200.204 Notices of funding opportunities
200.205 Federal awarding agency review of merit of proposals
200.206 Federal awarding agency review of risk posed by applicants
200.207 Standard application requirements
200.208 Specific conditions
200.209 Certifications and representations
200.210 Pre-award costs
200.211 Information contained in a Federal award
200.212 Public access to Federal award information
200.213 Reporting a determination that a non-Federal entity is not qualified for a Federal award
200.214 Suspension and debarment
200.215 Never contract with the enemy
200.216 Prohibition on certain telecommunications and video surveillance services or equipment

**SUBPART D - POST-FEDERAL AWARD REQUIREMENTS**
200.300 Statutory and national policy requirements
200.301 Performance measurement
200.302 Financial management
200.303 Internal controls
200.304 Bonds
200.305 Federal Payment
200.306 Cost sharing or matching

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

200.307 Program income
200.308 Revision of budget and program plans
200.309 Modifications to Period of performance
200.310 Insurance coverage
200.311 Real property
200.312 Federally-owned and exempt property
200.313 Equipment
200.314 Supplies
200.315 Intangible property
200.316 Property trust relationship
200.317 Procurements by states
200.318 General procurement standards
200.319 Competition
200.320 Methods of procurement to be followed
200.321 Contracting with small and minority businesses, women's business enterprises, and labor surplus area firms
200.322 Domestic preferences for procurements
200.323 Procurement of recovered materials
200.324 Contract cost and price
200.325 Federal awarding agency or pass-through entity review
200.326 Bonding requirements
200.327 Contract provisions
200.328 Financial reporting
200.329 Monitoring and reporting program performance
200.330 Reporting on real property
200.331 Subrecipient and contractor determinations
200.332 Requirements for pass-through entities
200.333 Fixed amount subawards
200.334 Retention Requirements for Records
200.335 Requests for transfer of records
200.336 Methods for collection, transmission and storage of information
200.337 Access to records
200.338 Restrictions on public access to records
200.339 Remedies for noncompliance
200.340 Termination
200.341 Notification of termination requirement
200.342 Opportunities to object, hearing and appeals
200.343 Effects of suspension and termination
200.344 Closeout
200.345 Post-closeout adjustments and continuing responsibilities

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

200.346 Collection of amounts due

**SUBPART E - COST PRINCIPLES**
200.400 Policy guide
200.401 Application
200.402 Composition of costs
200.403 Factors affecting allowability of costs
200.404 Reasonable costs
200.405 Allocable costs
200.406 Applicable credits
200.407 Prior written approval (prior approval)
200.408 Limitation on allowance of costs
200.409 Special considerations
200.410 Collection of unallowable costs
200.411 Adjustment of previously negotiated indirect (F&A) costs rates containing unallowable costs
200.412 Classification of costs
200.413 Direct costs
200.414 Indirect (F&A) costs
200.415 Required certifications
200.416 Cost allocation plans and indirect cost proposals
200.417 Interagency service
200.418 Costs Incurred by states and local governments
200.419 Cost accounting standards and disclosure statement
200.420 Considerations for selected items of cost
200.421 Advertising and public relations
200.422 Advisory councils
200.423 Alcoholic beverages
200.424 Alumni/ae activities
200.425 Audit services
200.426 Bad debts
200.427 Bonding costs
200.428 Collections of improper payments
200.429 Commencement and convocation costs
200.430 Compensation – personal services
200.431 Compensation – fringe benefits
200.432 Conferences
200.433 Contingency provisions
200.434 Contributions and donations

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

200.435 Defense and prosecution of criminal and civil proceedings, claims, appeals and patent infringements
200.436 Depreciation
200.437 Employee health and welfare costs
200.438 Entertainment costs
200.439 Equipment and other capital expenditures
200.440 Exchange rates
200.441 Fines, penalties, damages and other settlements
200.442 Fund raising and investment management costs
200.443 Gains and losses on disposition of depreciable assets
200.444 General costs of government
200.445 Goods or services for personal use
200.446 Idle facilities and idle capacity
200.447 Insurance and indemnification
200.448 Intellectual property
200.449 Interest
200.450 Lobbying
200.451 Losses on other awards or contracts
200.452 Maintenance and repair costs
200.453 Materials and supplies costs including costs of computing devices
200.454 Memberships, subscriptions, and professional activity costs
200.455 Organization costs
200.456 Participant support costs
200.457 Plant and security costs
200.458 Pre-award costs
200.459 Professional service costs
200.460 Proposal costs
200.461 Publication and printing costs
200.462 Rearrangement and reconversion Costs
200.463 Recruiting costs
200.464 Relocation costs of employees
200.465 Rental costs of real property and equipment
200.466 Scholarships and student aid costs
200.467 Selling and marketing costs
200.468 Specialized service facilities
200.469 Student activity costs
200.470 Taxes (including Value Added Tax)
200.471 Telecommunication costs and video surveillance costs
200.472 Termination costs
200.473 Training and education costs

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

200.474 Transportation costs
200.475 Travel costs
200.476 Trustees

**SUBPART F - AUDIT REQUIREMENTS**
200.500 Purpose
200.501 Audit requirements
200.502 Basis for determining Federal awards expended
200.503 Relation to other audit requirements
200.504 Frequency of audits
200.505 Sanctions
200.506 Audit costs
200.507 Program-specific audits
200.508 Auditee responsibilities
200.509 Auditor selection
200.510 Financial statements
200.511 Audit findings follow-up
200.512 Report submission
200.513 Responsibilities
200.514 Scope of Audit
200.515 Audit reporting
200.516 Audit findings
200.517 Audit documentation
200.518 Major program determination
200.519 Criteria for Federal program risk
200.520 Criteria for a low-risk auditee
200.521 Management decision
Appendix I to Part 200—Full Text of Notice of Funding Opportunity
Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards
Appendix III to Part 200—Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHESs)
Appendix IV to Part 200—Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Nonprofit Organizations
Appendix V to Part 200—State/Local Government and Indian Tribe-Wide Central Service Cost Allocation Plans
Appendix VI to Part 200—Public Assistance Cost Allocation Plans
Appendix VII to Part 220—States and Local Government and Indian Tribe Indirect Cost Proposals

**Awardee: Housing Research & Advocacy Center**                                    **ATTACHMENT A**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

Appendix VIII to Part 200—Nonprofit Organizations Exempted From Subpart E—Cost
Principles of Part 200
Appendix IX to Part 200—Hospital Cost Principles
Appendix X to Part 200—Data Collection Form (Form SF–SAC)
Appendix XI to Part 200—Compliance Supplement
Appendix XII to Part 200—Award Term and Condition for Recipient Integrity and Performance
Matters

