# EXHIBIT 6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER; INTERMOUNTAIN FAIR HOUSING COUNCIL; SAN ANTONIO FAIR HOUSING COUNCIL, INC., d/b/a FAIR HOUSING COUNCIL OF SOUTH TEXAS; and HOUSING RESEARCH AND ADVOCACY CENTER d/b/a FAIR HOUSING CENTER FOR RIGHTS & RESEARCH, INC., *on behalf of themselves and all those similarly situated*,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, SCOTT TURNER, *in his official capacity as Secretary of Housing and Urban Development*, U.S. DOGE SERVICE, U.S. DOGE SERVICE TEMPORARY ORGANIZATION, and AMY GLEASON, *in her official capacity as Acting Administrator of U.S. DOGE Service and U.S. DOGE Service Temporary Organization*,<br><br>        Defendants. | Civil Action No. _____ |

**DECLARATION OF REED COLFAX**

I, Reed Colfax, make this declaration pursuant to 28 U.S.C. § 1746. I hereby declare under penalty of perjury that the following is true and correct:

    1.      I am one of the managing partners at Relman Colfax PLLC, a private law firm in Washington, D.C., that litigates civil rights matters and specializes in fair housing, fair lending, employment discrimination, disability, public accommodations, and police accountability. The Firm's practice includes individual and class action lawsuits on behalf of plaintiffs who have

suffered discrimination and harassment on the basis of race, national origin, color, religion, sex, disability, age, familial status, source of income, and sexual orientation. The Firm presently has twenty-seven attorneys and six paralegals. The Firm has a national civil rights practice and is highly regarded within the civil rights community for its expertise in civil rights litigation.

2. The firm has extensive experience serving as class counsel, having litigated a wide range of class action litigation in federal and state courts. *See, e.g.*, *Carroll et al. v. Walden University, LLC et al.*, No. 1:22-cv-00051 (D. Md. 2022) (reverse redlining on the basis of race and gender by university); *In re Flint Water Cases*, 499 F. Supp. 3d 399 (E.D. Mich. 2021) (class challenge to City of Flint's use of water supply that led to lead poisoning of thousands of residents); *Fair Hous. Ctr. of Cent. Ind., Inc. v. Rainbow Realty Grp., Inc.*, No. 1:17-cv-1782 RLM-TAB, 2020 WL 1493021 (S.D. Ind. Mar. 27, 2020) (class of 3000 challenging an Indianapolis company's predatory and discriminatory rent-to-own housing program); *Flack v. Wis. Dep't of Health Servs.*, 3:18-cv-309 (W.D. Wis. 2019) (denial of Medicaid coverage for treatments related to gender transition); *Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.D.C. 2013) (represented class of African-American Special Agents of the U.S. Secret Service who had been subjected to a racially discriminatory promotion system); *In re Black Farmers Discrimination*, 820 F. Supp. 2d 78, 80 (D.D.C. 2011) (represented subclass of Black Farmers who suffered racial discrimination at hand of USDA); *McLarty v. Presbyterian Healthcare Servs., Inc.*, No. D-101-cv-2020-01566 (First Judicial Court, Santa Fe County) (representing class of 3000 in Unfair Practices Act claim against hospital misrepresenting qualifications and certifications of pediatric surgeon).

3. The firm has previously brought challenges under the Administrative Procedure Act against HUD for allegedly arbitrary and capricious actions. *See, e.g.*, *Open Communities All.*

*v. Carson*, 286 F. Supp. 3d 148, 152 (D.D.C. 2017) (APA challenge to HUD's suspension of small area market rule for housing choice vouchers); *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 23 (D.D.C. 2018) (APA challenge to HUD withdrawal of affirmatively furthering fair housing assessment tool); *Nat'l Fair Hous. All. v. Carson*, 3:20-cv-07388 (N.D. Cal.) (challenging revised disparate impact rule under APA).

4.    The firm has tried and settled some of the largest fair housing cases in the country. *See, e.g.*, *Kennedy v. City of Zanesville*, 505 F. Supp. 2d 456 (S.D. Ohio 2007) ($10.8 million jury verdict under fair housing laws for residents of predominantly Black community denied water services); *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 604 F. Supp. 3d 1 (D. Conn. 2022) ($5.1 million verdict in Fair Housing Act disability discrimination case); *Nat'l Fair Hous. All. et al. v. Federal Nat'l Mortgage Assoc.*, Case No. 4:16-cv-06969-JSW (N.D. Cal.) ($53 million settlement to fair housing organizations challenging Fannie Mae's discriminatory maintenance and marketing of foreclosed homes in predominantly Black neighborhoods); *Independent Living Ctr. of Southern California v. City of Los Angeles,* No. 12-551 (C.D. Cal.) (largest settlement of affordable housing accessibility case in the nation's history where City of Los Angeles committed a minimum of $200 million provide required accessibility).

5.    The firm is well aware of the challenges of litigating a class case and the resources that are, at times, necessary to achieve a successful outcome. The firm leadership has met regarding the effort and costs potentially necessary to litigate this matter and is prepared to dedicate all resources and time required to vigorously litigate this matter.

6.    The firm has no financial interest in the outcome of the litigation and have not been promised compensation in any form for serving as class counsel. We understand that any attorneys' fees awarded to class counsel are subject to Court approval.

7. The firm will keep records of case-related expenses which may be submitted for potential reimbursement in the event that a settlement or verdict is reached in favor of the class. We understand that the reimbursement of any costs must be approved by the Court.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: March 13, 2025

Reed Colfax