# **EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER; INTERMOUNTAIN FAIR HOUSING COUNCIL; SAN ANTONIO FAIR HOUSING COUNCIL, INC., d/b/a FAIR HOUSING COUNCIL OF SOUTH TEXAS; and HOUSING RESEARCH AND ADVOCACY CENTER d/b/a FAIR HOUSING CENTER FOR RIGHTS & RESEARCH, INC., *on behalf of themselves and all those similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of Housing and Urban Development*; U.S. DOGE SERVICE; U.S. DOGE SERVICE TEMPORARY ORGANIZATION; and AMY GLEASON, *in her official capacity as Acting Administrator of U.S. DOGE Service and U.S. DOGE Service Temporary Organization,*<br><br>Defendants. | Civil Action No. 3:25-cv-30041 |

## DECLARATION OF MATTHEW AMMON

1. My name is Matthew Ammon. The following is based on my personal knowledge or information provided to me in the course of performing my duties at the United States Department of Housing and Urban Development (HUD).

2. I have been employed at HUD since 1996. I am a member of HUD's career Senior Executive Service (SES) and serve as the Director of the Office of Lead Hazard Control and

Healthy Homes. On February 12, 2025, I was delegated the authority to perform the delegable duties of the Deputy Secretary of HUD. I have been and continue to exercise that authority in the absence of a Deputy Secretary. I am not a member of HUD's internal Department of Government Efficiency (DOGE) task force, which was established by HUD Secretary Scott Turner and is "composed of HUD employees." *See* Press Release, HUD Secretary Scott Turner Launches DOGE Task Force to Eliminate Waste, Fraud and Abuse, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, https://www.hud.gov/press/press_releases_media_advisories/hud_no_25_030 (Feb. 13, 2025).

3. As HUD employees, neither the members of HUD's internal DOGE task force or myself are employees of the "Department of Government Efficiency"—which is a phrase that describes one of the President's policy initiatives and its related structure within federal agencies rather than a freestanding governmental department— or the "U.S. DOGE Service (USDS)," which is an Executive Office of the President component external to HUD. *See*, Executive Order 14,158 (Jan. 20, 2025). To the best of my knowledge, USDS has no authority to direct HUD or HUD officials to terminate grants or take any other actions on behalf of HUD.

4. Pursuant to Executive Order 14,158, "Establishing and Implementing the President's 'Department of Government Efficiency,'" HUD's internal DOGE task force (also known as HUD's agency DOGE team) commenced a review of all competitively awarded grants and agreements (collectively "awards") for consistency with Administration goals and priorities.

5. After conducting an initial non-final review of individual awards for consistency with Executive Orders and Administration directives, HUD's internal DOGE task force requested approval/authority from me to move forward with terminating certain awards if the task force later, after award-by-award review, made a final determination that an award should be

terminated. On February 24, 2025, I granted HUD's internal DOGE task force that authority to make final determinations on whether certain awards should be terminated, and if so, to coordinate with applicable program offices to ensure the orderly closeout of such awards consistent with the applicable terms of the award or as provided in 2 C.F.R. Part 200.

6.  Thereafter, for the Fair Housing Initiatives Program (FHIP), HUD's internal DOGE task force completed its award-by-award review in collaboration with HUD's Office of Fair Housing and Equal Opportunity (FHEO) and identified 78 FHIP awards that should be terminated under 2 C.F.R. § 200.340(a)(4) because they no longer effectuate the program goals or agency priorities. More specifically, HUD's internal DOGE task force identified that each of those awards is incompatible with one or more of the following Executive Orders:

   a. Executive Order 14148 ("Initial Rescissions of Harmful Executive Orders and Actions")

   b. Executive Order 14151 ("Ending Radical and Wasteful Government DEI Programs and Preferencing")

   c. Executive Order 14154 ("Unleashing American Energy")

   d. Executive Order 14159 ("Protecting the American People Against Invasion")

   e. Executive Order 14168 ("Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government")

   f. Executive Order 14173 ("Ending Illegal Discrimination and Restoring Merit Based Opportunity").

7.  HUD's internal DOGE task force specifically identified that those particular 78 awards were incompatible with one or more of the above Executive Orders because those awards include language that specifically imposes DEI, DEIA, and/or "equity" actions, initiatives, plans,

programs, grants, contracts, performance requirements, or preferences; and further authorizes the use of Federal funds for training, enforcement, and other related activities in a manner for activities beyond the scope of the statutorily enumerated protections of the Fair Housing Act and other Civil Rights laws. The task force further identified that that use of Federal Funds for purposes beyond the specific scope of these statutes dilutes and diminishes the availability of Federal funds to carry out the specific, statutorily-authorized functions of the Department. And the task force identified that the Department is best able to meet its statutory duties under the Fair Housing Act and other Civil Rights laws by the termination of these awards and the refocus of efforts toward effectuating the plain language of these statutes.

8. While the internal DOGE task force already had authority from me to issue those termination letters themselves (or instruct the FHEO Office to issue those termination letters), the task force asked me if I would execute the termination letter for each of those awards. I agreed with the task force's analyses, adopted their reasoning as my own, and executed the termination letter for each of those 78 FHIP awards on February 27, 2025.

9. The 78 FHIP awards, for which termination letters were issued on February 27, 2025, are only a subset of the total number of open FHIP awards, as HUD's award-by-award review determined that not all open FHIP awards are inconsistent with Executive Orders and no longer effectuating program goals or agency priorities.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C. this 21st day of March, 2025.

_____