UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER, *et al.*,<br><br>              Plaintiffs,<br><br>v.<br><br>THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>              Defendants. | Civil Action No. 3:25-cv-30041-RGS |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER (Doc. No. 31) AND STAY PROCEEDINGS**

Following the Supreme Court's grant of emergency relief in *Dep't of Education v. California*—in which the Supreme Court concluded that the government is likely to succeed for lack of jurisdiction—this Court should promptly dissolve the temporary restraining order ("TRO") issued against the Department of Housing and Urban Development and its Secretary (the "HUD Defendants"). Temporary Restraining Order (Mar. 26, 2025), Doc. No. 31 ("TRO"); Fed. R. Civ. P. 65(b)(4). Upon dissolving the TRO, the Court also should stay proceedings pending resolution of all appeals in *California*.

**I.     ARGUMENT**

      **A.     The Court Should Dissolve the TRO**

The Supreme Court has undone the basis for the TRO against the HUD Defendants. This Court entered the TRO "for the reasons discussed in depth" in Judge Joun's decision entering a TRO in *Dep't of Education v. California*, and in the First Circuit's subsequent denial of emergency relief in that case. TRO at 1-2. In fact, the Court saw "no meaningful way to

distinguish this case from *California v. U.S. Department of Education*, and because the court's exercise of discretion is constrained by the rulings of the First Circuit, the court adopt[ed] the First Circuit's reasoning in full" to enter the TRO against the HUD Defendants. *Id*. at 2. The First Circuit's reasoning that this Court adopted included the First Circuit's preliminary conclusion that the Administrative Procedure Act ("APA")—not the Tucker Act—applies to the claims at issue. *California v. U.S. Dep't of Education*, No. 25-1244, 2025 WL 878431, at *2 (1st Cir. Mar. 21, 2025).

Contrary to the First Circuit's ruling, however, the Supreme Court now has stayed the TRO issued in *California* "pending the disposition of the appeal in the United States Court of Appeals for the First Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought." *Dep't of Education v. California*, No. 24A910, 2025 WL 1008354, at *2 (S.Ct. Apr. 4, 2025) (per curiam). The Supreme Court did so because "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id*. at *1. The Supreme Court explained:

> The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Nor does the waiver apply to claims seeking "money damages." *Ibid*. True, a district court's jurisdiction is "not barred by the possibility" that an order setting aside an agency's action may result in the disbursement of funds. *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988). But, as we have recognized, the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money" along the lines of what the District Court ordered here. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

*Id*.

Moreover, the Supreme Court's decision indicates that the balance of harms favors the HUD Defendants rather than Plaintiffs. *Id*. ("[R]espondents have not refuted the Government's

representation that it is unlikely to recover the grant funds once they are disbursed."). As here, "[n]o grantee promised to return withdrawn funds should its grant termination be reinstated, and the District Court declined to impose bond." *Id*. (internal quotations omitted); *see* Defs.' Combined Opp. to Pls.' Emergency Mot. for Provisional Class Cert. & Pls.' Emergency Mot. for a Temporary Restraining Order (Mar. 21, 2025), Doc. No. 21 at 18-19 (explaining that the balance of equities weigh against preliminary relief).

Because this Court entered the TRO against the HUD Defendants in reliance on the First Circuit's decision in *California*, the Court should dissolve the TRO now that the Supreme Court has ruled otherwise. Nor should the Court order any further preliminary relief considering the Supreme Court has indicated that Plaintiffs are not likely to succeed on the merits. *See Taunton Gardens Co. v. Hills*, 557 F.2d 877, 878 (1st Cir. 1977) (affirming denial of a preliminary injunction where the trial court "defer[red]" to "the Supreme Court's stay of judgment" in a separate case, the "message of which" was "that court-ordered payment" by HUD of "operating subsidies should be halted until the Secretary's duty under the law is clarified"); *Foundation Med., Inc. v. Kittle*, No. 25-10298-RGS, 2025 WL 563067, at *1 (D. Mass. Feb. 20, 2025) ("The Court applies the same standard in assessing requests for temporary restraining orders and preliminary injunctions." (quoting *Goldstein v. Batista Contracting LLC*, 671 F. Supp. 3d 68, 72 (D. Mass. 2023))).