**Awardee: Housing Research & Advocacy Center**                    **ATTACHMENT B**
**Grant #: FEOI230061**
**Initiative/Component: EOI-ARE**

### ADDENDUM
### (TO THE SCHEDULE OF ARTICLES)
### (For FY 2023 PEI / FHOI / EOI /General/National Programs Component Awards)

## GRANT AGREEMENT/REVISIONS/PRIOR APPROVALS/AMENDMENTS

Grantee will perform project activities in accordance with its application, attached hereto by reference, its negotiated Statement of Work (SOW), and the associated, final budget.  In general, grantees are required to request prior approvals from the HUD Director (Grant Officer) for budget and program plan revisions, in accordance with 2 CFR 200.308. If the grantee changes its name, merges with another organization, or plans any major organizational changes during the course of this grant, the Grantee must give advance notice to the HUD Director (Grant Officer) of any such proposed mergers, name changes, or other major organizational changes that affect the implementation of this grant.  Any changes in key personnel must be provided to the HUD Director (Grant Officer) immediately.  Where necessary, the HUD Director (Grant Officer) will immediately inform eLOCCS Security of the change.

## A.  *Requirements for Prior HUD Approvals*

More specifically, pursuant to 2 CFR 200.308 (b, c1-8, f), grantees must request prior approvals from the HUD Director (Grant Officer) for the following program or budget-related reasons, which require changes that must be incorporated by amendment to the Grant Agreement:

(1) **Statement of Work (SOW).** Any future revisions to the SOW which result in a change to the scope or objectives of the project or program (*even if there is no associated budget revision requiring prior written approval*) approved by HUD during the grant application award process.
(2) **Changes to Key Personnel**. As noted above, any change in a key person specified in the application or the Federal award.
(3) **Reduced Time of Project Director**. The absence from grant activities for more than three months, or a 25 percent reduction in time devoted to the project, by approved project director.
(4) **Inclusion of Other Costs Requiring Prior Approval**. The inclusion, (*unless waived by HUD*), of costs that require prior approval in accordance with subparts D and E of 2 CFR 200, including but not limited to program income, equipment, membership, fundraising, and travel.
(5) **Changes in the Budget** - Under §2 CFR 200.308 Revision of Budget and Program Plans, optional requirements are outlined regarding budgetary revisions. See FHIP specific requirements identified under number 6 of Section 4 – Post-Award Amendments. Note: All changes to Budget that exceed 10 percent of the award and/or changes to the SOW must be incorporated by an amendment to the grant agreement.

April 2024

**REQUEST FOR EXTENSIONS - PERIOD OF PERFORMANCE**

Due to unforeseen circumstances, FHIP Grantees may need to request that additional time be added to the period of performance for their grant(s) in order to complete the required activities of the project set forth in the SOW.  See 2 CFR 200.309 for information related to *Modifications to Period of Performance*.

Processing Procedures:

- Requests for project extensions must not be submitted when the tasks in the Statement of work (SOW) can be completed in a timely manner through more vigilant oversight and management of the FHIP project.

- Grantees must submit requests for extensions as soon as it becomes apparent that an extension will be needed, but no later than 45 days prior to the end of the grant performance period.

  - ❖ Requests must be made in writing to the Grant Officer, with "cc:" copies to the GTR and GTM.

  - ❖ Requests must provide a justification for the extension.

  - ❖ Requests must state the specific length of the extension requested.

  - ❖ Requests must not be made in an effort to spend down grant funds.

- If the extension receives preliminary approval by the Grant Officer, the grantee will be asked to provide the following before a grant amendment will be executed (these items can be submitted with the original extension request, if so desired by the grantee):

  - ❖ Revised SOW which includes revised timeframes for task completion or new/additional tasks.

    - ➢ **If the extension request is for 90 days or more, the revised SOW must reflect that the draft final report will be submitted 15 days before the end of the extension period and the final report will be submitted by the last day of the extension period.**

  - ❖ Revised payment schedule that reflects the extension period and the tasks to be completed for each payment.

  - ❖ Revised budget if extension results in modifications to the project budget line items.

- Extensions will not be granted if:

  - ❖ Requests were made **less than 45 days** before the end of the grant performance period.

April 2024

❖ Requests are made solely to expend the balance of fixed-price grant award funds (e.g., all SOW tasks have been completed, but funds remain).  In accordance with 2 CFR Part 200.344, Closeout, the non-Federal entity must promptly refund any balances of unobligated cash that the Federal awarding agency or pass-through entity paid in advance or paid and that is not authorized to be retained by the non-Federal entity for use in other projects.  **ALL** funds that have not been utilized in support of grant activities will be returned to HUD. HUD will no longer authorize the retention and/or use of Excess Funds in accordance with Item 20 – *Excess Funds*, in Attachment A to the Schedule of Articles.  See also 2 CFR 200.201 for general information on *Use of Grant Agreements (including Fixed-Price Awards), Cooperative Agreement, and Contracts.*

❖ Requests fail to provide adequate justification for the reasons an extension is necessary.

• Failure to submit a grant extension within the above-described procedures may result in:

❖ A less than favorable overall assessment of grantee performance through progress reviews/close-out assessments.

Remaining funds, if applicable, being de-obligated.

Attachment G, **Grant Payment Schedule**, will also be revised to reflect any future modifications to the drawdown payment schedule, should changes be necessary due to amendments to the basic grant.

**Grant Extensions**. Although HUD is authorized to waive, at its option, other cost-related and administrative prior written approvals, such as for one-time extensions of the period of performance for up to 12 months – HUD has not elected to do so, and such extensions continue to require advance approval.  See more on grant extensions below.

Refer to the full text of 2 CFR 200.308 for all requirements related to prior approval requirements for Budget and Program revisions.

All other changes to non-construction budgets, except for the changes described in paragraph (c) of 2 CFR 200.308, do not require prior approval.

### *Termination of Grants*

Failure of the Grantee to make reasonable efforts to complete the activities to finalize the project within the timeframes set forth in the SOW may result in the termination of the grant agreement. In this event, no further drawdowns will be made under the terms of the award.  Also, complaints by third parties against the Grantee alleging violations of the FHIP statute, regulation, or any of the terms of the grant agreement, will be forwarded to the HUD Director (Grant Officer) for resolution, who will review the allegations and take appropriate action in accordance with 2 CFR 200.339 and §200.340, or another applicable program policy.

April 2024

All projects must be broad-based (not limited to a single fair housing issue).  Although the Grantee's project can have a special focus, **all** FHIP-funded projects **must** address housing discrimination on all bases, i.e., race, color, religion, sex, disability, familial status, and national origin.