### B. The Court Should Stay Proceedings

Instead, upon dissolving the TRO the Court should stay proceedings pending resolution of the pending appeal in the First Circuit concerning the TRO in *California*, and any further appeal of that TRO. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154 (1st Cir. 1994) ("It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention."). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. To stay proceedings, "there must be good cause" for the stay, the stay "must be reasonable in duration[,] and the court must ensure that competing equities are weighed and balanced." *Marquis*, 965 F.2d at 1155.

But "[e]specially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256. That is the case here, where this matter involves "great issues . . . , great in their complexity, great in their significance," that have "far-reaching importance to the parties and the public." *Id*.

Accordingly, the First Circuit has affirmed a discretionary stay in circumstances like those here. In *Taunton Gardens*, the district court stayed proceedings in a suit that alleged that HUD was operating a federal funding program unlawfully. 557 F.2d at 879. The district court did so in deference to the appellate process in a separate case covering similar issues, after the Supreme Court had stayed judgment in that separate case pending appeal. *Id*. at 878-79. On appeal in *Taunton Gardens*, the First Circuit affirmed the district court's stay decision because the stayed case "present[ed] issues of 'public moment[,]'" namely, "the administration [by HUD] of a major federal program and the disbursement of a significant amount of federal money." *Id*. at 879. Prescient here, the First Circuit found important that the government had "been called

4

upon to litigate the same issue in" several courts, and had "suffered injunctions mandating payment in most of the cases, yet the one order requiring implementation of the entire program ha[d] been stayed by the Supreme Court." *Id*. "Under these circumstances," the First Circuit concluded, "it was within the district court's discretion to find that the public interest, the court's interest in efficient procedures, and 'the interest of justice' would best be served by allowing HUD a reasonable opportunity to resolve its obligations" in the separate appeal. *Id*.

As in *Taunton Gardens*, good cause supports staying these proceedings pending resolution of the appeal in *California*. This case, too, presents issues of "public moment" in HUD's administration of Fair Housing Initiative Program grants, and "the disbursement of a significant amount of federal money." *See id*.

Moreover, the Supreme Court's ruling in *California* renders doubtful this Court's jurisdiction to proceed in this case at all. *Cf. Griffith v. Bowen*, 678 F. Supp. 942, 944 (D. Mass. 1988) ("[T]his Court must decide whether it has jurisdiction over the subject matter of the dispute before it may proceed any further."). Thus, there is "a clear case of hardship or inequity in being required to go forward" with this case as the First Circuit considers the merits of the *California* appeal, *see Landis*, 299 U.S. at 255, because litigating this matter before the appellate courts resolve this Court's doubtful jurisdiction "would consume a great amount of judicial, administrative, and party resources[,]" *Goldhammer v. Dunkin Donuts, Inc.*, 59 F. Supp. 2d 248, 254 (D. Mass. 1999) (quoting *EFCO Corp. v. Aluma Sys., USA, Inc.*, 983 F. Supp. 816, 824 (S.D. Iowa 1997)). Likewise, "simultaneous adjudications regarding identical facts and highly similar legal issues creates the risk of inconsistent judgments." *Id*. (quoting *EFCO Corp.*, 983 F. Supp. at 824).

Finally, the Court's stay of proceedings would be "reasonable in duration" because it would expire upon the conclusion of appellate proceedings in *California*. *See Taunton Gardens*, 557 F.2d at 879 ("We also think that the duration of the stay is adequately circumscribed by reference to the determination of the appeal presently pending.").

## II.   CONCLUSION

For the foregoing reasons, the Court should promptly dissolve the TRO (Doc. No. 31) and stay proceedings pending the disposition of the appeal of the *California* TRO in the United States Court of Appeals for the First Circuit, and any further appeal thereof.

Dated: April 7, 2025

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   */s/ Julian N. Canzoneri*
Julian N. Canzoneri
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3170
julian.canzoneri@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on April 7, 2025.

*/s/ Julian N. Canzoneri*
Julian N. Canzoneri
Assistant U.S. Attorney