**IDENTIFICATION OF GRANTEE(S) WORKPLACE(S) – Drug-Free Requirements**

All grantees must identify to FHIP staff all known workplaces under the award.  The workplace identification must include the actual address of buildings or other sites where work under the award will take place.  The applicant must also inform the agency of any workplace changes during the performance of the award.  The identification of the workplaces must occur either:

> (1) At the time of application or upon award; or

> (2) In documents the applicant keeps on file in its offices during performance of the award, in which case the applicant must make the information available for inspection upon request by the agency. See:
> - eCFR : 2 CFR Part 182 -- Governmentwide Requirements for Drug-Free Workplace (Financial Assistance); and
> - eCFR : 2 CFR Part 2429 -- Requirements for Drug-Free Workplace (Financial Assistance).

**[FOR PEI-FHOI ONLY:**

FHIP-funded projects must include the following enforcement related activities in the project application: testing, interviewing potential victims of discrimination, analyzing housing-related issues, conducting mediation, litigation, or referral to administrative enforcement agencies, and disseminating information about fair housing laws.**]**

**FAIR HOUSING AND FREE SPEECH**

No grant funds may be used to investigate or prosecute under the Fair Housing Act any otherwise lawful activity engaged in by one or more persons, including the filing or maintaining of a non-frivolous legal action, that is engaged in solely for the purpose of achieving or preventing action by a government official or entity, or a court of competent jurisdiction.

**REPORTS, MEETINGS, AND PERFORMANCE MEASURES AND TASKS**

**Performance Measures:**  The Grantee must provide quarterly reports as specified by HUD on its performance measures.  The Grantee's measures will support HUD's strategic goals and policy priorities.  Reports must identify and include milestones and timelines, such as, but not limited to, identifying the tasks completed, providing appropriate information on any seminars, training and/or conferences held, referrals of fair housing complaints to HUD or to the substantially equivalent fair housing enforcement agencies, and any other activity undertaken by the Grantee under the grant.  Report success in meeting organization's benchmark output goals and output results, outcomes associated to the achievement of the purposes of the program, as well as the impact that the work has made on the individual assisted, the community, and the

April 2024

strategic goals of the Department.  See https://www.ecfr.gov/current/title-2/subtitle-A/chapter-II/part-200/subpart-D/section-200.301 for information on *Performance Measurement*.

**Performance Assessment:**  Performance per FHIP's NOFO requirements stipulate that if a grantee has received a "Poor" performance rating at the end of the Performance period of their grant, they will be deemed ineligible to apply for a new grant for 12 months (1-year suspension). If the grantee has a current multi-year grant, all funding will be terminated and de-obligated.  In order to become eligible to apply for future grants, the grantee must seek technical assistance to improve their performance and if awarded a grant after the suspension, they will be placed on a "High Risk" designation.  The length of time and performance requirements for the "High Risk" designation will be determined and negotiated with their HUD designated Grant Officer, GTR and GTM.

**Reports:**   At the conclusion of the grant, the Grantee agrees to describe the status of performance measures in a spreadsheet format or other manner specified by HUD.  The Grantee will also report quarterly, in a format determined by HUD (which may be computer generated) on the status of project tasks against the approved milestones and timelines.  Reports must include the number and basis of claims/complaints filed with HUD, or in any court, the number and terms of settlements or other outcomes achieved.  The terms of the settlements ordered by a court or other tribunal that requires confidentiality need not be reported.

**Financial Monitoring and Reporting:**  The Federal Financial Reports, SF-425, will be prepared and submitted quarterly (4 times a year) during the period of performance for the grant.  Based on assessment of the grant performance and for more effective monitoring, more frequent reporting of the SF-425 will be conducted.  The reports must reflect accurate, current and complete disclosure of the financial results (Refer to 2 CFR 200.238 *Financial Reporting* and  2 CFR 200.302 *Financial Management* ).  Failure to comply will result in one or more of the following actions (See 2 CFR 200.339 *Remedies for Non-Compliance* and 2 CFR 200.340 *Termination*):

a) Temporarily withhold cash payments pending correction of the deficiency;
b) Disallow (that is, deny both use of funds and any applicable matching credit for) all or part of the cost of the activity or action not in compliance;
c) Wholly or partly suspend or terminate the Federal award;
d) Initiate suspension or debarment proceedings as authorized under 2 CFR 180 *Government-Wide Debarment and Suspension*  and Federal awarding agency regulations;
e) Withhold further Federal awards for the project or program;
f) Terminate the Federal award.

**Evaluation Process**:  Report numerical measures characterizing the results of a program activity, service or intervention and used to measure performance.  Outputs must lead to targets for achievement of outcomes.  Results must be represented by both the actual number and percent of the goal achieved.

**Meetings:**  Furthermore, the Grantee agrees to meet semi-annually with HUD to ensure that project activities satisfy grant requirements.

April 2024

**Program Deliverables:**  Grantees are to submit to HUD one electronic copy of all final education and outreach materials to the FHIP Program Division using the HUD approved format as follows:

- Graphics – Vector
- Photos – JPEG
- Video – MPEG4
- Audio – MP3 or above, or WMA
- Text – Word, HTML5
- PDFs – Fully searchable
- Name of grantee organization
- Grant number
- Contact person
- Organization telephone number
- email address
- brief description of the material(s)

## PROGRAM EVALUATIONS

Grantee is required to report meaningful data derived from client feedback on how they benefited from the project activities.  Accomplishments can be achieved using specific measurement tools to assess the impact of grantee solutions.

## CONSULTANTS/SUBCONTRACTORS

The Grantee must obtain advance written approval, provide a detailed budget, and provide resumes/qualifications for subcontractors and consultants fees not to exceed the GS-15 Step 10 daily rate for FY 2023(locality pay will not be included).

## WAIVERS

Grantee must provide further justification to the Grant Officer to support the waiver of the daily rate for attorneys' and/or consultants' fees not to exceed the GS-15 Step 10 daily rate for FY 2023.

## PUBLICATIONS AND NEWS RELEASES

The Grantee agrees that news releases, publications, studies, or other products involving grant-funded activities will NOT BE RELEASED to the public without prior HUD approval.  The Grantee further agrees that it will submit any press release/news announcement, study, and/or other product developed as part of grant-funded activities to the GTR  for review and approval at least  2 weeks prior to its release (this will allow time for the GTR to send to the Office of Public Affairs for review and approval for release), unless the HUD agrees in writing to waive the "at least 2  weeks" submission requirement.  Publications, flyers and other routine documents

April 2024

previously approved by the GTR and/or HUD, may be published without further HUD approval. However, audio and video announcements must be submitted to the GTR and the grantee must await approval.

Publication and printing costs are covered in 2 CFR 200.461.

**NON-DUPLICATION OF PAYMENTS**

Neither the Grantee nor any subcontractor(s) may charge HUD, the U.S. Department of Justice, or any other Federal funding source for any activities funded by FHIP.

**EXCESS FUNDS**

In accordance with 2 CFR 200.344, *Closeout*, the non-Federal entity must promptly refund any balances of unobligated cash that the Federal awarding agency or pass-through entity paid in advance or paid and that is not authorized to be retained by the non-Federal entity for use in other projects. **ALL** funds that have not been utilized in support of grant activities will be returned to HUD. HUD will no longer authorize the retention and/or use of Excess Funds. Thirty (30) days prior to the end of the period of performance for each grant, the HUD GTR and GTM will review the grant's financial account of received and approved invoices, and approved budget to determine if all grant funding has been expended in accordance with the negotiated agreement. The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used. If funds have not been utilized completely, the grantee must provide the following: a detailed explanation, which explains by budget line item what gave rise to the unused fund balance. This information must be provided to the GTR and GO within 30 days before the end date of the grant performance period. **(See Appendix 1 on page 13 for Procedures for returning funds.)**

**FRINGE BENEFITS**

Per 2 CFR 200.431(g)(6)(iii), *Fringe Benefits*, amounts funded by the non-Federal Entity in excess of the actuarially determined amount for a fiscal year may be used as the non-Federal entity's contribution in future periods. As stated, "may" is an optional decision on the part of the Federal Government. It is the decision of the HUD Program Office not to allow usage of excess fringe benefits to be used as "matching funds."

**INDIRECT COST RATE**

**For grantees that have an approved and current negotiated (final or pre-determined) or provisional rate for indirect costs, the grantee may use the applicable rate to charge indirect costs to the grant.** Grantees also have the option to use a De Minimis 10 percent rate if they do have an approved indirect cost rate at the time of award.

Grantees must submit indirect cost rate proposals and audited financial statements each year for their active federal funding no later than six months after the end of their prior fiscal year end (FYE). This is necessary to establish Final Rates based on actual costs for the prior fiscal year. Provisional indirect cost rates are temporary and can be used to charge indirect costs until final

April 2024

rates are established based on actual costs. If final rates come in less than the provisional rate used to charge the grant, HUD may require the grantee to return the difference or be subject to alternative offsets of grant funds.

    ___    A. - Grantee will develop and submit to HUD an indirect cost proposal within 90 days of the effective date of this award, if this is the grantee's first federal grant or the grantee's previous indirect cost rate has expired.

    ___    B. - Grantee's proposed indirect cost rate of ___% of the total direct labor and fringe benefits or other base (_____) has been approved for billing purposes for this grant pending the negotiation of a provisional or other type of indirect cost rate with HUD.

    ___    C. - Certain indirect-type costs have been included as direct costs pending the negotiation of a final, pre-determined, provisional, or other type of indirect cost rate with HUD.

    ___    D. - Grantee's currently negotiated provisional indirect cost rate of ___% of total labor and fringe benefits or other base (specify_____) has been approved pending negotiation of a final indirect cost rate with HUD.

    _x_    E.   Other (De Minimis 10 percent)            ).

See 2 CFR 200.414 for more information on indirect cost rates. Some federal agencies have indirect cost rate guidance available on-line. The Department of Labor has an indirect cost rate guide posted at *A Guide for Indirect Cost Rate Determination (dol.gov)*.

## FINANCIAL AUDITS/AUDIT COSTS

A Grantee that expends $750,000 or more in a year in total Federal awards shall have a single or program-specific audit conducted for that year in accordance with the provisions of 2 CFR 200.501 and 2 CFR 200.514 of 2 CFR 200, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards".

A Grantee that expends less than $750,000 a year in Federal awards is exempt from Federal audit requirements for that year, except where HUD, the Inspector General, or the General Accounting Office (GAO) conducts or arranges for additional audits (e.g., financial audits, performance audits, evaluations, inspections, or reviews). 2 CFR Part 200 does not limit the authority of Federal agencies (including their Inspectors General or GAO) to conduct or arrange for additional audits, nor authorize any auditor to constrain Federal agencies from carrying out additional audits. Any additional audits shall be planned and performed in such a way as to build upon the work performed by other auditors. A Federal agency that conducts or contracts for additional audits shall, consistent with other applicable laws and regulations, arrange for funding the full cost of such additional audits.

April 2024

For a Grantee expending $750,000 or more in a year in Federal awards, the cost of audits made in accordance with the provisions of 2 CFR Part 200, Subpart F – Audit Requirements, are allowable charges to Federal awards.  The charges may be considered a direct cost or an allocated indirect cost, as determined in accordance with the provisions of applicable 2 CFR Part 200, Subpart E - Cost Principles, the Federal Acquisition Regulations (FAR) (48 CFR parts 30 and 31), or other applicable cost principles or regulations.

A Grantee shall not charge to a Federal award the cost of any audit under the Single Audit Act not conducted in accordance with 2 CFR Part 200, or the cost of auditing a Grantee which had Federal awards expended of less than $750,000 per year and is thereby exempted from having an audit conducted under the provisions of 2 CFR Part 200.

The only exemption to the OMB Circular A-133 is that pass-through entities may charge Federal awards for the cost of agreed-upon-procedures engagements to monitor subrecipients who are exempted from the requirements of the Single Audit Act and Subpart F—Audit Requirements of this 2 CFR Part 200.

**PROGRAM INCOME**

*Program Income Earned During Period of Performance*. In accordance with 2 CFR § 200.307, a non-Federal entity grantee who receives program income from fees for services, settlements, conciliations, and agreements directly generated by a grant supported activity or earned only as a result of the grant agreement during the grant period of performance, must use these funds in support of the grant's current costs and/or on fair housing activities in support of the current grant.  The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used.  In order to use these funds the grantee must provide the following:  (1) a detailed explanation, which explains what gave rise to the program income, provided to the Government Technical Representative and the Grant Officer within thirty days (30) before the end date of the grant period of performance; and (2) the grantee must submit a request to the Grant Officer outlining the planned use of the program income and receive the Grant Officer's approval of this request prior to use of the funds.  Additionally, if the grantee wishes to use these funds to offset increased indirect costs, the grantee must request such approval from the Grant Officer within thirty days (30) before the end date of the grant period of performance.

*Return of Unused Program Income*.  If the grantee cannot and does not use the program income to support the grant's current costs and/or on fair housing activities in support of the grant, then in accordance with 2 CFR 200.307 the funds must be returned to HUD to reduce the federal award and/or defray program costs. [See Appendix 1 to the Addendum (B) to the Schedule of Articles for return instructions.]

*Income Earned After Period of Performance*.  Income received after the end of the grant period of performance is not program income. This income should be used by the grantee conduct activities to affirmatively further fair housing.

April 2024

As stated above, the use of funds for this purpose must be pre-approved in writing by the GTR assigned to the grant (2 CFR 200.407). All funds that have not been utilized in support of grant activities will be returned to HUD. (See Appendix 1 for Procedures on returning funds and 2 CFR 200.346 on Collection of Debts.)    (See Schedule of Articles for additional instructions.)

**CONFLICT OF INTEREST**

The Grantee agrees to certify it will not solicit funds from or seek to provide fair housing educational or other services or products for compensation, directly or indirectly, to any person or organization which has been the subject of FHIP-funded testing by the Grantee in the past 12 months following testing by the Grantee. (*See Appendix 2 for Conflict of Interest Policy forms.*)

**POTENTIAL CONFLICT OF ORGANIZATIONAL INTEREST**

FHIP defines a sponsor as an organization that applies for a grant on behalf of an organization that may not be eligible to apply directly to FHIP for a grant. Such an organization may also be called a "pass-through" organization. The sponsored organization, also called the sub-recipient, will carry out the work of the project under the oversight of the sponsoring organization for a period as specified under the grant agreement. Pass-through/sub-recipients must be empowered as follows:

- To contract or otherwise conduct the activities under the grant agreement;
- Have the financial resources, the necessary experience, organization, technical qualifications, and facilities; or a firm commitment or ability to obtain such; and
- Have a financial management system which provides efficient and effective accountability and control of all property, funds, and assets sufficient to meet grantee needs and grantee audit requirements.

Private non-profit agencies must be properly incorporated as a non-profit organization with an elected and autonomous board (separate from the "Sponsor") which meets regularly.

Provisions of 2 CFR 200 applicable to conflict of interests, pass-through entity (PTE), sponsors, and sub-recipients include, but are not limited to:

   a.  2 CFR Part 200.1 (*Definitions*) –  2 CFR 200.1.

         "non-Federal entity", "non-profit organization" "pass-through entity", "recipient", "sub-award", "sub-recipient."

   b.  2 CFR Part 200.101 (*Applicability to different types of Federal awards*) – 2 CFR 200.101.

         Table 1 to paragraph b describes the following:

         "…what portions of this part apply to which types of Federal awards. The terms and conditions of Federal awards (including this part) flow down to subawards to

subrecipients unless a particular section of this part or the terms and conditions of the Federal award specifically indicate otherwise. This means that non-Federal entities must comply with requirements in this part regardless of whether the non-Federal entity is a recipient or subrecipient of a Federal award. Pass-through entities must comply with the requirements described in subpart D of this part, §§ 200.331 through 200.333, but not any requirements in this part directed towards Federal awarding agencies unless the requirements of this part or the terms and conditions of the Federal award indicate otherwise."

c.  2 CFR Part 200.112 (*Conflict of Interest*) – 2 CFR 200.112.

"The Federal awarding agency must establish conflict of interest policies for Federal awards. The non-Federal entity must disclose in writing any potential conflict of interest to the Federal awarding agency or pass-through entity in accordance with applicable Federal awarding agency policy."

d.  2 CFR Part 200.331-332 (*Subrecipient and Contractor Determinations and Requirements for pass-through entities, a-h*) 2 CFR 200.331 and 2 CFR 200.332.

e.  2 CFR Subpart D (*Post Federal Award Requirements*) 2 CFR 200 subpart D.

f.  Appendix IV to Part 200 – (*Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Nonprofit Organizations*) Appendix IV to Part 200.

## CONTINUITY OF OPERATIONS (COOP) PLAN

The Grantee will develop a COOP Plan.  This Plan will enable an agency to continue essential functions and services when normal operations are disabled due to disaster or events that take the agency offline.  The COOP Plan is the agency's blueprint for internal operations in the event of a disaster.  The original Plan and all updates will be provided to the HUD Director (Grant Officer).

## TESTERS [FOR PEI-FHOI ONLY]

All grantees that propose testing must review the FHIP Regulation at  24 CFR 125.107 (*Testers*) and reflect these requirements in their application as well as be a Qualified Fair Housing Enforcement Organization or a Fair Housing Enforcement Organization.  Costs for any background checks are an allowable expenditure. Refer to HUD's publication of a Final Rule (*Expanding the pool of fair housing testers for FHIP and FHAP Funded Entities*) for further information regarding FHIP testers.

## LENDER/INSURANCE TESTER TRAINING FEES [FOR PEI-FHOI ONLY]

A $75/day rate for 2 days ($150 maximum) has been approved for lender/insurance tester training fees.  Grantee must provide documentation to the GTR during the term of this award that

April 2024

each tester completing the training has conducted a minimum of two tests or provide reasonable justification for the inability of any tester to meet this requirement.

The Grantee agrees to include the following language in the agreement entered into with lending/insurance testers:

>"I have completed lender and/or insurance tester training provided by _____.*  It is my intention to make myself reasonably available when requested to conduct tests during the next _____."**

> *Insert Grantee name.
> **Insert grant duration or number of months testing will occur during grant.

## APPROVAL OF TESTING METHODOLOGY AND TESTER TRAINING [FOR PEI-FHOI ONLY]

For all testing other than rental or accessibility testing, the Grantee agrees to submit to the GTR for review and approval the testing methodology and tester training to be used in tests funded under the grant.  The methodology and training are tasks under the SOW and no payment for tests will be authorized until they receive HUD review and approval.  The documents which must be submitted for review are the testing manual, the tester training manual and all testing materials, including the blank test book.  The methodology must include a general description of the procedures for testing, including any plans for multi-variable testing and the reasons for such testing [when is a test used, when is further investigation appropriate, and an estimate of the numbers of tests and test types (sales, insurance, lending, etc.)]; the basis or protected class of tests to be conducted (e.g., race, religion, familial status, etc.); the criteria for selecting testers for each type of test to be conducted; areas of tester training to be provided to testers under the grant; criteria for selecting subjects of the tests; factors to be examined in analyzing test results; and, types of actions that may be taken based on test results.

The testing methodologies and procedures will be protected to the extent that any information is proprietary, confidential, a trade secret, copyrighted, patented subject to trademark restrictions, or in any other way inappropriate for disclosure.  The Grantee as originator of the information will make this initial determination and will conspicuously notify HUD that the information is subject to a specific protection against disclosure by a method reasonably calculated to give adequate notice.  To the extent that the information is requested via the Freedom of Information Act (FOIA), the Privacy Act, or any other legal mechanism, HUD legal counsel will review, and base any determination concerning the release of the information on the recommendation of the grantee in accordance with submitter notice requirements.

## GRANTEE/TESTER ECONOMIC INTERESTS [FOR PEI-FHOI ONLY]

Grantee agrees that it and testers will not have an economic interest in the outcome of any test, directly or indirectly, without prejudice to the right of any person or entity to recover damages for any cognizable injury.  Furthermore, the Grantee nor any of its personnel, testers and the organizations conducting tests, when different from the Grantee, may not (1) be a relative by adoption, blood, or marriage of any party in a case,  (2) have had any employment or other

April 2024

affiliation, within  1 year before or after the test, with the person or organization to be tested, or (3) be a licensed competitor of the person or organization to be tested in the listing, rental, sale, or financing of real estate.

## RETALIATION - TARGETING NON-COMPLAINT BASED TESTS [FOR PEI-FHOI ONLY]

The Grantee agrees that refusal by a person or organization to enter into an agreement that brings economic benefit to the Grantee may not be used as a criterion for targeting non-complaint based testing.

## REPORTS ON ENFORCEMENT ACTIVITIES [FOR PEI-FHOI ONLY]

The Grantee agrees to provide reports in a format (which may be computer generated), at a frequency and with contents specified by HUD.   The report must include the number and basis of claims/complaints filed with HUD or in Federal/State court, the number and terms of settlements or other outcomes achieved, unless confidential.

## ENFORCEMENT LOG/FORMAT [FOR PEI-FHOI ONLY]

A Grantee must complete an enforcement log for all allegations of discrimination under the Fair Housing Act received by the Grantee under this award.  This log must be submitted in accordance with provisions of the approved SOW.  The log will be protected to the extent that any of that information is proprietary, confidential, a trade secret, copyrighted, patented subject to trademark restrictions, or in any other way inappropriate for disclosure.  The Grantee as originator of the information will make this initial determination and will conspicuously notify HUD that the information is subject to a specific protection against disclosure by a method reasonably calculated to give adequate notice.  To the extent that the information is requested via the FOI, the Privacy Act, or any other legal mechanism, HUD legal counsel will review, and base any determination concerning the release of the information on the recommendation of the Grantee in accordance with submitter notice requirements.

April 2024

APPENDIX 1

<div style="border:1px solid black;">

## PROCEDURES FOR PROCESSING THE RETURN OF GRANT FUNDS TO THE U.S. DEPARTMENT OF TREASURY

</div>

In accordance with  2 CFR 200.344- *Closeout*, the non-Federal entity must promptly refund any balances of unobligated cash that the Federal awarding agency or pass-through entity paid in advance or paid and that is not authorized to be retained by the non-Federal entity for use in other projects.  **ALL** funds that have not been utilized in support of grant activities will be returned to HUD.  HUD will no longer authorize the retention and/or use of Excess Funds.  Thirty (30) days prior to the end of the period of performance for each grant, the HUD GTR and GTM will review the grant's financial account of received and approved invoices, and approved budget to determine if all grant funding has been expended in accordance with the negotiated agreement.  The grantee is required to maintain appropriate records to support actual expenditures by budget line item of funds used.  If funds have not been utilized completely, the grantee must provide the following: a detailed explanation, which explains by budget line item what gave rise to the unused fund balance.  This information must be provided to the GTR and GO within 30 days before the end date of the grant performance period.

**The following are the required procedures for the grantee and HUD personnel to use to document and return funds back to the U.S. Department of Treasury:**

A.  Grantee will write a check to the U.S. Department of Treasury for the amount of funds being returned and a brief cover letter regarding the returned funding addressed to the HUD point of contact (POC) (Regional Director/GO, GTR, or GTM).  The check and correspondence will be sent to the HUD POC.

B.  The HUD POC will mail the check and correspondence to the HUD lockbox at the following address:

> U.S. Department of Housing and Urban Development
> US Bank
> PO Box 6200-05
> Portland, OR 97228-6200

April 2024

APPENDIX 2

> ## THE FOLLOWING ARE EXAMPLES YOU CAN USE –
> ## NOT REQUIRED TO USE THIS FORMAT

**[Name of organization and address]**

### CONFLICT OF INTEREST POLICY

**SECTION 1.  PURPOSE**:

_____ is a nonprofit, tax-exempt organization.  Maintenance of its tax-exempt status is important both for its continued financial stability and for public support.  Therefore, the IRS as well as state regulatory and tax officials view the operations of _____ as a public trust, which is subject to scrutiny by and accountable to such governmental authorities as well as to members of the public.

Consequently, there exists between _____ and its board, officers, and management employees and the public a fiduciary duty, which carries with it a broad and unbending duty of loyalty and fidelity.  The board, officers, and management employees have the responsibility of administering the affairs of _____ honestly and prudently, and of exercising their best care, skill, and judgment for the sole benefit of _____.  Those persons shall exercise the utmost good faith in all transactions involved in their duties, and they shall not use their positions with _____ or knowledge gained therefrom for their personal benefit.  The interests of the organization must be the first priority in all decisions and actions.

**SECTION 2.  PERSONS CONCERNED:**

This statement is directed not only to directors and officers, but to all employees who can influence the actions of _____.  For example, this would include all who make purchasing decisions, all persons who might be described as "management personnel," and anyone who has proprietary information concerning _____.

**SECTION 3.  AREAS IN WHICH CONFLICT MAY ARISE:**

Conflicts of interest may arise in the relations of directors, officers, and management employees with any of the following third parties:

1. Persons and firms supplying goods and services to _____.
2. Persons and firms from whom _____ leases property and equipment.
3. Persons and firms with whom _____ is dealing or planning to deal in connection with the gift, purchase or sale of real estate, securities, or other property.
4. Competing or affinity organizations.
5. Donors and others supporting _____.

April 2024

6. Agencies, organizations. and associations which affect the operations of _____.
7. Family members, friends, and other employees.

## SECTION 4.  NATURE OF CONFLICTING INTEREST:

A conflicting interest may be defined as an interest, direct or indirect, with any persons or firms mentioned in Section 3.  Such an interest might arise through:

1. Owning stock or holding debt or other proprietary interests in any third party dealing with _____.
2. Holding office, serving on the board, participating in management, or being otherwise employed (or formerly employed) with any third party dealing with _____.
3. Receiving remuneration for services with respect to individual transactions involving _____.
4. Using _____'s time, personnel, equipment, supplies, or good will for other than _____-approved activities, programs, and purposes.
5. Receiving personal gifts or loans from third parties dealing or competing with _____.  Receipt of any gift is disapproved except gifts of a value less than $50, which could not be refused without discourtesy.  No personal gift of money must ever be accepted.

## SECTION 5.  INTERPRETATION OF THIS STATEMENT OF POLICY:

The areas of conflicting interest listed in Section 3, and the relations in those areas which may give rise to conflict, as listed in Section 4, are not exhaustive.  Conflicts might arise in other areas or through other relations.  It is assumed that the directors, officers, and management employees will recognize such areas and relation by analogy.

The fact that one of the interests described in Section 4 exists does not necessarily mean that a conflict exists, or that the conflict, if it exists, is material enough to be of practical importance, or if material, that upon full disclosure of all relevant facts and circumstances it is necessarily adverse to the interests of _____.

However, it is the policy of the board that the existence of any of the interests described in Section 4 shall be disclosed before any transaction is consummated.  It shall be the continuing responsibility of the board, officers, and management employees to scrutinize their transactions and outside business interests and relationships for potential conflicts and to immediately make such disclosures.

April 2024

**SECTION 6. DISCLOSURE POLICY AND PROCEDURE:**

Transactions with parties with whom a conflicting interest exists may be undertaken only if all of the following are observed:

1. The conflicting interest is fully disclosed;
2. The person with the conflict of interest is excluded from the discussion and approval of such transaction;
3. A competitive bid or comparable valuation exists; and
4. The [board or a duly constituted committee thereof] has determined that the transaction is in the best interest of the organization.

Disclosure in the organization must be made to the chief executive officer (or if she or he is the one with the conflict, then to the board chair), who shall bring the matter to the attention of the [board or a duly constituted committee thereof].  Disclosure involving directors must be made to the board chair, (or if she or he is the one with the conflict, then to the board vice-chair) who shall bring these matters to the [board or a duly constituted committee thereof].

The [board or a duly constituted committee thereof] shall determine whether a conflict exists and in the case of an existing conflict, whether the contemplated transaction may be authorized as just, fair, and reasonable to _____.  The decision of the [board or a duly constituted committee thereof] on these matters will rest in their sole discretion, and their concern must be the welfare of _____ and the advancement of its purpose.

April 2024

## THE FOLLOWING ARE EXAMPLES YOU CAN USE – NOT REQUIRED TO USE THIS FORMAT

**[Name of organization and address]**

### CONFLICT OF INTEREST DISCLOSURE STATEMENT

Preliminary note: In order to be more comprehensive, this statement of disclosure/questionnaire also requires you to provide information with respect to certain parties that are related to you.  These persons are termed "affiliated persons" and include the following:

a.  your spouse, domestic partner, child, mother, father, brother or sister;

b.  any corporation or organization of which you are a board member, an officer, a partner, participate in management or are employed by, or are, directly or indirectly, a debt holder or the beneficial owner of any class of equity securities; and

c.  any trust or other estate in which you have a substantial beneficial interest or as to which you serve as a trustee or in a similar capacity.

1. NAME OF EMPLOYEE OR BOARD MEMBER: (Please print)
_____

2. CAPACITY:          _____board of directors
                      _____executive committee
                      _____officer
                      _____committee member
                      _____staff (position): _____

3. Have you or any of your affiliated persons provided services or property to _____ in the past year?

_____YES _____NO

If yes, please describe the nature of the services or property and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:
_____
_____
_____

4. Have you or any of your affiliated persons purchased services or property from _____ in the past year?

_____YES _____NO

If yes, please describe the purchased services or property and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:
_____
_____

April 2024

_____

5. Please indicate whether you or any of your affiliated persons had any direct or indirect interest in any business transaction(s) in the past year to which _____ was or is a party?

_____YES _____NO

If yes, describe the transaction(s) and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

_____
_____
_____

6. Were you or any of your affiliated persons indebted to pay money to _____ at any time in the past year (other than travel advances or the like)?

_____YES _____NO

If yes, please describe the indebtedness and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

_____
_____
_____

7. In the past year, did you or any of your affiliated persons receive, or become entitled to receive, directly or indirectly, any personal benefits from _____ or as a result of your relationship with _____, that in the aggregate could be valued in excess of $1,000, that were not or will not be compensation directly related to your duties to _____?

_____YES _____NO

If yes, please describe the benefit(s) and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

_____
_____
_____

8. Are you or any of your affiliated persons a party to or have an interest in any pending legal proceedings involving _____?

_____YES _____NO

If yes, please describe the proceeding(s) and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

April 2024

_____

_____

_____

9. Are you aware of any other events, transactions, arrangements or other situations that have occurred or may occur in the future that you believe must be examined by _____'s [board or a duly constituted committee thereof] in accordance with the terms and intent of _____'s conflict of interest policy?

_____YES _____NO

If yes, please describe the situation(s) and if an affiliated person is involved, the identity of the affiliated person and your relationship with that person:

_____

_____

_____

I HERBY CONFIRM that I have read and understand _____'s conflict of interest policy and that my responses to the above questions are complete and correct to the best of my information and belief. I agree that if I become aware of any information that might indicate that this disclosure is inaccurate or that I have not complied with this policy, I will notify [designated officer or director] immediately.

_____     _____

Signature                                                    Date

April 2024

**THE FOLLOWING ARE EXAMPLES YOU CAN USE – NOT REQUIRED TO USE THIS FORMAT**

**[Name of organization and address]**

**GIFT POLICY AND DISCLOSURE FORM**

As part of its conflict of interest policy, _____ requires that directors, officers and employees decline to accept certain gifts, consideration or remuneration from individuals or companies that seek to do business with _____ or are a competitor of it.  This policy and disclosure form is intended to implement that prohibition on gifts.

**Section 1.**     "Responsible Person" is any person serving as an officer, employee or a member of the board of directors of _____.

**Section 2.**     "Family Member" is a spouse, domestic partner, parent, child or spouse of a child, or a brother, sister, or spouse of a brother or sister, of a Responsible Person.

**Section 3.**     "Contract or Transaction" is any agreement or relationship involving the sale or purchase of goods, services or rights of any kind, receipt of a loan or grant, or the establishment of any other pecuniary relationship.  The making of a gift to _____ is not a "contract" or "transaction."

**Section 4.**     Prohibited gifts, gratuities and entertainment.  Except as approved by the Chairman of the Board or his designee or for gifts of a value less than $50 which could not be refused without discourtesy, no Responsible Person or Family Member shall accept gifts, entertainment or other favors from any person or entity which:

1. Does or seeks to do business with _____ or,

2. Does or seeks to compete with _____ or,

3. Has received, is receiving, or is seeking to receive a Contract or Transaction with _____.

**GIFT STATEMENT**

I certify that I have read the above policy concerning gifts, and I agree that I will not accept gifts, entertainment or other favors from any individual or entity, which would be prohibited by the above policy.  Following my initial statement, I agree to provide a signed statement at the end of each calendar year certifying that I have not received any such gifts, entertainment or other favors during the preceding year.

_____          _____
Signature                                                                      Date

April 2024

# EXHIBIT 5-C



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-7000

February 27, 2025

Carrie Pleasants
Executive Director
Housing Research & Advocacy Center
2728 Euclid Ave., Ste. 200
Cleveland, OH 44115
██████████████

**Subject:** Termination Notice for Fair Housing Initiatives Program (FHIP) FEOI230041

Dear Carrie Pleasants,

The United States Department of Housing and Urban Development (HUD), at the direction of the President of the United States pursuant to the Executive Order 14158, "Establishing and Implementing the President's 'Department of Government Efficiency'", and at the direction of said Department of Government Efficiency (DOGE), issues this notice of termination according to 2 CFR 200 subpart D. This notice serves to inform Housing Research & Advocacy Center that HUD intends to terminate the subject award effective February 27, 2025.

This notice of termination has been finalized in coordination with the subject award's program office partners, including the HUD Offices of General Counsel (OGC), and HUD Offices of Fair Housing and Equal Opportunity (FHEO).

HUD is terminating this award because it no longer effectuates the program goals or agency priorities.

HUD intends to terminate the subject award for $125,000.00 or the balance remaining, pending final billing.

Effective February 27, 2025, all obligations and activities under the grant number FEOI230041 will cease, subject to the termination conditions below:

All closeout actions must be completed within 120 days of the termination date.

1. **Final Report**: Within 60 days, submit the final report, including the final SF-425, to the Regional Office Government Technical Representative (GTR)/Government Technical Monitor (GTM), **marked as final**. Submit a copy of the final report and all final products/deliverables not previously submitted to the GTR/GTM.

2. **Final Billing:** If the organization has incurred any expenses prior to the date of termination, please provide a detailed accounting of the expenses to the GTR/GTM, for review and payment within the next 60 days.  Please note that any funds owed to the Government will be deducted from any final payments

made.  If the GTR/GTM does not hear from you within that time period, we will assume no additional payments are warranted and will commence closeout procedures on each grant.

3. **Closeout:** Within 15 business days of receipt of your final report to the GTR/GTM, the GTR/GTM will prepare and submit to you the final performance assessment report. You will have 30 days from receipt of the report to review and provide any comments (e.g., rebut evaluation and/or rating, etc.), as applicable.  If you decide not to provide comments, the rating becomes final after 30 days.

Additional details on closing your award can be found in the Applications and Awards Policies and Procedures Guide (AAPPG), which is accessible through the Fair Housing Initiatives Program (FHIP) webpage. You may also contact your Regional Office for additional guidance.

You may appeal HUD's decision to terminate the subject award by sending an e-mail to AllAboutFHIP@hud.gov. Any appeals must be delivered to AllAboutFHIP@hud.gov within 30 calendar days of the date of this letter.

HUD appreciates the efforts your organization has made in promoting fair housing. If you have any questions regarding this notice or require assistance with the closeout process, please contact AllAboutFHIP@hud.gov.

Sincerely,

MATTHEW
AMMON

Digitally signed by
MATTHEW AMMON
Date: 2025.02.27 18:24:03
-05'00'

Matthew E. Ammon
Performing the Delegable Duties of the
Deputy Secretary
U.S. Department of Housing and Urban
Development

cc: Lon Meltesen

# EXHIBIT 5-D



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-7000

February 27, 2025

Carrie Pleasants
Executive Director
Housing Research & Advocacy Center
2728 Euclid Ave.
Cleveland, Ohio 44115
███████████████

**Subject:** Termination Notice for Fair Housing Initiatives Program (FHIP) FEOI230061

Dear Carrie Pleasants,

The United States Department of Housing and Urban Development (HUD), at the direction of the President of the United States pursuant to the Executive Order 14158, "Establishing and Implementing the President's 'Department of Government Efficiency'", and at the direction of said Department of Government Efficiency (DOGE), issues this notice of termination according to 2 CFR 200 subpart D. This notice serves to inform Housing Research & Advocacy Center that HUD intends to terminate the subject award effective February 27, 2025.

This notice of termination has been finalized in coordination with the subject award's program office partners, including the HUD Offices of General Counsel (OGC), and HUD Offices of Fair Housing and Equal Opportunity (FHEO).

HUD is terminating this award because it no longer effectuates the program goals or agency priorities.

HUD intends to terminate the subject award for $100,000.00 or the balance remaining, pending final billing.

Effective February 27, 2025, all obligations and activities under the grant number FEOI230061 will cease, subject to the termination conditions below:

All closeout actions must be completed within 120 days of the termination date.

1. **Final Report**: Within 60 days, submit the final report, including the final SF-425, to the Regional Office Government Technical Representative (GTR)/Government Technical Monitor (GTM), **marked as final**. Submit a copy of the final report and all final products/deliverables not previously submitted to the GTR/GTM.
2. **Final Billing:** If the organization has incurred any expenses prior to the date of termination, please provide a detailed accounting of the expenses to the GTR/ GTM, for review and payment within the next 60 days.  Please note that any funds owed to the Government will be deducted from any final payments

made.  If the GTR/GTM does not hear from you within that time period, we will assume no additional payments are warranted and will commence closeout procedures on each grant.

3. **Closeout:** Within 15 business days of receipt of your final report to the GTR/GTM, the GTR/GTM will prepare and submit to you the final performance assessment report. You will have 30 days from receipt of the report to review and provide any comments (e.g., rebut evaluation and/or rating, etc.), as applicable.  If you decide not to provide comments, the rating becomes final after 30 days.

Additional details on closing your award can be found in the Applications and Awards Policies and Procedures Guide (AAPPG), which is accessible through the Fair Housing Initiatives Program (FHIP) webpage. You may also contact your Regional Office for additional guidance.

You may appeal HUD's decision to terminate the subject award by sending an e-mail to AllAboutFHIP@hud.gov. Any appeals must be delivered to AllAboutFHIP@hud.gov within 30 calendar days of the date of this letter.

HUD appreciates the efforts your organization has made in promoting fair housing. If you have any questions regarding this notice or require assistance with the closeout process, please contact AllAboutFHIP@hud.gov.

Sincerely,

MATTHEW
AMMON

Digitally signed by MATTHEW
AMMON
Date: 2025.02.27 17:53:41
-05'00'

Matthew E. Ammon
Performing the Delegable Duties of the
Deputy Secretary
U.S. Department of Housing and Urban
Development

cc: Lon Meltesen